No. 24-11192

_____

# In the United States Court of Appeals for the Eleventh Circuit

_____

EBONI WILLIAMS, *et al*.,

*Plaintiffs-Appellees,*

v.

ARGENT TRUST COMPANY, *et al*.,

*Defendants-Appellants.*

_____

On Appeal from the United States District Court
for the Northern District of Georgia
No. 1:23-cv-03236-VMC

_____

## BRIEF OF DEFENDANTS-APPELLANTS
_____

Todd D. Wozniak
**HOLLAND & KNIGHT LLP**
1180 West Peachtree Street NW, Suite 1800
Atlanta, GA 30309
404-817-8431
todd.wozniak@hklaw.com

Chelsea Ashbrook McCarthy
**HOLLAND & KNIGHT LLP**
150 N. Riverside Plaza, Suite 2700
Chicago, IL 60606
chelsea.mccarthy@hklaw.com

*Counsel for Defendant-Appellant Argent*
*Trust Company*

Bryan B. House
**FOLEY & LARDNER LLP**
777 East Wisconsin Ave.
Milwaukee, Wisconsin 53202
Telephone:  414-297-5554
bhouse@foley.com

Eileen R. Ridley
**FOLEY & LARDNER LLP**
555 California St., 17th Floor
San Francisco, California 94104
Telephone:  415-438-6469
eridley@foley.com

*Counsel for Defendants-Appellants Gerald*
*Shapiro, Scott Brinkley, and A360 Holdings*
*LLC*

*Eboni Williams, et al. v. Argent Trust Company, et al.,* No. 24-11192

<u>C**ERTIFICATE** **OF** I**NTERESTED** P**ERSONS**</u>

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure and Rules 26.1-1 and 26.1-2 of the Rules of the United States Court of Appeals for the Eleventh Circuit, undersigned counsel for Appellants give notice of the following trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal:

A360 Holdings LLC, Appellant

A360 Profit Sharing Plan, Appellee

Argent Financial Group, Inc., 100% owner of Argent Trust Company

Argent Trust Company, Appellant

Bailey III, Harry B., Counsel for Appellees

Berman Fink Van Horn P.C., Counsel for Appellants Gerald Shapiro, Scott Brinkley, and A360 Holdings LLC

Brinkley, Scott, Appellant

Calvert, Honorable Judge Victoria M., United States District Court Judge

Dearing, Lea C., Counsel for Appellants Gerald Shapiro, Scott Brinkley, and A360 Holdings LLC

Dunn Harrington LLC, Counsel for Appellees

Edelman, Marc R., Counsel for Appellees

Engstrom, Carl, Counsel for Appellees

C-1 of 4

*Eboni Williams, et al. v. Argent Trust Company, et al.,* No. 24-11192

Engstrom Lee, Counsel for Appellees

Fink, Benjamin, Counsel for Appellants Gerald Shapiro, Scott Brinkley, and A360 Holdings LLC

Foley & Lardner, Counsel for Appellants Gerald Shapiro, Scott Brinkley, and A360 Holdings LLC

Harrington III, Robert Earl, Counsel for Appellees

Herring, Shadrin, Appellee

Hill, Brandon J., Counsel for Appellees

Holland & Knight LLP, Counsel for Appellant Argent Trust Company

House, Bryan B., Counsel for Appellants Gerald Shapiro, Scott Brinkley, and A360 Holdings LLC

JonesGranger, Counsel for Appellees

Kovelesky, Tina, Appellee

Lee, Jennifer Kim, Counsel for Appellees

McCarthy, Chelsea Ashbrook, Counsel for Appellant Argent Trust Company

Origin Bancorp, Inc., publicly-traded company, owns more than 10% of common stock of Argent Financial Group Inc.

Ridley, Eileen R., Counsel for Appellants Gerald Shapiro, Scott Brinkley, and A360 Holdings LLC

Morgan & Morgan, Counsel for Appellees

*Eboni Williams, et al. v. Argent Trust Company, et al.*, No. 24-11192

Shapiro, Gerald, Appellant

Shoemaker, Paula Mays, Appellee

Thomson, Mark E., Counsel for Appellees

Wenzel Fenton Cabassa, P.A., Counsel for Appellees

Williams, Eboni, Appellee

Wozniak, Todd D., Counsel for Appellant Argent Trust Company

*Eboni Williams, et al. v. Argent Trust Company, et al.,* No. 24-11192

## CORPORATE DISCLOSURE STATEMENT

In accordance with Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 through 26.1-3, Appellants make the following disclosures:

Argent Trust Company is a private Tennessee Corporation wholly owned by Argent Financial Group, Inc.  No public company is an owner of 10% or more of the stock of Argent Trust Company.

A360 Holdings LLC is a private limited liability company.  No public company is an owner of 10% or more of the stock of A360 Holdings LLC.

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Defendants-Appellants Argent Trust Company ("Argent"), Gerald Shapiro, Scott Brinkley, and A360 Holdings LLC respectfully request oral argument pursuant to Federal Rule of Appellate Procedure 34(a)(1) and Eleventh Circuit Rules 28-1(c) and 34.

This case involves an issue of first impression in the Eleventh Circuit Court of Appeals, namely, whether the judge-made "effective vindication" doctrine may be applied to find that claims brought under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), cannot be compelled into individual arbitration pursuant to a valid arbitration agreement and class action waiver. Neither this Court nor the U.S. Supreme Court has ever applied the "effective vindication" doctrine to invalidate an arbitration agreement based on its class action waiver provision. Because the issue presented is one of first impression in this Court, Defendants-Appellants respectfully suggest that oral argument would aid the decision-making process.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................................1

STATEMENT IN SUPPORT OF ORAL ARGUMENT .......................................... I

STATEMENT OF JURISDICTION...........................................................................1

STATEMENT OF THE ISSUES.................................................................................2

STATEMENT OF THE CASE....................................................................................3

SUMMARY OF THE ARGUMENT .......................................................................11

ARGUMENT ...........................................................................................................14

A.   THE PLAN'S CLASS ACTION WAIVER IS VALID AND SHOULD BE ENFORCED ........................................................................................15

   1.   The FAA And ERISA Require Enforcement Of The Plan's Arbitration Provision As Written...............................................15

   2.   There Is No Disharmony Between The FAA Policy Of Enforcing Arbitration Agreements As Written And The Rights Available To Plaintiffs Under ERISA...........................18

B.   THE DISTRICT COURT ERRED IN APPLYING THE "EFFECTIVE VINDICATION" DOCTRINE TO REFUSE ENFORCEMENT OF THE PLAN'S ARBITRATION PROCEDURE AND CLASS ACTION WAIVER ....................19

   1.   The "Effective Vindication" Doctrine ......................................20

   2.   The Language Of ERISA Does Not Support Application Of The "Effective Vindication" Doctrine To Bar Individual Arbitration In This Case............................................................23

   3.   Plaintiffs Only Have A Substantive Right Under ERISA § 502(a)(2) To Seek Monetary Relief With Respect To Their Individual Plan Accounts; Any Purported "Right" To Seek Plan-Wide Monetary Relief Is A Procedural Right That Can Be Waived..................................................................................25

   4.   A Claim Under ERISA § 502(a)(2) Is A "Claim Joinder" Form Of Representative Action And Can Be Arbitrated On An Individual Basis................................................................28

   5.   Appellate And Other District Courts Have Concluded That Claims Under ERISA §§ 502(a)(2) and (a)(3) Can Be Arbitrated On An Individual Basis And Cases That Have Not Are Wrong..................................................................................34

C. THE DISTRICT COURT ERRED IN CONCLUDING THAT PLAINTIFFS DID NOT CONSENT TO ARBITRATE THEIR CLAIMS FOR RECISSION AND REFORMATION ...................................................................................42

CONCLUSION ............................................................................................47

CERTIFICATE OF SERVICE ..................................................................50

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
    2010 WL 547172 (S.D. Ill. Feb. 10, 2010)........................................................33

*Am. Exp. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013).................................................... 12, 13, 16, 20, 22, 24, 27

*American Economy Insurance Company v. Accelerated Rehabilitation*
    *Centers, Ltd.*,
    2022 WL 4593066 (Ill. App. Ct. 1 Dist., 2022) .................................................46

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)...............................................................................15, 28

*Avecilla v. Live Nation Entm't, Inc*,
    2023 WL 5354401 (C.D. Cal. Aug. 7, 2023) .............................................22, 38

*Bd. of Trustees of IBEW Local No. 640 v. CIGNA Health & Life Ins.*
    *Co.*,
    2022 WL 2805111 (9th Cir. July 18, 2022) ......................................................46

*Berkelhammer v. ADP TotalSource Grp., Inc.*
    74 F.4th 115 (3d Cir. 2023) ..................................................................44

*Best v. James*,
    2023 WL 145007 (W.D. Ky. Jan. 10, 2023) ....................................................45

*Blinco v. Green Tree Servicing, LLC*,
    366 F.3d 1249 (11th Cir. 2004) ..........................................................1

*Caley v. Gulfstream Aerospace Corp.*,
    428 F.3d 1359 (11th Cir. 2005) ..................................................................16

*Cedeno v. Sasson*,
    100 F.4th 386 (2d Cir. 2024)   ............................................ 19, 21, 30, 39-41, 47

*Chappel v. Lab'y Corp. of Am.*,
    232 F.3d 719 (9th Cir. 2000) ..................................................................45

iv

*Citibank, N.A. v. Stok & Assocs., P.A.*,
  387 F. App'x 921 (11th Cir. 2010) ....................................................................14

*Coan v. Kaufman,*
  457 F.3d 250 (2d Cir. 2006) ............................................................................31

*Curtiss-Wright Corp. v. Schoonejongen*,
  514 U.S. 73 (1995)............................................................................................17

*DeLeon v. Teamsters Loc. 802, LLC*,
  2021 WL 1193191 (E.D.N.Y. Mar. 29, 2021)....................................................33

*Dorman v. Charles Schwab Corp.*,
  780 F. App'x 510 (9th Cir. 2019) (*Dorman II*) .........................13, 16, 22, 34, 44

*Ducharme v. DST Sys., Inc.*,
  2017 WL 7795123 (W.D. Mo. June 23, 2017)...............................................22, 38

*Egelhoff v. Egelhoff*,
  532 U.S. 141 (2001)..........................................................................................43

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018)....................................................................12, 15, 17, 18

*Everett v. Paul Davis Restoration, Inc.*,
  771 F.3d 380 (7th Cir. 2014) ............................................................................46

*Fish v. Greatbanc Tr. Co*.,
  667 F. Supp. 2d 949 (N.D. Ill. 2009)..................................................................33

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)......................................................................................20, 24

*Graddy v. Blue Cross BlueShield of Tenn., Inc.*,
  2010 WL 670081 (E.D. Tenn. Feb. 19, 2010)...............................................32, 33

*Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dir.*,
  59 F.4th 1090 (10th Cir. 2023), *cert. denied sub nom. Argent Tr.*
  *Co. v. Harrison*, 2023 WL 6558426 (U.S. Oct. 10, 2023) ..............38, 39, 40, 41

*Hearn v. Comcast Cable Commc'ns, LLC*,
  992 F.3d 1209 (11th Cir. 2021) ........................................................................11

*Heimeshoff v. Hartford Life & Acc. Ins. Co.*,
    571 U.S. 99 (2013) ............................................................................42

*Henry v. Wilmington Tr. NA*,
    72 F.4th 499 (3d Cir. 2023), *cert. denied sub nom. Wilmington Tr.,*
    *N.A. v. Marlow*, 2023 WL 6797729 (U.S. Oct. 16, 2023) ....................39, 40, 41

*Hill v. Rent-A-Ctr., Inc.*,
    398 F.3d 1286 (11th Cir. 2005) ..........................................................15

*Holmes v. Baptist Health South Fla., Inc.*,
    2022 WL 180638 (S.D. Fla. Jan. 20, 2022) ................................ 20, 22, 35-37, 44

*Laasko v. Xerox Corp.*,
    566 F. Supp. 2d 1018 (C.D. Cal. 2008) ................................................45

*Langbecker v. Elec. Data Sys. Corp.*,
    476 F.3d 299 (5th Cir. 2007) .............................................................32

*LaRue v. DeWolff*,
    450 F.3d 570 (4th Cir. 2006) .............................................................26

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
    552 U.S. 248 (2008) ............................................... 7, 13, 25-28, 30, 35

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) ........................................................................26

*Merrimon v. Unum Life Ins. Co. of Am.*,
    758 F.3d 46 (1st Cir. 2014) ...............................................................42

*Merrow v. Horizon Bank*,
    2023 WL 7003231 (E.D. Ky. Oct. 24, 2023) .............................................22, 38

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ........................................................................20

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .......................................................................11, 12

*Randolph v. Green Tree Fin. Corp.--Alabama*,
    244 F.3d 814 (11th Cir. 2001) ...........................................................21

*Robertson v. Argent Tr. Co*,
   2022 WL 2967710 (D. Ariz. July 27, 2022)............................................21, 22, 38

*Schoemann v. Excellus Health Plan, Inc.*,
   447 F. Supp. 2d 1000 (D. Minn. 2006)...........................................................44, 45

*Sierra v. Cruise  Ships Catering & Servs., N.V.*,
   631 Fed. App'x 714 (11th Cir. 2015) ...........................................................20, 21

*Smith v. Aegon Companies Pension Plan*,
   769 F.3d 922 (6th Cir. 2014) .......................................................................43, 45

*Smith v. Bd. of Dir. of Triad Mfg., Inc.*,
   13 F.4th 613 (7th Cir. 2021) ..............................................................13, 35, 41

*Sprague v. Gen. Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998) ...........................................................................32

*Stolt-Nielsen S.A. v. Animal Feeds, Int'l Corp.*,
   559 U.S. 662 (2010) ...................................................................................12, 16

*Thole v. U.S. Bank N.A.*,
   140 S. Ct. 1615 (2020)....................................................................6, 29, 30, 33, 34

*US Airways, Inc. v. McCutchen*,
   569 U.S. 88 (2013)..........................................................................................17

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) .......................................................................................47

*Viking River Cruises, Inc. v. Moriana*,
   142 S. Ct. 1906 (2022)............................................... 6, 28, 31, 33-34, 39

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*,
   515 U.S. 528 (1995) .......................................................................................18

*Wagner v. Stiefel Labs., Inc.*,
   2015 WL 4557686 (N.D. Ga. June 18, 2015)....................................................32

*Wilson v. Standard Ins. Co.*,
   613 F. App'x 841 (11th Cir. 2015) ....................................................................17

*Yagy v. Tetra Tech, Inc.*,
   2024 WL 2715900 (C.D. Ca., May 17, 2024) ........................................21, 22, 37

**Statutes and Other Authorities**

9 U.S.C. § 1 ...............................................................................................9

9 U.S.C. § 2 .............................................................................................15

9 U.S.C. § 4 ...............................................................................................1

9 U.S.C. § 16(a)(1)(B) ...............................................................................1

29 U.S.C. 1102(a)(1) .................................................................................8

29 U.S.C. § 216(b) ...................................................................................24

29 U.S.C. § 1109 ...................................................................23, 39, 47

29 U.S.C. § 1132, *et seq*.................................. 1, 3, 4, 17, 19, 23, 39, 42, 47

29 U.S.C. § 1144(d) .................................................................................19

ERISA § 409, *et seq*....................................5-7, 10, 12-13, 19, 22, 25, 27, 32, 36, 38

ERISA § 502, *et seq*.............................2-7, 10-13, 19, 21-23, 25-38, 42, 44-45, 47

Federal Arbitration Act, § 16 ...................................................................1

Fed. R. Civ. P. 23 .................................................................27, 32, 33, 34

## STATEMENT OF JURISDICTION

The district court had jurisdiction over Plaintiffs' Employee Retirement Income Security Act ("ERISA") claims pursuant to 29 U.S.C. § 1132(e)(1). Defendants' motion to compel individual arbitration was properly before the district court pursuant to 9 U.S.C. § 4. The district court denied Defendants' motion on March 20, 2024. Appendix ("App."), Vol. 2, Tab 86, Opinion and Order. Defendants timely filed their notice of appeal on April 15, 2024. App., Vol. 2, Tab 87, Notice of Appeal. This Court has jurisdiction over this appeal under 9 U.S.C. § 16(a)(1)(B); *see Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1251 (11th Cir. 2004) ("Section 16 of the Federal Arbitration Act grants a party the right to file an interlocutory appeal from the denial of a motion to compel arbitration.").

## STATEMENT OF THE ISSUES

(1) Whether the district court erred in applying the judge-made "effective vindication" doctrine to deny Defendants' motion to compel individual arbitration of Plaintiffs' ERISA § 502(a)(2) claims where the governing ERISA benefit plan document mandates that such claims be arbitrated on an individual basis.

(2) Whether the district court erred in finding that Plaintiffs did not assent to the Third and Fourth Amendments to the governing ERISA benefit plan document.

## STATEMENT OF THE CASE

This appeal arises from the district court's denial of Defendants' renewed motion to compel individual arbitration of Plaintiff's claims under ERISA §§ 502(a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(2), (a)(3). The Plan under which Plaintiffs seek to recover contains a mandatory arbitration clause and class action waiver requiring individual arbitration (the "Arbitration Procedure"). Despite the plain language of the Plan, the district court concluded that the Plan's Arbitration Procedure was invalid as to Plaintiffs' claims under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) because it runs afoul of the "effective vindication" doctrine. And, although the law is clear that an ERISA participant need not consent to a plan amendment, the district court also concluded that the Arbitration Procedure was invalid as to Plaintiffs' claims under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) because it concluded that Plaintiffs did not consent to it.

Defendants appeal the district court's order denying their renewed motion to compel arbitration. Tab 86.

## Course of Proceedings

Plaintiffs filed this putative class action asserting claims on their own behalf and on behalf of a class of absent Plan participants and their individual Plan accounts

3

pursuant to ERISA §§ 502(a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(2) and (a)(3). App., Vol. 1, Tab 69, at ¶¶ 1, 110–111, 120–162.[1]

Plaintiffs allege that Defendants engaged in various breaches of ERISA that caused their Plan accounts and the Plan accounts of other Plan participants to lose value. *Id.* ¶¶ 1, 26–30, 121–162. Plaintiffs seek to assert ERISA claims "on behalf of the [Plan]" to remedy "Defendants' [alleged] unlawful conduct and obtain compensatory and equitable relief for the [Plan] and [all of] its participants." *Id.* ¶ 1.

Defendants sought to enforce the Plan's terms by moving to compel individual arbitration of Plaintiffs' ERISA claims pursuant to the FAA. App., Vol. 1, Tab 44, Mot. to Compel Arbitration. Defendants renewed their motion to compel on September 15, 2023. App., Vol. 2, Tab 78, Renewed Mot. to Compel Arbitration. Defendants argued that Plaintiffs were bound by the Plan's Arbitration Procedure and subject to individual arbitration because (1) Plaintiffs were current or former Plan participants and thus qualified as "Claimants" under the Plan; (2) Plaintiffs' claims all fell within the scope of the Arbitration Procedure (*i.e.*, the claims are all "Covered Claims" under the Plan); and (3) the class action waiver included in the

---

[1] By filing the action as a putative class action and seeking to certify a class in order to obtain plan-wide relief, Plaintiffs implicitly concede that they do <u>not</u> have an unfettered statutory right to seek monetary relief on behalf of absent Plan participants or their individual Plan accounts. Instead, as discussed in *infra* Section B.3., any such "right" is procedural in nature and can be waived.

Arbitration Procedure precluded Plaintiffs from seeking monetary relief on behalf of absent Plan participants or their individual Plan accounts.  *Id.*

In opposition, and relevant to the issue on appeal, Plaintiffs argued that the Plan's Arbitration Procedure was unenforceable because the class action waiver contained within it eliminated their purported substantive "right" to pursue plan-wide remedies under ERISA §§ 502(a)(2) and 409(a) on behalf of absent Plan participants.  App., Vol. 2, Tab 81, Opp. to Renewed Mot. to Compel Arbitration, at 1–2.  Plaintiffs also argued that the arbitration clause is void because they never consented to arbitration.  *Id.*  And, because the class action waiver is a non-severable component of the Arbitration Procedure, Plaintiffs argued that the entire Arbitration Procedure was null and void.  *Id.* at 25.

In their reply, Defendants emphasized that nothing in the Plan's Arbitration Procedure precludes Plaintiffs from suing in a representative capacity on behalf of the Plan.  App., Vol. 2, Tab 84, Reply in Support of Renewed Mot. to Compel Arbitration, at 2–11.  While Defendants acknowledged the representational nature of certain ERISA § 502(a)(2) claims, Defendants stressed that ERISA (1) does ***not*** provide Plaintiffs with a ***substantive*** statutory right to litigate on behalf of absent Plan participants or their individual Plan accounts, and (2) does ***not*** preclude waiver of any ***procedural*** right to pursue claims for monetary relief on behalf of absent Plan participants or their individual Plan accounts.  *Id.* Accordingly, Plaintiffs' ERISA

5

claims were subject to individual arbitrations and their potential recovery was limited to monetary losses to their individual Plan accounts as well as any appropriate non-monetary injunctive relief. *Id*.

Moreover, Defendants argued that (1) Plaintiffs' consent to the Arbitration Procedure is unnecessary and, in any case, (2) Plaintiffs' participation in the Plan constituted their consent to arbitrate their ERISA claims under the express terms of the Plan and under relevant case law. *Id.* at 12–15.

The district court denied Defendants' motion. App., Vol. 2, Tab 86, Opinion and Order. In doing so, the district court found that Plaintiffs have a ***nonwaivable, substantive*** right under ERISA §§ 502(a)(2) and 409(a) to seek monetary relief on behalf of all Plan participants, and all participants' individual Plan accounts. To that end, the Court relied on the U.S. Supreme Court's decision in *Viking River Cruises, Inc. v. Moriana,* 142 S. Ct. 1906 (2022) to conclude that ERISA § 502(a)(2) actions are more akin to principal-agent representational actions than to claim joinder representative actions. *Id*. at 34–35.[2] The district court then applied the judge-made "effective vindication" doctrine—a doctrine never applied by this Court or by the

---

[2] As explained in *infra* Section B.4., the district court's misconstruction of *Viking River* framed its analysis of Plaintiffs' claims, which resulted in error. Indeed, the Supreme Court in *Thole v. U.S. Bank N.A.,* confirmed that Plaintiffs' claims are more akin to a "claim joinder" form of claim, 140 S. Ct. 1615, 1620 (2020), and *Viking River* confirmed that such claims can be arbitrated on an individual basis. 142 S. Ct. at 1922–1924.

6

Supreme Court to invalidate an arbitration agreement's class action waiver—to hold that the Plan's Class Action Waiver is "invalid." *Id.* at 35.

The district court's finding that Plan participants have a nonwaivable, ***substantive*** statutory right to seek monetary relief on behalf of absent Plan participants and their individual Plan accounts evinces a fundamental misunderstanding of Supreme Court precedent, including *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248 (2008), Eleventh Circuit precedent, the nature of ERISA § 502(a)(2) claims, the relief available under ERISA §§ 502(a)(2) and 409(a), and the breadth of the FAA.

In addition, the district court found that the Third and Fourth Amendments to the Plan did not apply to Plaintiffs' claims for reformation and recission because Plaintiffs did not consent to these Amendments. App., Vol. 2, Tab 86, Opinion and Order, at 20. The district court's finding is contrary to the Plan's express language and ERISA's well-established framework that dictates that (1) a participant's consent to a plan amendment is irrelevant and (2) participation in a plan effectuates consent to be bound by an ERISA plan provision.

## Statement of Facts

Defendant Shapiro founded A360, Inc. in 2016. App., Vol. 1, Tab 69, Amended Complaint, ¶ 5. In 2017, A360 established the A360, Inc. Employee Stock Ownership Plan (the "Plan"), which is a defined contribution retirement plan

7

regulated by ERISA that allows participating employees to acquire a beneficial interest in the stock of their employer.  *Id*.  Plaintiffs allege they are participants in the Plan.  *Id*. ¶¶ 26-30.

As with other types of defined contribution plans, Plan participants, including Plaintiffs, have individual accounts within the Plan, and the value of the assets within those individual Plan accounts determines each participant's individual Plan benefits. The Plan is "maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), known as a plan document.

A360 reserved to itself the right to amend the Plan "at any time" and the right "to terminate the Plan at any time."   App., Vol. 1, Tab 44-1 at Ex. 1, § 13.1.  Consistent with this authority, A360 amended the Plan several times, including in 2019 when the Plan was terminated and the Arbitration Procedure was added to the Plan document pursuant to Plan Amendment Three.  *Id*. at Ex. 4.  A360 also adopted Amendment Four, which clarified that the Arbitration Procedure does not prevent injunctive relief that would have a plan-wide effect.  *Id*. at Ex. 5.

Amendment Three adopted in 2019 added to the Plan the Arbitration Procedure for all "Covered Claims." *Id*. at Ex. 4, § 19.1.  Amendment Three provides, in relevant part:

> 19.1.  Arbitration Requirement and Procedure.  Subject to and without waiver of full compliance with the Plan's administrative claims procedures as described in Sections 11.9 and 11.10 and the corresponding provisions of the summary plan description for this Plan

which, to the extent applicable, must be exhausted with respect to any claim before any arbitration pursuant to this Section 19.1, all Covered Claims must be resolved exclusively pursuant to the provisions of this Section 19.1 (the "Arbitration Procedure").

*Id*. A "Covered Claim" is defined in the Plan to include:

> **[A]ny claim made by or on behalf of a current or former Employee, a current or former Participant or current or former Beneficiary or by or on behalf of the Plan, the Trust or under the Trust Agreement (a "Claimant") which arises out of, relates to, or concerns this Plan**, the Trust Agreement, or the Trust, **including without limitation, … any claim asserting a breach of, or failure to follow, any provision of ERISA or the Code, including without limitation claims for breach of fiduciary duty**, ERISA § 510 claims, and claims for failure to timely provide notices or information required by ERISA or the Code (collectively, "Covered Claims").

*Id*. at Ex. 4, § 19.1(a) (emphasis added).  As noted above, "Claimant" is defined in the Arbitration Procedure to mean "a current or former Employee, a current or former Participant or current or former Beneficiary."  *Id*.

Arbitration of Covered Claims is mandatory under the terms of the Plan: Covered Claims "shall be resolved exclusively by binding arbitration …."  *Id*.  The arbitration "shall be governed  and enforced under ERISA [and] by the Federal Arbitration Act ('FAA'), 9 U.S.C. § 1, et seq."  *Id.* at Ex. 4, § 19.1(j).

A Claimant who elects to pursue claims under the Plan must do so in his or her individual capacity because the Plan precludes a claimant from pursuing a claim on a class or collective basis:

> **No Group, Class, or Representative Arbitrations.**  *All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group*

9

> *basis*.   Each arbitration shall be limited solely to one Claimant's
> Covered Claims, and that Claimant may not seek or receive any remedy
> which has the purpose or effect of providing additional benefits or
> monetary or other relief to any individual or entity other than the
> Claimant.

*Id*. at Ex. 4, § 19.1(b) (emphasis added).

The Arbitration Procedure specifies exactly what relief is available to Plan

participants asserting ERISA § 502(a)(2) claims (such as the ones at issue here):

> *[W]ith respect to any claim brought under ERISA § 502(a)(2) to seek*
> *appropriate relief under ERISA § 409, the Claimant's remedy, if any,*
> *shall be limited to (i) the alleged losses to the Claimant's individual*
> *Account resulting from the alleged breach of fiduciary duty, (ii) a pro-*
> *rated portion of any profits allegedly made by a fiduciary through the*
> *use of Plan assets where such pro-rated amount is intended to provide*
> *a remedy solely to Claimant's individual Account, and/or (iii) such*
> *other remedial or equitable relief as the arbitrator(s) deem(s) proper*
> *so long as such remedial or equitable relief does not include or result*
> *in the provision of additional benefits or monetary relief to any*
> *individual or entity other than the Claimant*, and is not binding on the
> Committee or Trustee with respect to any individual or entity other than
> the Claimant.

*Id.* (emphasis added).

Amendment Four clarified that it was only "remed[ies] which ha[ve] the

purpose or effect of providing additional benefits or monetary relief (whether such

monetary relief is described as legal damages or equitable relief) to any individual

or entity other than the Claimant" that a Claimant could not seek or receive in

arbitration.  App., Vol. 1, Tab 44-1, Ex. 5, § 19(b).

Amendment Four further clarified that "*[n]otwithstanding the foregoing, nothing in this provision shall be construed to preclude a Claimant from seeking injunctive relief, including, for example, seeking an injunction to remove or replace a Plan fiduciary*." *Id*. at Ex. 5, ¶ 1 (emphasis added). Additionally, the Plan makes clear that "nothing in this Arbitration Procedure shall preclude any party to the arbitration from seeking interim or provisional relief or remedies in aid of arbitration from a court of competent jurisdiction." *Id.*

Accordingly, the Plan's Arbitration Procedure requires Plaintiffs to arbitrate their ERISA § 502(a)(2) claims against Defendants on an individual basis and to pursue claims for monetary relief on behalf of their individual Plan accounts and any injunctive relief deemed appropriate. It precludes, however, Plaintiffs from bringing claims for monetary relief on behalf of absent Plan participants or their individual Plan accounts.

## Standard of Review

This Court reviews *de novo* the district court's denial of Defendants' motion to Compel Individual Arbitration. *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1212 (11th Cir. 2021).

## SUMMARY OF THE ARGUMENT

The FAA establishes "a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24

11

(1983), and requires courts to "'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.,* 570 U.S. 228, 233 (2013) (citation omitted); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619, 1621 (2018)). As explained by the Supreme Court, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A. v. Animal Feeds, Int'l Corp.*, 559 U.S. 662, 684 (2010) (emphasis in original); *see also Epic Sys.*, 138 S. Ct. at 1623 (enforcing class action waiver). Thus, the default rule when considering whether claims should be submitted to arbitration on an individual or class-wide basis is that claims are to be arbitrated on an individual basis.

Despite this established law, the district court erroneously concluded that by requiring individualized arbitration of Plaintiffs' ERISA claims, the Plan's Arbitration Procedure precluded Plaintiffs from vindicating their substantive statutory right to seek plan-wide relief under ERISA §§ 502(a)(2) and 409(a). App., Vol. 2, Tab 86, Opinion and Order, at 35–36. Neither the U.S. Supreme Court nor this Court have ever applied the "effective vindication" doctrine to invalidate a plan's arbitration provision containing a class action waiver like the one here. This is not the case in which to depart from precedent.

The Supreme Court has held that participants in defined contribution plans with individual plan accounts (like Plaintiffs) can vindicate their statutory rights

12

under ERISA §§ 502(a)(2) and 409(a) by seeking individual monetary relief on behalf of their plan account plus injunctive relief. *LaRue*, 552 U.S. at 255–56. In the context of a defined contribution plan, such individual relief will make a participant whole for any breaches of fiduciary duty impacting his or her individual plan account. *Id.* at 256. Other Supreme Court precedent makes clear that requiring individual arbitration under the FAA is consistent with a participant's right to effectively vindicate his or her federal statutory rights. *See, e.g.*, *Am. Exp.*, 570 U.S. at 234–35 (holding that antitrust claims under the Sherman Act were subject to individual arbitration); *see also* Section B.1., *infra*.

Consistent with this precedent, and in contrast with the district court's order, two other Circuits have recognized that any right a plan participant in a defined contribution plan may have to seek remedies on behalf of other participants' accounts under ERISA §§ 502(a)(2) and 409(a) is a waivable, procedural right (*i.e.*, not a substantive right). *See Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019) (*Dorman II*) ("Because 'arbitration is a matter of contract,' the Provision's waiver of class-wide and collective arbitration must be enforced according to its terms, and the arbitration must be conducted on an individualized basis."); *Smith v. Bd. of Dir. of Triad Mfg., Inc.*, 13 F.4th 613, 622 (7th Cir. 2021) (noting that individual arbitration of ERISA § 502(a)(2) claims is not "inherently incompatible with ERISA").

13

Given the Supreme Court's clear mandate and the plain language of the FAA and ERISA, this Court should reverse the district court's denial of Defendants' motion and order that this dispute be arbitrated on an individual basis pursuant to the terms of the Plan's Arbitration Procedure.

The Court should also reverse the district court's denial of Defendants' motion on the basis that the Third and Fourth Amendments to the Plan (that contain the Plan's Arbitration Procedure) are inapplicable to Plaintiffs' claims for recission and reformation because Plaintiffs purportedly did not consent to these Amendments. App., Vol. 2, Tab 86, Opinion and Order, at 20.    The district court's ruling is inconsistent with the Plan's terms and with ERISA's well-established framework that (1) a participant's consent to a plan amendment is irrelevant and, in any case, (2) participation in a plan is all that is needed to effectuate consent to be bound by an ERISA plan provision, including an arbitration provision.

## ARGUMENT

The analysis of whether to compel a matter to arbitration is typically limited to consideration of two issues: (1) whether the parties entered into an arbitration agreement, and (2) whether the plaintiff's claims are covered by the arbitration agreement. *Citibank, N.A. v. Stok & Assocs., P.A.*, 387 F. App'x 921, 926, n.4 (11th Cir. 2010).

For purposes of this appeal, there is no dispute that the Plan contains an

14

arbitration agreement or that Plaintiffs' claims fall within the scope of the arbitration agreement. Instead, the dispute centers around the validity of the Arbitration Procedure, which contains a class action waiver. While the validity of a class action waiver is typically reserved for the arbitrator(s), the Arbitration Procedure expressly delegates to the district court the authority to decide that issue. App., Vol. 1, Tab 44-1, at Ex. 4, § 19.1(b). As set forth below, the district court erred in finding that the Plan's Arbitration Procedure is invalid. As such, the district court's ruling should be reversed.

### A.    The Plan's Class Action Waiver Is Valid and Should Be Enforced

### 1.    The FAA And ERISA Require Enforcement Of The Plan's Arbitration Provision As Written

The FAA mandates that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As this Court and the Supreme Court have repeatedly recognized, the FAA reflects Congress's intent to establish a "liberal federal policy favoring arbitration." *Epic Sys. Corp.*, 138 S. Ct. at 1621 ("[The FAA] establishes 'a liberal federal policy favoring arbitration agreements.'"); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("The principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms." (citations and quotation marks omitted)); *Hill v. Rent-A-Ctr., Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005) ("The FAA embodies a 'liberal federal policy

15

favoring arbitration agreements'" (citation omitted)).  This strong policy favoring arbitration "holds true for claims that allege a violation of a federal statute," including ERISA.  *See Am. Exp.,* 570 U.S. at 233*; see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1379 (11th Cir. 2005) (compelling arbitration of ERISA claims after determining that dispute resolution policy was valid); *Dorman II,* 780 F. App'x. at 513-514 ("As every circuit to consider the question has held, ERISA contains no congressional command against arbitration, therefore an agreement to arbitrate ERISA claims is generally enforceable." (citing circuit court cases)).

The FAA requires courts to "'rigorously enforce' arbitration agreements according to their terms."  *Am. Exp.*, 570 U.S. at 233.  "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must 'give effect to the contractual rights and expectations of the parties.'"  *Stolt-Nielsen S.A.*, 559 U.S. at 682 (citation omitted).  This is true where an arbitration agreement *does not* include a class action waiver.  *Id.* at 684 ("An implicit agreement to authorize class-action arbitration, however, is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate. This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator.").  This is also true where an arbitration agreement *does* include such

16

a waiver. *See, e.g., Epic Sys.*, 138 S. Ct. at 1620, 1623. Indeed, the Supreme Court has repeatedly held that class action waivers in arbitration provisions are valid and enforceable because, "[i]n the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys.*, 138 S. Ct. at 1619.

ERISA also requires that the Plan be enforced as written, which necessarily includes any class action waiver that is part of the Plan's Arbitration Procedure. *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013); *see also Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (recognizing that ERISA's statutory scheme is "built around reliance on the face of written plan documents"); *Wilson v. Standard Ins. Co.*, 613 F. App'x 841, 844 (11th Cir. 2015) (same); 29 U.S.C. § 1132(a) (permitting claims only "under the terms of the plan"). This strict requirement to enforce plan terms as written ensures that fiduciaries further "ERISA's principal function: to 'protect contractually defined benefits.'" *McCutchen*, 569 U.S. at 100–101 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985)).

The district court's order denying Defendants' motion ignores these fundamental principles and should be reversed. The district court undermined the rigorous enforcement of arbitration provisions and deprived plan fiduciaries of the needed certainty in being able to rely on lawful plan terms.

17

### 2. There Is No Disharmony Between The FAA Policy Of Enforcing Arbitration Agreements As Written And The Rights Available To Plaintiffs Under ERISA

The Supreme Court has repeatedly held that class action waivers in arbitration provisions are valid and enforceable because, "[i]n the [FAA], Congress has instructed federal courts to enforce arbitration agreements according to their terms— including terms providing for individualized proceedings." *Epic Sys.*, 138 S. Ct. at 1619. This clear FAA policy can only be displaced if another federal statute requires it.

A party claiming that a statute cannot be harmonized with the FAA (and, as such, should displace the FAA) "bears the heavy burden of showing 'a clearly expressed congressional intention' that such a result should follow." *Id.* at 1624 (citing *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995)). Congress's intention on this point "must be 'clear and manifest.'" *Id.* Given this high bar, it is no surprise that the Supreme Court "has rejected *every* such effort to date . . . with statutes ranging from the Sherman and Clayton Acts to the Age Discrimination in Employment Act, the Credit Repair Organizations Act, the Securities Act of 1933, the Securities Exchange Act of 1934, and the Racketeer Influenced and Corrupt Organizations Act." *Id.* at 1627 (emphasis in original).

The district court erred in failing to apply this legal standard when it implicitly determined that ERISA displaced the FAA and precluded arbitration clauses with

18

class action waivers.  Had the district court applied the correct legal standard, it would have found that nothing in ERISA—including ERISA §§ 502(a)(2) and 409(a)—prohibits (or even references) individual arbitration.  To the contrary, ERISA expressly affirms Congress's intention not to interfere with the normal operation of other federal statutes, including the FAA.  *See* 29 U.S.C. § 1144(d) ("Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States . . . or any rule or regulation issued under any such law."); *see also Cedeno v. Sasson,* 100 F.4th 386, 413 (2d Cir. 2024) (Menashi, J., dissenting) ("Courts should be reluctant to tamper with the enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text … and the notion that [Plaintiff] must recover only plan-wide remedies is such an extension." (citations omitted)).

**B.**    **The District Court Erred In Applying The "Effective Vindication" Doctrine To Refuse Enforcement Of The Plan's Arbitration Procedure And Class Action Waiver**

Instead of enforcing the Plan's arbitration agreement as written, the district court erroneously applied the judge-made "effective vindication" doctrine to override the Plan language requiring individual arbitration of Plaintiffs' ERISA claims under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and to sidestep the clear mandates of both the FAA and ERISA requiring the enforcement of plan arbitration provisions in accordance with their terms.  As shown below, the "effective

vindication" doctrine does not apply and any reliance on the doctrine to override the Plan's Arbitration Procedure is improper.

### 1.    The "Effective Vindication" Doctrine

The Supreme Court first referenced the "effective vindication" doctrine in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 637 n.19 (1985). Although declining to apply the doctrine, the Court suggested in ***dicta*** that a narrow exception to the FAA might exist for arbitration provisions that operate "as a prospective waiver of a party's right to pursue statutory remedies." *Id.* Since *Mitsubishi*, the Supreme Court has discussed the "effective vindication" doctrine but has never applied it to invalidate an arbitration agreement. *See Am. Exp.*, 570 U.S. at 229 (holding that antitrust claims under Sherman Act were subject to individual arbitration and noting "the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy" (emphasis in original)); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 32 (1991) (declining to apply the "effective vindication" doctrine to Age Discrimination in Employment Act ("ADEA") claims even though the ADEA expressly authorizes "collective" actions). Neither has this Court ever applied the "effective vindication" doctrine to invalidate an arbitration agreement based on its class action waiver provision. *See Holmes v. Baptist Health S. Fla., Inc.*, No. 21-22986, 2022 WL 180638, *4 (S.D. Fla. Jan. 20, 2022) (citing *Sierra v. Cruise Ships*

20

*Catering & Servs., N.V.*, 631 Fed. App'x 714, 718 (11th Cir. 2015) and *Randolph v. Green Tree Fin. Corp.--Alabama*, 244 F.3d 814, 818–19 (11th Cir. 2001) ("The Plaintiffs point to no authority where the Eleventh Circuit has applied the 'effective vindication' doctrine to void an arbitration clause.  And the Eleventh Circuit has expressed a hesitancy to do so.")

The district court erred in applying the "effective vindication" doctrine to invalidate the Plan's Arbitration Procedure in this case.  Plaintiffs simply do not have a nonwaivable, substantive right that would be frustrated by enforcing the Plan as written to bring an ERISA action seeking monetary relief on behalf of all absent Plan participants and their individual Plan accounts.  Rather, the only ***substantive*** right they have is the right to assert claims relating to their own individual plan accounts.  That right is indisputably available in individualized arbitration.  *See Yagy v. Tetra Tech, Inc*., 2024 WL 2715900, at *7 (C.D. Ca., May 17, 2024) (plaintiff's ERISA §§ 502(a)(2) and (a)(3) claims could be pursued in individual arbitration); *Robertson v. Argent Tr. Co*, 2022 WL 2967710, at *10 (D. Ariz. July 27, 2022) ("[T]he Plan's arbitration provision does not prevent Plaintiff from effectively vindicating statutory rights under ERISA. There is no indication that ERISA bars plan participants from choosing to waive collective action when an individualized remedy is still available."); *Cedeno,* 100 F.4th at 410 (Menashi, J., dissenting) ("A participant in a defined-contribution pension plan … may proceed under Sections 502(a)(2) and

21

409(a) to seek relief that benefits only his or individual account within the plan. Requiring [a participant] to pursue relief in an arbitral forum does not alter that substantive right."). The right to represent absent plan participants and their individual plan accounts, in contrast, is a procedural right that can be waived. *See Am. Exp.*, 570 U.S. at 234-235.

Consistent with the foregoing, courts across the country have enforced arbitration provisions that require individual arbitration of ERISA §§ 502(a)(2) and (a)(3) claims. *See*, *e.g.*, *Dorman II,* 780 Fed. App'x at 513–514 (plaintiff required to arbitrate ERISA §§ 502(a)(2) and (a)(3) claims on an individualized, and not class, basis); *Merrow v. Horizon Bank,* 2023 WL 7003231, *6 (E.D. Ky. Oct. 24, 2023) (holding that the plaintiffs' ERISA §§ 502(a)(2) and (a)(3) claims must be brought in individual arbitration pursuant to the Plan's arbitration provision and class action waiver); *Avecilla v. Live Nation Entm't, Inc,* 2023 WL 5354401, *5 (C.D. Cal. Aug. 7, 2023) (same); *Yagy,* 2024 WL 2715900, at *7 (same); *see also Robertson v. Argent Tr. Co.,* 2022 WL 2967710, *10 (D. Ariz. July 27, 2022) (compelling plaintiff's ERISA § 502(a)(2) claims into individual arbitration pursuant to the plan's arbitration procedure and class action waiver); *Holmes v. Baptist Health S. Fla., Inc.*, No. 21-22986, 2022 WL 180638, *4 (S.D. Fla. Jan. 20, 2022) (same); *Ducharme v. DST Sys., Inc.*, 2017 WL 7795123, *1 (W.D. Mo. June 23, 2017) (dismissing ERISA § 502(a)(2) claims and enforcing individual arbitration where

plaintiff "waived his right to act in a representative capacity on behalf of a class or collective action"). The district court erred in failing to do so here.

> **2.    The Language Of ERISA Does Not Support Application Of The "Effective Vindication" Doctrine To Bar Individual Arbitration In This Case**

The district court's conclusion that the Arbitration Procedure is unenforceable because it "prevents the effective vindication of [Plaintiffs'] ERISA right[s]" is contrary to the plain text of ERISA § 502, 29 U.S.C. § 1132. App., Vol. 2, Tab 86, Opinion and Order, at 23-36. Under ERISA § 502(a)(2), a plan participant can bring a civil action "for appropriate relief under section 1109 of this title." 29 U.S.C. § 1132(a)(2). Section 1109, in turn, provides that a plan fiduciary who breaches its ERISA responsibilities:

> shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

Nothing in these provisions indicates a Congressional intent to create a nonwaivable, substantive right for a plan participant to obtain monetary relief on behalf of absent plan participants or their individual plan accounts. Even if these sections can be read to contemplate the *possibility* of plan-wide relief in some circumstances, it does not mean that they ***guarantee a nonwaivable, substantive***

23

right to pursue such relief on behalf of absent plan participants and their individual plan accounts. *See Am. Exp.*, 570 U.S. at 236 ("[S]tatutory permission [does] 'not mean that individual attempts at conciliation [are] intended to be barred.'") (quoting *Gilmer*, 500 U.S. at 32). Any purported "right" to seek relief on behalf of absent plan participants conferred under these provisions is procedural in nature and can be waived through a valid arbitration agreement requiring individual arbitration.

This conclusion is supported by the fact that arbitration agreements requiring individual arbitration of claims arising under federal statutes that ***expressly permit*** class-wide or representative actions have been deemed enforceable by the Supreme Court. For example, in *Gilmer*, the petitioner sought to avoid arbitration of his claims under the ADEA, which expressly allows employees to recover on behalf of "themselves and other employees similarly situated." 500 U.S. at 32; 29 U.S.C. § 216(b); *see also Am. Exp.*, 570 U.S. at 237 (noting that *Gilmer* upheld an arbitration agreement and class waiver even though the ADEA "expressly permitted collective actions"). Despite the ADEA's plain language, the Supreme Court "had no qualms in enforcing a class waiver in an arbitration agreement." *Am. Exp.*, 570 U.S. at 237. As the Court made clear, "the fact that the [ADEA] provides for the ***possibility*** of bringing a collective action does not mean that individual attempts at conciliation were intended to be barred." *Gilmer*, 500 U.S. at 32 (citation omitted) (emphasis added).

24

Unlike the ADEA, ERISA §§ 502(a)(2) and 409(a) do not create an express "right" to collective or group action. And, even if they did, the Supreme Court has made clear any such right is procedural in nature and can be waived through an arbitration agreement requiring individual arbitration.

3.     **Plaintiffs Only Have A Substantive Right Under ERISA § 502(a)(2) To Seek Monetary Relief With Respect To Their Individual Plan Accounts; Any Purported "Right" To Seek Plan-Wide Monetary Relief Is A Procedural Right That Can Be Waived.**

As set forth above, the district court concluded that the Arbitration Procedure was unenforceable because it allegedly prevented Plaintiffs from effectively vindicating their statutory rights under ERISA. However, in reaching this conclusion, the district court misapplied the U.S. Supreme Court's decision in *LaRue.* App., Vol. 2, Tab 86, Opinion and Order, at 32–33.

In *LaRue,* the Supreme Court made clear that a participant in a defined contribution plan, like the Plan here, can pursue a claim under ERISA § 502(a)(2) seeking to recover only the plan losses attributable to his or her individual plan account. 552 U.S. at 256. That is, the participant has a statutory right to seek monetary relief on behalf of his or her individual plan account (as well as appropriate

non-monetary injunctive relief) when his plan account has been harmed by a fiduciary's alleged ERISA violations. *See id.*

In *LaRue,* the plaintiff participated in a 401(k) plan which, like the Plan here, is a form of a defined contribution (or individual account) plan. *Id*. at 250–251. The plaintiff claimed that the plan administrator breached its fiduciary duty by failing to carry out his investment instructions and thus "'depleted' his interest in the Plan by approximately $150,000." *Id*. at 251. In the proceeding below, the Fourth Circuit, relying on *Massachusetts Mutual Life Insurance Company v. Russell*, 473 U.S. 134, 146 (1985), held that the plaintiff had failed to state a claim under ERISA § 502(a)(2) because ERISA § 502(a)(2) provides remedies only for the "entire plan" and does not allow for recovery of losses to individual accounts. *LaRue v. DeWolff*, 450 F.3d 570, 572 (4th Cir. 2006).

The Supreme Court reversed the Fourth Circuit and held that a participant in a defined contribution plan may seek relief under ERISA § 502(a)(2) for the harm a fiduciary breach causes to the value of a participant's individual plan account (and not the plan as a whole). *LaRue*, 552 U.S. at 256. In so doing, the Court distinguished between defined benefit plans, like the one at issue in *Russell,* and defined contribution plans. *Id*. at 254–55. The Court reasoned that the "entire plan" language in *Russell* made sense in the defined benefit plan context because an

individual's fixed retirement payment under a defined benefit plan is not affected by misconduct unless the misconduct impacts the potential for default of the entire plan.

Thus, in the context of a defined benefit plan, the focus is necessarily on the alleged injury to the entire plan. In the defined contribution plan context, however, emphasis on injury to the "entire plan" is "beside the point" because "fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive." *Id*. at 255–56; *see also id.* at 256 (*Russell*'s "entire plan" language "appears nowhere in § 409 or § 502(a)(2)" and "does not apply to defined contribution plans").

Under *LaRue*, relief is available on an individual plan account basis even if the alleged breach of fiduciary duty may have impacted other plan accounts too. *See id.* Thus, a participant suing to remedy the harm caused by a fiduciary breach can pursue the ERISA § 502(a)(2) claim on behalf of her individual plan account only. But, whether that participant can sue on behalf of other allegedly harmed accounts is a separate procedural question.

A participant in such a situation could seek to sue on behalf of all plan accounts by seeking to have a class action certified, but that is a procedural right that can be waived. *See Am. Exp.*, 570 U.S. at 234–235 ("One might respond, perhaps, that federal law secures a nonwaivable opportunity to vindicate federal policies by satisfying the procedural strictures of Rule 23 or invoking some other informal class

mechanism in arbitration. But we have already rejected that proposition in *AT&T Mobility*.").  The right to seek class certification is not a nonwaivable, substantive right.

Accordingly, an arbitration provision limiting participants to individual monetary relief and appropriate non-monetary injunctive relief does not impinge on a participant's rights under ERISA and does not implicate the "effective vindication" doctrine.  *See also infra*, Section B.5.  Consistent with *LaRue*, a participant may seek relief on an individual plan account basis even if the alleged breach of fiduciary duty may have also impacted other plan accounts, but that participant does not have a nonwaivable, substantive right to sue on behalf of absent plan participants' individual plan accounts.

### 4. A Claim Under ERISA § 502(a)(2) Is A "Claim Joinder" Form Of Representative Action And Can Be Arbitrated On An Individual Basis

The district court misconstrued the U.S. Supreme Court's decision in *Viking River Cruises, Inc. v. Moriana*, to conclude that Plaintiffs' claims are "more akin to the representative of a single principal resolving a single claim than as the lead plaintiff in a package of claims joined together."  App., Vol. 2, Tab 86, Opinion and Order, at 34–35.

In *Viking River*, the Supreme Court recognized two ways in which a statute could allow for "representative" claims and concluded that the type of

"representative" claim at issue here—a form of claim joinder—can be arbitrated on an individual basis.  142 S. Ct. 1906, 1922–1924 (2022).  The Supreme Court considered whether an arbitration provision requiring individual arbitration of claims under the California Private Attorneys General Act ("PAGA") was enforceable.  The arbitration provision at issue prohibited the plaintiff from bringing in arbitration "any dispute as a class, collective, or representative PAGA action." 142 S. Ct. at 1916.  Interpreting PAGA, the Court observed that there were two ways in which a PAGA claim could be considered "representative"—(1) when "the employee plaintiff sues as an 'agent or proxy' of the State," and (2) when the plaintiff's claims "are predicated on code violations sustained by other employees" (which the Court described as a form of "claim joinder").  *See id*. at 1914, 1916.

The Supreme Court held that the arbitration provision's prohibition on bringing a "representative" PAGA claim in arbitration was unenforceable with respect to the first form of PAGA claim, but the provision was enforceable with respect to the second, "claim joinder," form of PAGA claim.  *See id.* at 1922–24.

A representative claim under ERISA § 502(a)(2) is a form of "claim joinder." The Supreme Court's decision in *Thole v. U.S. Bank N.A.,* 140 S. Ct. 1615 (2020)— which the district court did not discuss—makes this clear because it finds that individual standing is necessary in an ERISA § 502(a)(2) action, which would not be true if such claims were "agent or proxy" claims.

At issue in *Thole* was whether two participants in an ERISA defined benefit pension plan had Article III standing to bring a suit under ERISA § 502(a)(2) for alleged breach of fiduciary duty.  Among other things, the plaintiffs argued they did not need to show individual injury for purposes of Article III standing because under ERISA § 502(a)(2) they are bringing suit as "representatives of the plan itself."  140 S. Ct. at 1620.  The Supreme Court rejected this argument and found that the participants had to establish individual standing.  In particular, the Court explained that "in order to claim 'the interests of others, the litigants themselves still must have suffered an injury in fact, thus giving' them 'a sufficiently concrete interest in the outcome of the issue in dispute,'" and "[t]he plaintiffs themselves do not have a concrete stake in this suit."  *Id.* (citation omitted).

Under *Thole,* an ERISA § 502(a)(2) claim cannot be considered to be similar to an "agency or proxy" type of "representative" action because a plaintiff is required to demonstrate his or her own injury for Article III standing to bring an ERISA § 502(a)(2) claim.  *See Cedeno*, 100 F.4th at 413 (Menashi, J., dissenting) ("*LaRue* and *Thole* make clear that an ERISA plaintiff sues in his own individual capacity to recover for his own injuries" to his own individual plan account.).  If the ERISA § 502(a)(2) claim could be considered an "agency or proxy" type of "representative" action, then establishing that a participant had individual standing would be unnecessary as long as the plan suffered some injury.

30

That an ERISA § 502(a)(2) claim is not an "agency or proxy" type of representative action is further supported by the plain language of ERISA itself. ERISA § 502(a)(2) specifies that claims under that section may only be brought by the Secretary, a participant, beneficiary, or fiduciary. Nothing in ERISA authorizes a Plan to bring suit on its own behalf against breaching fiduciaries. Since the Plan is not authorized to bring suit, a participant bringing suit under ERISA § 502(a)(2) cannot be bringing such a claim on behalf of the Plan as an "absent principal." *Viking River*, 142 S. Ct. at 1922; *see also Coan v. Kaufman,* 457 F.3d 250, 258 (2d Cir. 2006) ("Because ERISA plans cannot bring suit against fiduciaries on the plans' own behalf under section 502, the lawsuits of individual participants are not derivative either.").

Rather, ERISA § 502(a)(2) claims should be analogized to the second form of "representative" action under PAGA as articulated by *Viking River—i.e.*, as a form of "claim joinder" that would "allow a party to unite multiple claims against an opposing party in a single action." 142 S. Ct. at 1915. Under *Viking River*, any attempt to create a nonwaivable mechanism for this sort of "claim joinder" conflicts with the FAA. *Id.* at 1923.

To that end, several courts, including those in this Circuit, have required a participant to satisfy procedural requirements before allowing a participant to proceed under ERISA § 502(a)(2) on behalf of absent plan participants or their

31

individual plan accounts. *See, e.g., Wagner v. Stiefel Labs., Inc.*, 2015 WL 4557686, at *13 (N.D. Ga. June 18, 2015) ("to permit the action to go forward without any procedural safeguards 'would be overly myopic,' as individual absent [p]lan participants may have made decisions to exercise their put rights based on their unique circumstances"; concluding that individual plaintiffs lacked standing to pursue ERISA § 502(a)(2) claim on behalf of absent plan participants and their plan accounts because plaintiffs "have done nothing to notify or otherwise involve other [p]lan participants"); *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 318 (5th Cir. 2007) (vacating class certification order of ERISA § 502(a)(2) claims on behalf of the plan due to the participant's inability to satisfy the requirements of Rule 23; in doing so, the court explained that "we are confident that the subtlety of the fiduciary claims alleged, the intraclass conflicts and the individualized nature of potential defenses mandated that the case proceed as a class action and equally mandated, on the facts before us, against the propriety of a Rule 23(b)(2) class"); *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 397–399 (6th Cir. 1998) (plaintiffs, who asserted ERISA § 502(a)(2) breach of fiduciary duty claims and who sought relief under ERISA § 409(a), were not allowed to represent absent plan participants due to failure to comply with Rule 23; court held that the district court erred in awarding "class-wide relief" without requiring the "necessary connection to the merits of each individual claim.  Rule 23 does not permit that result"); *Graddy v.*

*Blue Cross BlueShield of Tenn., Inc.,* 2010 WL 670081, at *8–10 (E.D. Tenn. Feb. 19, 2010) (plaintiff-participant precluded from representing absent plan participants in case alleging an improper denial of benefits and breach of ERISA fiduciary duties due to failure to satisfy Rule 23; court ordered plaintiff to file an amended complaint that "is limited to the individual claims", including ERISA § 502(a)(2) claims, against defendant); *Fish v. Greatbanc Tr. Co*., 667 F. Supp. 2d 949, 951 (N.D. Ill. 2009) ("to permit the action to go forward without the type of protections provided by [Rule 23] or their equivalent would be overly myopic"); *DeLeon v. Teamsters Loc. 802, LLC*, 2021 WL 1193191, at *18 (E.D.N.Y. Mar. 29, 2021) (an action cannot "be brought in a 'representative capacity on behalf of the plan' if the plaintiff does not take any steps to become a bona fide representative of other interested parties"); *Abbott v. Lockheed Martin Corp.*, 2010 WL 547172, at *4 (S.D. Ill. Feb. 10, 2010) (reasoning that the plaintiff may not proceed in a representative capacity if the plaintiff does not take any steps to become a bona fide representative of the parties).

The district court misconstrued *Viking River,* did not consider the Supreme Court's *Thole* decision, and did not consider the need for procedural protections for absent Plan participants.  If—as the district court determined—Plaintiffs have a substantive right under ERISA to pursue monetary relief on behalf of absent Plan participants and their individual Plan accounts, pursuant to which the Plaintiffs are

suing as an "agent or proxy" of a single principal, then (1) establishing that a participant had individual standing would be unnecessary as long as the plan suffered some injury, and (2) courts would not be concerned about ensuring procedural protections for absent plan participants. This is not the law.

Under the Supreme Court's holdings in *Viking River* and *Thole* and precedent refusing to allow a plan participant to represent absent plan participants without satisfying Rule 23 or similar procedural requirements, the right of a participant to represent absent plan participants and their accounts must not be an inherent one but a waivable, procedural right. The district court erred in finding to the contrary.

> **5.  Appellate And Other District Courts Have Concluded That Claims Under ERISA §§ 502(a)(2) and (a)(3) Can Be Arbitrated On An Individual Basis And Cases That Have Not Are Wrong**

The foregoing analysis is supported by the fact that numerous courts have held that ERISA §§ 502(a)(2) and (a)(3) claims can be arbitrated on an individual basis. For instance, the Ninth Circuit in *Dorman II* held that a plan document's "waiver of class-wide and collective arbitration must be enforced according to its terms." 780 F. App'x at 514. The court thus reversed the district court and held that plaintiff's claims pursuant to ERISA §§ 502(a)(2) and (a)(3) were subject to individual arbitration. *Id.* The court reasoned that "[b]ecause 'arbitration is a matter of contract,' the [arbitration agreement, including its] waiver of class-wide and collective arbitration[,] must be enforced according to its terms." *Id.* (citation

34

omitted). Accordingly, the court found that the ERISA §§ 502(a)(2) and (a)(3) claims were subject to arbitration and that "the arbitration must be conducted on an individualized basis." *Id.*

Likewise, the Seventh Circuit observed that requiring "individualized arbitration" is not "inherently incompatible with ERISA." *Smith*, 13 F.4th at 622. The Court read *LaRue* correctly as providing that ERISA § 502(a)(2) "'authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's *individual* account.'" *Id.* (alteration in original). The Seventh Circuit's reasoning in *Smith* supports the conclusion that the class action waiver here is enforceable. This is because *Smith* recognized that ERISA claims for fiduciary breach may be brought on an ***individualized*** basis. *Id. **Individual*** arbitration therefore fits squarely within that framework, and each participant will receive the same remedy in arbitration as he or she would receive in an individual court action (*i.e.*, monetary relief as to the participant's plan account and any non-monetary injunctive relief deemed appropriate).[3]

---

[3] The *Smith* court ultimately affirmed the district court's denial of a motion to compel arbitration based on the "effective vindication" doctrine where the court concluded that the plan language precluded a participant from seeking injunctive relief that would have a plan-wide impact, like an injunction to remove a fiduciary. *Smith*, 13 F.4th at 621–22. As discussed below, this aspect of the *Smith* decision was incorrect.

In *Holmes v. Baptist Health South Fla., Inc.,* the Southern District of Florida addressed the precise issue before the district court in this case—whether an ERISA plan's class action waiver, which precluded plan participants from bringing ERISA § 502(a)(2) claims in arbitration on a class, group, or representative basis and from receiving relief that provided "additional benefits or monetary relief to any other person," prevents the effective vindication of rights allegedly guaranteed in ERISA §§ 502(a)(2) and 409(a). 2022 WL 180638, at *1–3. Before analyzing this specific issue, the *Holmes* court acknowledged the rarity with which courts apply the "effective vindication" exception. *Id*. at *2. The court specifically noted that the Eleventh Circuit has never applied the "effective vindication" doctrine to void an arbitration clause containing a class action waiver. *Id*.

Turning to the language before it, the *Holmes* court found that the class action waiver only prohibited relief that provides "additional benefits or monetary relief to any person" other than the claimant. *Id*. at *3. It did not preclude injunctive relief that would have a plan-wide effect, such as the ability to seek removal of the plan's fiduciaries. *Id*. Given that the class action waiver allowed each of the individual claimants to recover monetary relief on behalf of their individual plan accounts, and to recover plan-wide injunctive relief that does not provide additional benefits or monetary relief to others, the court found that the class action waiver did not preclude

the effective vindication of ERISA rights and compelled the plaintiffs into individual arbitration.  *Id.*

A similar decision was recently reached by the Central District of California in *Yagy v. Tetra Tech, Inc.*  In *Yagy*, the Court granted Defendants' motion to compel individual arbitration of the plaintiff's ERISA §§ 502(a)(2) and (a)(3) claims pursuant to the plan's arbitration and class action waiver provision.  2024 WL 2715900, at 1–2.  The Court found that, as here, the arbitration provision, which "explicitly limits the arbitrator to awarding monetary relief on an individual (not class, collective, or representative) basis," "does not constitute a prospective waiver of Plaintiff's right to pursue her statutory remedies."  *Id.* at 2, 8.  The Court disagreed with Plaintiff's contention that she should be allowed to pursue plan-wide monetary relief, noting that "nothing in [ERISA] § 502(a)(2) suggests that [a] plaintiff has an unqualified right to bring a collective action to recoup all of a fiduciary's losses and gains at once."  *Id.* at 6 (citation omitted).  The Court also found that the plaintiff could pursue the requested injunctive and equitable relief pursuant to ERISA §§ 502(a)(2) and (a)(3), including removal of the plan's fiduciary, on an individual basis.  *Id.* at 8.

As in *Holmes* and *Yagy*, the Plan's Arbitration Procedure only precludes the provision of "additional benefits or monetary relief to any individual or entity other than the Claimant."  App., Vol. 1, Tab 44-1 at Ex. 4, § 19.1(b).  Thus, as in *Holmes*

37

and *Yagy*, the Arbitration Procedure does not preclude the effective vindication of ERISA rights by requiring individualized arbitration. Other courts have held similarly. *See, e.g., Merrow*, 2023 WL 7003231, at *6 (compelling plaintiffs' ERISA §§ 502(a)(2) and (a)(3) claims into individual arbitration); *Robertson,* 2022 WL 2967710, at *10 (compelling plaintiff's ERISA § 502(a)(2) claims into individual arbitration); *Ducharme*, 2017 WL 7795123, at *1 (dismissing ERISA § 502(a)(2) claims and enforcing individual arbitration where plaintiff "waived his right to act in a representative capacity on behalf of a class or collective action"); *Avecilla*, 2023 WL 5354401, at *5 (compelling plaintiff's ERISA §§ 502(a)(2) and (a)(3) claims into individual arbitration pursuant to the plan's arbitration procedure and class action waiver).

The district court addressed recent decisions by the Tenth and Third Circuits declining to enforce a plan's class action waiver because the courts construed the language in ERISA §§ 502(a)(2) and 409 as providing participants with a non-waivable, ***substantive*** right (as opposed to a waivable, ***procedural*** right) to seek relief on behalf of a plan's absent participants and their plan accounts. App., Vol. 2, Tab 86, Opinion and Order, at 26-28, 35; *see Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dir.*, 59 F.4th 1090, 1109 (10th Cir. 2023), *cert. denied sub nom. Argent Tr. Co. v. Harrison*, 2023 WL 6558426 (U.S. Oct. 10, 2023) (finding a plan's arbitration provision and class action waiver was invalid because it "directly

conflicts with the statutory remedies available under 29 U.S.C. §§ 1109 and 1132(a)(2), (a)(3)" by precluding, among other things, a participant from obtaining injunctive relief, including removal and replacement of the plan's trustee); *Henry v. Wilmington Tr. NA*, 72 F.4th 499, 507 (3d Cir. 2023), *cert. denied sub nom. Wilmington Tr., N.A. v. Marlow*, 2023 WL 6797729 (U.S. Oct. 16, 2023) (applying the "effective vindication" doctrine to find the plan's class action waiver was invalid because it "prohibit[ed] participants from . . . 'seek[ing] or receive[ing] any remedy which has the purpose or effect of providing additional benefits or monetary or other relief' to any third party").   The district court concluded that the arbitration procedure in this case "is invalid under the "effective vindication" doctrine for the reasons given in those cases."   App., Vol. 2, Tab 86, Opinion and Order, at 35. Plaintiffs will also likely point to the recent decision by the Second Circuit that came out the same way.  *See Cedeno v. Sasson,* 100 F.4th 386 (2d Cir. 2024).

These decisions from the Tenth, Third, and Second Circuits should be disregarded because their reasoning is fundamentally flawed.  Those decisions either did not address or misconstrued the Supreme Court's decision in *Viking River*, and they failed to address the need to protect the rights of absent plan participants that has been recognized by a number of other courts. *See supra* Section B.4.

Furthermore, these cases misconstrued the language of the arbitration procedures that were in question.  In *Cedeno, Harrison*, and *Henry*, the courts

concluded that the arbitration procedures prevented participants from "effectively vindicating" their rights in part because the courts interpreted the plan language as precluding the award of nonmonetary equitable remedies that would have a plan-wide impact. *See Cedeno*, 100 F.4th at 404–05; *see also Harrison*, 59 F.4th at 1107 n.5 (same); *Henry*, 72 F.4th at 507 (same). Yet, the language in those plans clarified that it was only an award providing "additional benefits or monetary relief" on a plan-wide basis that was disallowed. *Cedeno*, 100 F.4th at 392 ("[T]he Claimant's remedy, if any, shall be limited to . . . (iii) such other remedial or equitable relief as the arbitrator deems proper so long as such remedial or equitable relief does not include or result in the provision of *additional benefits or monetary relief*" to others. (emphasis added)); *Harrison*, 59 F.4th at 1107 (same); Declaration of Albert H. Manwaring, IV attaching Amendment Number One to the BSC Ventures Holdings, Inc. Employee Stock Ownership Plan, § 14.01(b), *Henry v. Wilmington Trust, N.A.*, No. 1:19-cv-01925-JLH (D. Del. Dec. 20, 2019), ECF No. 13-1, at PageID #147–48 (same). The dissenting opinion in *Cedeno* agreed with this analysis and concluded that the "most sensible reading of the contract language" did not prevent Cedeno from seeking equitable relief that may be necessary to make him whole, even if that relief had an impact on other plan participants. *Cedeno*, 100 F.4th at 416–17 (Menashi, J., dissenting).

40

Even if this Court concluded that these other Circuit Court decisions should not be disregarded as set forth above, they are distinguishable on their facts. The class action waivers at issue in those cases are readily distinguishable from the one at issue here. The courts in *Henry, Harrison*, and *Cedeno* concluded that the arbitration provisions contained in those plans precluded a participant from pursuing certain remedies available under ERISA, including injunctive relief. *See Henry*, 72 F.4th at 507 ("[T]he class action waiver claims to prohibit [plan] participants from bringing a lawsuit that 'seek[s] or receive[s] any remedy which has the purpose or effect of providing additional benefits or monetary *or other relief*' to any third party") (emphasis added); *Cedeno,* 100 F.4th at 393 (same); *Harrison*, 59 F.4th at 1106 (interpreting the class action waiver as precluding a participant from seeking or obtaining injunctive relief, including removal of plan trustee); *see also supra* note 1 (distinguishing the arbitration provision in *Smith*, 13 F.4th at 622) Here, however, the Plan's class action waiver makes clear that injunctive relief, including plan-wide injunctive relief, is not barred: "Notwithstanding the foregoing, ***nothing in this provision shall be construed to preclude a Claimant from seeking injunctive relief, including, for example, seeking an injunction to remove or replace a Plan fiduciary*.*" App., Vol. 1, Tab 44-1 at Ex. 5 at ¶ 1 (emphasis added).

Defendants urge this Court to find that Plaintiffs do not have a nonwaivable, statutory right to seek monetary relief on behalf of absent Plan participants or their Plan accounts and that the Plan's Arbitration Procedure is valid and enforceable.

### C.    The District Court Erred In Concluding That Plaintiffs Did Not Consent To Arbitrate Their Claims For Recission And Reformation

The district court denied Defendants' motion with respect to Plaintiffs' claims for recission and reformation because the court determined those claims were brought under ERISA § 502(a)(3) [4] and Plaintiffs purportedly gave no assent to the Third and Fourth Amendments to the Plan containing the Arbitration Procedure. App., Vol. 2, Tab 86, Opinion and Order, at 18–21.  In ruling so, the district court ignored (1) the terms of the Plan that confirm that no express consent is required and (2) ERISA's well-established framework that a participant's consent to a plan amendment is irrelevant and, even if it were relevant, participation in a plan effectuates consent to be bound by an ERISA plan provision.

A plan sponsor has "large leeway" to design an employee benefits plan as it sees fit. *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013); *Merrimon v. Unum Life Ins. Co. of Am.*, 758 F.3d 46, 58–59 (1st Cir.

---

[4] Under ERISA § 502(a)(3), a plan participant can bring a civil action "to enjoin any act or practice which violates any … terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of … the terms of the plan."  29 U.S.C. § 1132(a)(3).

2014) ("It is clear beyond hope of contradiction that sponsors of ERISA plans have considerable latitude in plan design …."). That "large leeway" also applies equally to the amendment of plans, which sponsors are generally free to adopt "for any reason at any time." *Smith v. Aegon Companies Pension Plan*, 769 F.3d 922, 930 (6th Cir. 2014) (holding that a plan amendment imposing a venue selection clause was valid and enforceable).

Here, the Plan terms confirm that no express consent is required. For example, Section 13.1 of the Plan (just like all other employer-sponsored ERISA plans) provides that "[t]he Plan may be amended at any time and from time to time by action of the Board of Directors." App., Vol. 1, Tab 44-1 at Ex. 1, § 13.1. Indeed, if the Arbitration Procedure were invalid because Plaintiffs did not give consent, then any other Plan provision or amendment could be invalidated by every single participant who did not like the Plan or an amendment. This outcome would eliminate the ability of ERISA plans to function.

Determining whether Plan participants consented to particular Plan amendments based on the type of relief sought—as analyzed by the district court, App., Vol. 2, Tab 86, Opinion and Order, at 15-17—is inconsistent with the broader policies underlying ERISA. One of the major policies underlying ERISA is "uniform plan administration." *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001). Such uniformity is impossible if a Plan participant's consent to a particular Plan

43

amendment is premised on the type of relief that he or she seeks. Indeed, such an approach would mean that certain Plan terms apply to some participants and not others. This directly contradicts ERISA's policy of uniform administration.

Moreover, all that is relevant here is that the Plan (and not the participants) consented to the Plan Amendments. *Berkelhammer v. ADP TotalSource Grp., Inc.* 74 F.4th 115, 120 (3d Cir. 2023) ("[T]he Plan's agreement to arbitrate is what matters, and that agreement applies to [plaintiffs' breach of fiduciary duty] claims on the Plan's behalf."); *Holmes,* 2022 WL 180638, at *4 ("While Plaintiff . . . never agreed to arbitrate and was not put on notice of an agreement to arbitrate while she was a participant in the Plan, the Plan agreed to arbitration."); *Dorman II,* 780 F. App'x at 513 (Plaintiff's ERISA §§ 502(a)(2) and (a)(3) claims were subject to arbitration because the "Plan expressly agreed in the Plan document that ***all*** ERISA claims should be arbitrated." (emphasis added)).

No individual participant consent is required to enforce the Plan terms. *See, e.g.*, *Holmes,* 2022 WL 180638, at *4. It is no different than if the Arbitration Procedure had been in the original plan document when adopted in 2017 – participants had no input into those original plan terms, yet they cannot argue that they did not "consent" to them. By participating in a plan and accepting the benefits it provides, participants assent to the terms of the plan, whether they view those terms as favorable or not. *See Schoemann v. Excellus Health Plan, Inc*., 447 F.

Supp. 2d 1000, 1007–08 (D. Minn. 2006) (holding that plan's forum-selection clause was enforceable despite participants' contention that they had not consented to it and had played no role in negotiating it).

Indeed, courts regularly enforce procedural requirements adopted through valid plan amendment after participants have retired or otherwise terminated employment. *See e.g.*, *Smith*, 769 F.3d at 930–31 (enforcing a venue selection provision added to a corporate pension plan seven years after the participant's retirement); *Laasko v. Xerox Corp.*, 566 F. Supp. 2d 1018, 1024 (C.D. Cal. 2008) (enforcing forum selection clause inserted into long term disability plan after plaintiff became disabled but before her benefits were terminated); *Best v. James*, 2023 WL 145007, at *4–5 (W.D. Ky. Jan. 10, 2023) (compelling plaintiffs' ERISA § 502(a)(2) claims to arbitration where plan amendment contained the agreement to arbitrate in order to avoid the "illogical result" that § 502(a)(2) claims would never be subject to arbitration unless the original plan document included an arbitration clause). Likewise, courts will enforce a valid plan arbitration provision regardless of whether the participant knows about it or not. *See Chappel v. Lab'y Corp. of Am.*, 232 F.3d 719, 722–23 (9th Cir. 2000) (concluding that the plan's arbitration clause bound a participant even though he claimed he did not about it until after he filed a lawsuit).

Moreover, Plaintiffs have manifested personal assent to the Plan's

45

Amendments under the doctrine of direct-benefits estoppel. Under this doctrine, "a non-signatory party is estopped from avoiding arbitration if [they] 'knowingly seek[] the benefits of the contract [or Plan] containing the arbitration clause.'" *American Economy Insurance Company v. Accelerated Rehabilitation Centers, Ltd.*, 2022 WL 4593066, at *5 (Ill. App. Ct. 1 Dist., 2022) (citing *Everett v. Paul Davis Restoration, Inc.*, 771 F.3d 380, 383 (7th Cir. 2014)).[5] This theory applies to ERISA plans. *See, e.g., Bd. of Trustees of IBEW Local No. 640 v. CIGNA Health & Life Ins. Co.*, 2022 WL 2805111 (9th Cir. July 18, 2022).

Here, the rights Plaintiffs assert are derived from the same Plan that contains the Arbitration Procedure and their claims must be decided in reference to the Plan. Absent the existence of the Plan and their participation in it, Plaintiffs would not be able to seek the benefits of the Plan. And, they have ***already received*** benefits under Amendment Three to the Plan by receiving a distribution of their account balances. App., Vol. 1, Tab 69, Am. Compl. ¶¶ 26–30. Plaintiffs cannot assert rights and enjoy benefits under one portion of the Plan while disavowing another portion of the Plan.

---

[5] Per § 16.4 of the Plan, "[t]o the extent not preempted by ERISA or other federal law, the provisions and validity and construction of th[e] Plan shall be subject to and governed by the laws of the State of Illinois." App., Vol. 1, Tab 44-1, at Ex. 1, § 16.4.

The Court should therefore reverse the district court and find that Plaintiffs' claims for recission and reformation are subject to the Plan's Arbitration Procedure.[6]

In addition, the Court should order the district court to award Defendants their fees and expenses pursuant to the Plan's provision that provides for an award of attorneys' fees and expenses if a Claimant "makes an unsuccessful challenge to the validity, enforceability or scope of the Arbitration Procedure" in court. App., Vol. 1, Tab 44-1, at Exs. 4, 5, § 19.2. Given that the district court, on remand, should find that the Plaintiffs' filing of this lawsuit in court is an unsuccessful challenge to the Arbitration Procedure, Defendants should be awarded their attorneys' fees and expenses.

## CONCLUSION

For all these reasons, this Court should reverse the district court's order.

June 27, 2024                               Respectfully submitted,

---

[6] The district court did not address whether the "effective vindication" doctrine also applied to Plaintiffs' claims for equitable relief to the extent they are under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) because the court erroneously concluded that Plaintiffs did not consent to arbitrate those claims. However, the "effective vindication" doctrine is not implicated as to claims under § 1132(a)(3) because the basis for Plaintiffs' claim that they have the statutory right to seek plan-wide relief is under § 1132(a)(2) and § 1109. *See Cedeno*, 100 F.4th at 400–01; *see also Varity Corp. v. Howe*, 516 U.S. 489, 510 (1996) (holding that § 1132(a)(3) authorizes *individualized* suits for equitable relief). To the extent Plaintiffs' claims for reformation and rescission are based on § 1109, the "effective vindication" doctrine does not bar application of the Plan's Arbitration Procedure to these claims for the reasons set forth in Section B, *supra*.

47

**ARGENT TRUST COMPANY**

By:  */s/ Todd D. Wozniak*

Todd D. Wozniak
HOLLAND & KNIGHT LLP
Regions Plaza
1180 West Peachtree Street NW
Suite 1800
Atlanta, GA 30309
Telephone:  404-817-8500
todd.wozniak@hklaw.com
Georgia Bar No. 777275

Chelsea Ashbrook McCarthy
HOLLAND & KNIGHT LLP
150 N. Riverside Plaza Suite 2700
Chicago, Illinois 60606
Telephone: 312-715-5768
chelsea.mccarthy@hklaw.com

**GERALD SHAPIRO, SCOTT BRINKLEY, A360 HOLDINGS LLC**

By:  */s/ Bryan B. House*

Bryan B. House
FOLEY & LARDNER LLP
777 East Wisconsin Ave.
Milwaukee, Wisconsin 53202
Telephone:  414-297-5554
bhouse@foley.com

Eileen R. Ridley
FOLEY & LARDNER LLP
555 California St., 17th Floor
San Francisco, California 94104
Telephone:  415-438-6469
eridley@foley.com

48

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,130 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type requirements of Fed R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 2302 with a 14-point font named Times New Roman.

*/s/ Todd D. Wozniak*
Todd D. Wozniak

*Counsel for Defendant-Appellant*
*Argent Trust Company*

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that the foregoing document has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on June 27, 2024 on all registered counsel of record, and has been transmitted to the Clerk of the Court.

*/s/ Todd D. Wozniak*
Todd D. Wozniak

*Counsel for Defendant-Appellant*
*Argent Trust Company*