No. 24-11192

*In the*

# United States Court of Appeals

*for the*

# Eleventh Circuit

EBONI WILLIAMS, ET AL.,

*Plaintiffs-Appellees,*

v.

ARGENT TRUST COMPANY, ET AL.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of Georgia
No. 1:23-cv-03236-VMC
Hon. Judge Victoria M. Calvert

## BRIEF OF PLAINTIFFS-APPELLEES

Mark E. Thomson
Carl F. Engstrom
**ENGSTROM LEE LLC**
323 N. Washington Avenue, Suite 200
Minneapolis, MN 55401
Telephone: (612) 305-8349
mthomson@engstromlee.com
cengstrom@engstromlee.com

*Counsel for Plaintiffs-Appellees*
*Eboni Williams, et al.*

## CERTIFICATE OF INTERESTED PERSONS

In accordance with Rule 26.1 of the Federal Rules of Appellate Procedure and Rules 26.1-1 and 26.1-2 of the Rules of the United States Court of Appeals for the Eleventh Circuit, undersigned counsel for Appellees certify that they believe the Certificate of Interested Persons contained in Defendants-Appellants' opening brief is complete.

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiffs-Appellees Eboni Williams, Debbie Shoemaker, Paula Mays, Tina Kovelesky, and Shadrin Herring respectfully request oral argument pursuant to Federal Rule of Appellate Procedure 34(a)(1) and Eleventh Circuit Rules 28-1(c) and 36.

## **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................1

STATEMENT IN SUPPORT OF ORAL ARGUMENT ......................................... i

TABLE OF CONTENTS.......................................................................................... ii

TABLE OF AUTHORITIES ....................................................................................v

INTRODUCTION ................................................................................ xiv

STATEMENT OF THE ISSUES...............................................................................1

STATEMENT OF THE CASE.................................................................................2

I.      FACTUAL BACKGROUND.........................................................................2

II.     PROCEDURAL BACKGROUND ............................................................10

SUMMARY OF THE ARGUMENT .....................................................................12

ARGUMENT ........................................................................................................15

I.      THE ARBITRATION CLAUSE IS INVALID BECAUSE IT PURPORTS
        TO ELIMINATE STATUTORY RIGHTS AND REMEDIES PROVIDED
        BY ERISA. ................................................................................................15

        A.      The effective vindication doctrine invalidates arbitration clauses that
                purport to waive statutory rights and remedies. ..................................16

        B.      The arbitration clause purports to prohibit statutory claims and
                remedies authorized by ERISA. ...........................................................18

                1.      The arbitration clause prohibits derivative claims on behalf of
                        the Plan. ......................................................................................19

ii

2.    The arbitration clause prohibits remedies provided by ERISA....
...................................................................................22

a.    The arbitration clause bars plan-wide monetary relief. ....22

b.    The arbitration clause bars rescission and reformation.....25

II.    THE ARBITRATION CLAUSE BARS SUBSTANTIVE, NOT
PROCEDURAL, RIGHTS. ..........................................................28

A.    Section 1132(a)(2) claims are derivative, not a form of claim joinder.
...................................................................................29

B.    *Thole* did not change the derivative nature of § 1132(a)(2) claims. ...32

C.    *LaRue* broadens the relief available under § 1132(a)(2)....................34

III.    DEFENDANTS' REMAINING CASE LAW IS DISTINGUISHABLE OR
UNPERSUASIVE. .........................................................................36

IV.    THE ARBITRATION CLAUSE IS ALSO INVALID BECAUSE IT FAILS
MULTIPLE PRECEPTS OF CONTRACT FORMATION. ......................41

A.    Plaintiffs cannot be compelled to arbitrate when they did not consent
to do so. ...................................................................................41

1.    The FAA requires the consent of both parties to arbitrate. ......41

2.    Nothing in ERISA overrides the FAA's consent requirement. 44

B.    Plaintiffs are not bound by an amendment enacted after they left
employment with A360.....................................................................47

C.    Direct benefits estoppel does not apply here.......................................49

V.    THE FEE-SHIFTING PROVISION VIOLATES ERISA § 502(G). ...........51

CONCLUSION..........................................................................................51

CERTIFICATE OF COMPLIANCE........................................................................53

iii

CERTIFICATE OF SERVICE ...................................................................54

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*14 Penn Plaza LLC v. Pyett*,
    556 U.S. 247 (2009)........................................................................16

*A.D. v. Credit One Bank, N.A.*,
    885 F.3d 1054 (7th Cir. 2018) ......................................................50

*Acad. Chicago Publishers v. Cheever*,
    144 Ill. 2d 24 (1991) .....................................................................43

*Alexander v. Gardner-Denver Co.*,
    415 U.S. 36 (1974).........................................................................16

*Ali v. Smith*,
    554 S.W.3d 755 (Tex. App. 2018) ................................................50

*Am. Exp. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)............................................................... 12, 16

*Amara v. CIGNA Corp.*,
    775 F.3d 510 (2d Cir. 2014) .........................................................26

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011).......................................................................32

*Avecilla v. Live Nation Entm't, Inc.*,
    2023 WL 5354401 (C.D. Cal. Aug. 7, 2023) ...............................40

*Barrett v. Fox & Grove, Chartered*,
    No. 01 C 5910, 2002 WL 31761410 (N.D. Ill. Dec. 9, 2002)......48

*Berkelhammer v. ADP TotalSource Group, Inc.*,
    74 F.4th 115 (3d Cir. 2023) ..........................................................46

*Bivens Gardens Off. Bldg., Inc. v. Barnett Banks of Fla., Inc.*,

    140 F.3d 898 (11th Cir. 1998) .......................................................34

*Bonner v. City of Prichard*,

    661 F.2d 1206 (11th Cir. 1981) ....................................................34

*Booker v. Robert Half Int'l, Inc.*,

    413 F.3d 77 (D.C. Cir. 2005) (Roberts, J.) ..................................17

*Browe v. CTC Corp.*,

    15 F.4th 175 (2d Cir. 2021) .........................................................31

*Brown v. Validata Computer & Rsch. Corp.*,

    No. 2:12CV775-SRW, 2013 WL 3422477 (M.D. Ala. July 8, 2013)...........21

*Brown v. Wilmington Tr., N.A.*,

    No. 3:17-cv-250, 2018 WL 3546186 (S.D. Ohio July 24, 2018)..... 48, 49, 50

*Brundle v. Wilmington Tr., N.A.*,

    919 F.3d 763 (4th Cir. 2019) .......................................................31

*Burnett v. Prudent Fiduciary Servs.*,

    No. 23-1527, 2023 WL 6374192 (3d Cir. Aug. 15, 2023)..................... xi, 25

*Carr v. First Nationwide Bank*,

    816 F. Supp. 1476 (N.D. Cal. 1993)............................................48

*Casey v. Reliance Tr. Co.*,

    No. 4:18CV424, 2019 WL 7403931 (E.D. Tex. Nov. 13, 2019) .................49

*Cedeno v. Sasson*,

    100 F.4th 386 (2d Cir. 2024) ............................................... passim

*CIGNA Corp. v. Amara*,

    563 U.S. 421 (2011).....................................................................26

*Coan v. Kaufman*,

457 F.3d 250 (2d Cir. 2006) ................................................................. 37, 38

*Coatney v. Ancestry.com DNA, LLC*,

    93 F.4th 1014 (7th Cir. 2024) ........................................................49

*Coleman v. Brozen*,

    No. 3:20-CV-01358-E, 2023 WL 4498506 (N.D. Tex. July 12, 2023) ........39

*Comer v. Micor, Inc.*,

    436 F.3d 1098 (9th Cir. 2006) ........................................................47

*Dash v. RBC Bank (USA)*,

    745 F.3d 1111 (11th Cir. 2014) ......................................................45

*Dorman v. Charles Schwab Corp.*,

    780 F. App'x 510 (9th Cir. 2019)............................................ 37, 46, 47

*Dorman v. Charles Schwab Corp.*,

    934 F.3d 1107 (9th Cir. 2019) ........................................................37

*Douglas v. Johnson Real Est. Invs., LLC*,

    No. 1:11-CV-00567-SCJ, 2011 WL 13177544 (N.D. Ga. Oct. 11, 2011), *aff'd*, 470 F. App'x 823 (11th Cir. 2012) ........................................43

*Ducharme v. DST Systems, Inc.*,

    No. 4:17-cv-22-BCW, 2017 WL 7795123 (W.D. Mo. June 23, 2017).........41

*Eaves v. Penn*,

    587 F.2d 453 (10th Cir. 1978) ........................................................26

*Epic Sys. Corp. v. Lewis*,

    584 U.S. 497 (2018)........................................................ 18, 32, 47

*Ervin v. Nokia, Inc.*,

    349 Ill. App. 3d 508 (2004) ...........................................................50

*First Options of Chicago, Inc. v. Kaplan*,

514 U.S. 938 (1995) ................................................................................43

*Fuller v. SunTrust Banks, Inc.*,

744 F.3d 685 (11th Cir. 2014) ..........................................................21

*Gaines v. Ciox Health, LLC*,

2024 IL App (5th) 230565 ................................................................43

*Gilmer v. Interstate/Johnson Lane Corp.*,

500 U.S. 20 (1991) ................................................................... 16, 32

*Guarantee Tr. Life Ins. Co. v. Platinum Supplemental Ins., Inc.*,

68 N.E.3d 481 ....................................................................................49

*Hadnot v. Bay, Ltd.*,

344 F.3d 474 (5th Cir. 2003) ............................................................18

*Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.*,
817 F.3d 857 (3d Cir. 2016) .............................................................44

*Hardt v. Reliance Standard Life Ins. Co.*,

560 U.S. 242 (2010) ..........................................................................52

*Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*,

59 F.4th 1090 (10th Cir. 2023), *cert. denied* 2023 WL 6558426 (Oct. 10, 2023) ................................................................................. passim

*Hawkins v. Cintas Corp.*,

32 F.4th 625 (6th Cir. 2022) ............................................. 25, 44, 49

*Hawkins v. Cintas Corps.*,

No. 1:19-CV-1062, 2021 WL 274341 (S.D. Ohio Jan. 27, 2021) ...............49

*Heffner v. Blue Cross & Blue Shield of Alabama, Inc.*,

443 F.3d 1330 (11th Cir. 2006) ........................................................20

*Henry v. Wilmington Tr. NA*,

72 F.4th 499 (3d Cir. 2023), *cert. denied* 2023 WL 6797729 (Oct. 16, 2023)
.................................................................................................. xi, xii, 25

*Henry*, *Harrison*, *Smith*, and *Viking River Cruises, Inc. v. Moriana*,

596 U.S. 639 (2022).................................................................................. 12, 25

*Holmes v. Baptist Health S. Fla., Inc.*,

No. 21-22986-CIV, 2022 WL 180638 (S.D. Fla. Jan. 20, 2022) ........... 39, 40

*Hudson v. P.I.P. Inc.*,

793 F. App'x 935 (11th Cir. 2019) .................................................................17

*Hurd v. Illinois Bell Tel. Co.*,

234 F.2d 942 (7th Cir. 1956) .........................................................................48

*In re Schering Plough Corp. ERISA Litig.*,

589 F.3d 585 (3d Cir. 2009) ..........................................................................36

*Ingle v. Circuit City Stores, Inc.*,

328 F.3d 1165 (9th Cir. 2003) .......................................................................18

*Jody James Farms, JV v. Altman Grp., Inc.*,

547 S.W.3d 624 (Tex. 2018) ..........................................................................50

*Kemmerer v. ICI Americas Inc.*,

70 F.3d 281 (3d Cir. 1995) ............................................................................48

*Klay v. All Defendants*,

389 F.3d 1191 (11th Cir. 2004) .....................................................................43

*Kristian v. Comcast Corp.*,

446 F.3d 25 (1st Cir. 2006)............................................................................17

*Lamps Plus, Inc. v. Varela*,

587 U.S. 176 (2019)......................................................................... xii, 14, 42

*Langbecker v. Elec. Data Sys. Corp.*,

476 F.3d 299 (5th Cir. 2007) ..........................................................38

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,

552 U.S. 248 (2008)................................................... 23, 25, 35, 36

*Mass. Mut. Life Ins. Co. v. Russell*,

473 U.S. 134 (1985)............................................................. passim

*Member Servs. Life Ins. Co. v. Am. Nat. Bank & Tr. Co. of Sapulpa*,

130 F.3d 950 (10th Cir. 1997) ......................................................48

*Merrow v. Horizon Bank*,

699 F. Supp. 3d 605 (E.D. Ky. 2023).............................................41

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,

473 U.S. 614 (1985)...................................................... 12, 16, 22

*Nguyen v. Barnes & Noble Inc.*,

763 F.3d 1171 (9th Cir. 2014) ......................................................50

*Nichols v. Alcatel USA, Inc.*,

532 F.3d 364 (5th Cir. 2008) ........................................................21

*Ortiz v. Am. Airlines, Inc.*,

5 F.4th 622 (5th Cir. 2021) ..........................................................31

*Paladino v. Avnet Computer Techs., Inc.*,

134 F.3d 1054 (11th Cir. 1998) ....................................................17

*Parker v. Tenneco, Inc.*,

No. 23-1857, 2024 WL 3873409 (6th Cir. Aug. 20, 2024).................. passim

*Perez v. Bruister*,

823 F.3d 250 (5th Cir. 2016) ........................................... 26, 30, 31

*Piazza v. Ebsco Indus., Inc.*,

273 F.3d 1341 (11th Cir. 2001) ....................................................20

x

*Pover v. The Capital Grp. Cos., Inc.*,

    2:23-cv-09657-GW-PVC (C.D. Cal. Aug. 12, 2024)....................................39

*Premovic v. Northshore Univ. Health Sys.*,

    2015 IL App (1st) 133466-U ...............................................................51

*Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,

    7 F.3d 1110 (3d Cir. 1993) ................................................................42

*Randolph v. Green Tree Fin. Corp.–Alabama*,

    244 F.3d 814 (11th Cir. 2001) .................................................... 11, 17

*Robertson v. Argent Tr. Co.*,

    No. CV-21-01711-PHX-DWL, 2022 WL 2967710 (D. Ariz. July 27, 2022)
    ................................................................................. 40, 51

*Scheurer v. Fromm Fam. Foods LLC*,

    863 F.3d 748 (7th Cir. 2017) .............................................................50

*Schilling v. Belcher*,

    582 F.2d 995 (5th Cir. 1978) ............................................................34

*Schoemann v. Excellus Health Plan, Inc.*,

    447 F.Supp. 2d 1000 (D. Minn. 2006) ..............................................46

*Sec'y U.S. Dep't of Labor v. Koresko*,

    646 F. App'x 230 (3d Cir. 2016)........................................................24

*Shearson/Am. Exp., Inc. v. McMahon*,

    482 U.S. 220 (1987)..........................................................................16

*Siegmund v. Xuelian Bian*,

    746 F. App'x 889 (11th Cir. 2018)....................................................34

*Simmons v. S. Bell Tel. & Tel. Co.*,

    940 F.2d 614 (11th Cir. 1991) ..........................................................20

*Smith v. Bd. of Dirs. of Triad Mfg., Inc.*,

    13 F.4th 613 (7th Cir. 2021) ................................................................ passim

*Snyder v. Jack Schmitt Ford, Inc.*,

    2022 IL App (5th) 210413-U, *appeal denied*, 197 N.E.3d 1075 (Ill. 2022) .51

*Spinetti v. Serv. Corp. Int'l*,

    324 F.3d 212 (3d Cir. 2003) ...........................................................17

*Stolt-Nielsen S.A. v. AnimalFeeds, Int'l Corp.*,

    559 U.S. 662 (2010) ............................................................ 32, 42, 45

*Thole v. U.S. Bank N.A.*,

    590 U.S. 538 (2020) ................................................................ 33, 34

*Tullis v. UMB Bank, N.A.*,

    515 F.3d 673 (6th Cir. 2008) ...........................................................31

*Varity Corp. v. Howe*,

    516 U.S. 489 (1996) .....................................................................20

*Viking River Cruises, Inc. v. Moriana*,

    596 U.S. 639 (2022) ................................................................ passim

*Virginia Sur. Co. v. Northrop Grumman Corp.*,

    144 F.3d 1243 (9th Cir. 1998) ...........................................................27

*Wagner v. Stiefel Labs., Inc.*,

    No. 1:12-CV-3234-MHC, 2015 WL 4557686 (N.D. Ga. June 18, 2015) .....38

*Wallace v. Blue Cross & Blue Shield of Alabama*,

    No. CIV.A. 14-0119-CG-C, 2014 WL 5335823 (S.D. Ala. Oct. 20, 2014) .21

*Williams v. Medley Opportunity Fund II, LP*,

    965 F.3d 229 (3d Cir. 2020) ...........................................................17

*Yagy v. Tetra Tech, Inc.*,

No. CV 24-1394-JFW(ASX), 2024 WL 2715900 (C.D. Cal. May 17, 2024)
............................................................................................40

**Statutes**

26 U.S.C. § 401 ..........................................................................5

28 U.S.C. § 502(a) ............................................................. 10, 19

29 U.S.C. § 1002(5) ....................................................................6

29 U.S.C. § 1002(14) ...............................................................5, 6

29 U.S.C. § 1002(16) ..................................................................5

29 U.S.C. § 1002(2) .....................................................................4

29 U.S.C. § 1002(21) ................................................................6, 7

29 U.S.C. § 1002(34) ...................................................................4

29 U.S.C. § 1103(a) ...................................................................19

29 U.S.C. § 1104(a) ...................................................................19

29 U.S.C. § 1106 ........................................................................19

29 U.S.C. § 1107(d) .....................................................................5

29 U.S.C. § 1109 .............................................................. passim

29 U.S.C. § 1132(a) .......................................................... passim

29 U.S.C. § 1132(d) ...................................................................19

29 U.S.C. § 1132(e) ...................................................................42

29 U.S.C. § 1132(g) .............................................................. 51, 52

9 U.S.C. § 2 ...............................................................................42

**Rules**

Fed. R. Civ. P. 23(b) ..................................................................38

Fed. R. Civ. P. 23.1 ....................................................................38

## **INTRODUCTION**

The exact arbitration clause at issue here has been held unenforceable by five federal courts of appeals, in cases involving materially identical claims to this one. Facing a bevy of arguments that Defendants largely rehash here, each court has come to the same answer: because the "expressly nonseverable" arbitration clause "purports to prohibit statutorily authorized remedies," it is invalid. *Henry v. Wilmington Tr. NA*, 72 F.4th 499, 506–08 (3d Cir. 2023), *cert. denied* 2023 WL 6797729 (Oct. 16, 2023); *Parker v. Tenneco, Inc.*, No. 23-1857, 2024 WL 3873409 (6th Cir. Aug. 20, 2024); *Cedeno v. Sasson*, 100 F.4th 386 (2d Cir. 2024); *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*, 59 F.4th 1090 (10th Cir. 2023), *cert. denied* 2023 WL 6558426 (Oct. 10, 2023); *Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613 (7th Cir. 2021); *Burnett v. Prudent Fiduciary Servs.*, No. 23-1527, ECF 41, 2023 WL 6374192 (3d Cir. Aug. 15, 2023) (summary affirmance). This Court should reach the same conclusion.

The federal policy favoring arbitration does not give defendants license to bulldoze statutory rights. Quite the opposite. As this Court, the Supreme Court, and many other courts have recognized, an arbitration clause cannot curtail the substantive rights and remedies that a plaintiff could seek in court. Yet that is exactly what the arbitration clause here does. ERISA allows plaintiffs to sue on behalf of their plan and seek remedies such as fiduciary removal or restoration of

plan losses. *e.g.*, *Henry*, 72 F.4th at 506–07. This arbitration clause expressly bars those remedies in arbitration. "[W]hat the statute permits, the plan['s arbitration clause] precludes." *Smith*, 13 F.4th at 621. The clause is therefore invalid.

That is reason enough for this Court to affirm. But affirmance is also warranted because Plaintiffs did not consent to the arbitration clause. "The first principle that underscores all of [the Supreme Court's] arbitration decisions is that arbitration is strictly a matter of consent." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019) (cleaned up). Here, however, Defendants did not add the clause to the A360, Inc. Employee Stock Ownership Plan ("the Plan") until the Plan was terminated. All of the Plaintiffs had left employment with the Plan sponsor before that time, and none of the Plaintiffs received notice of the clause's existence until after this lawsuit was filed. Plaintiffs cannot possibly have consented to an arbitration clause they knew nothing about and had no means of rejecting. Because the clause fails this foundational requirement, affirmance is also warranted on this ground.

## STATEMENT OF THE ISSUES

(1) Whether the arbitration clause is invalid because it would operate as a prospective waiver of Plaintiffs' rights under ERISA to pursue claims on behalf of the Plan in a representative capacity and to seek plan-wide remedies that ERISA permits.


(2) Whether the arbitration clause is unenforceable against Plaintiffs because (a) they received no notice of it and did not assent to it or (b) it was never in effect during Plaintiffs' employment with the Plan sponsor.

<u>**STATEMENT OF THE CASE**</u>

## I.    FACTUAL BACKGROUND

Plaintiffs adopt in its entirety the Background section of the district court's Opinion and Order, which is reproduced below. (2 App., Tab 86, Opinion and Order at 2-10).[1]

### I.    Factual Background

On November 26, 2016, Defendant Gerald Shapiro created A360, Inc. ("A360"). (1 App., Tab 69, Amended Complaint ¶ 5). Mr. Shapiro later created the A360, Inc. Employee Stock Ownership Plan (the "ESOP") effective January 1, 2017. (*Id.* ¶¶ 1, 5). Plaintiffs were A360 employees and participants in the ESOP. (*Id.* ¶¶ 13, 26–30).

On January 26, 2017, the ESOP acquired 100% of A360's stock (one million shares) for $30 million, or $30 per share, making the ESOP the company's sole owner. (*Id.* ¶ 5). Mr. Shapiro retained control of A360 after the sale of the company to the ESOP. (*Id.* ¶ 6). He held a board seat and continued to exert practical influence over other officers and directors in the management of the company. (*Id.*). Mr. Shapiro tapped Defendant Scott Brinkley to serve on A360's board, and Brinkley became A360's CEO. (*Id.*).

---

[1] For the Court's convenience, citations from the Factual Background section of the district court's Opinion and Order have been replaced with citations to the appendix.

The ESOP acquisition was 100% financed. (*Id.* ¶ 7). The employees and the ESOP did not have $30 million in cash to buy the company. (*Id.*). Instead, the ESOP was structured as a long-term retirement investment in which individual employees would earn new shares each year over 50 years by paying off more of the ESOP's purchase loan through retirement contributions. (*Id.*).

The parties refer to shares pending re-payment as "unallocated" shares, and shares released to individual employees after each re-payment as "allocated" shares. (*Id.* ¶ 8). In theory, ESOP participants would accumulate more allocated shares over time with their retirement plan contributions, and then sell their shares upon retirement for a nice nest egg. (*Id.*).

Plaintiffs allege that Defendants Shapiro and Brinkley were aware of a "hot market" for "fintech" and "legal tech" companies such as A360, and obtained a valuation as high as $85 million or $85 per share. (*Id.* ¶ 9). Rather than allow employees to enjoy their benefit, as owners, of the company's surge in value, they allege that Defendants Shapiro and Brinkley teamed with outside investors (through Defendant A360 Holdings LLC ("A360 Holdco")) to take the company back from the ESOP for less than it was worth. (*Id.*). Defendant Argent Trust Company ("Argent"), the ESOP's independent trustee, authorized the transaction. (*Id.*).

Plaintiffs contend that ESOP participants lost out on around $35.4 million because of Defendants' scheme, which was implemented through a series of related, concurrent transactions. (*Id.* ¶ 10). On September 12, 2019, the board and Argent caused participants' allocated shares (117,147 shares) to be sold to A360 Holdco based on a final valuation of around $70 per share, yielding around $8.3 million for employees. (*Id.*). At the same time, Defendants caused the company to redeem the ESOP's unallocated shares (882,853 shares) for only the amount due on the purchase loan, $26.3 million or around $30 per share, even though the unallocated shares were worth the same $70 per share as the allocated shares. (*Id.*).

Plaintiffs thus allege that Defendants seized the company from the ESOP for total consideration of around $34.6 million, shorting the ESOP by at least $35.4 million. (*Id.*). The board then terminated the ESOP effective September 17, 2019. (*Id.* ¶ 23). The ESOP started to distribute proceeds in October 2019 and completed final distributions by December 2021. (*Id.* ¶ 25). The ESOP has zero assets and no continuing operations. (*Id.*).

## II.    The Plan

The ESOP was an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A). (*Id.* ¶ 18). The applicable sub-type of pension plan was an "individual account plan" as defined by 29 U.S.C. § 1002(34) (also known as "defined contribution plan"). (*Id.*). The applicable sub-type of individual account

plan was an "employee stock ownership plan" as defined by 29 U.S.C. § 1107(d)(6). (*Id.*).

The ESOP's sole asset before its termination was one million shares of A360 stock, which it acquired on January 26, 2017. (*Id.* ¶ 23). The ESOP held its one million shares of A360 stock in a qualified trust established pursuant to 26 U.S.C. § 401. (*Id.*). As noted above, Defendants disposed of the ESOP's one million shares of stock on September 12, 2019 in a series of related transactions, and the board then terminated the ESOP effective September 17, 2019.

### A.    Participants and Fiduciaries

The ESOP designated A360 as its "administrator" on Form 5500 reports signed by an A360 officer and filed with the Department of Labor from time to time. (*Id.* ¶ 21). The ESOP also designated A360 as the ESOP "administrator" in a notice regarding the termination of the ESOP distributed to participants in June 2020. (*Id.*). A360, acting through its board or other agents directed by the board, also functioned in fact as the administrator of the ESOP and made discretionary decisions about the ESOP. (*Id.*). A360 was thus the "administrator" of the ESOP within the meaning of 29 U.S.C. § 1002(16)(A). (*Id.* ¶ 22). In its capacity as the ESOP administrator, A360 was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(A). (*Id.*).

The ESOP's participants were all common law employees of A360, which included persons directly employed by A360 and employees of controlled subsidiaries of A360 for which A360 acted on behalf of the subsidiary to provide employee benefits such as the ESOP. (*Id.* ¶ 19). The ESOP had around 280 participants. (*Id.*). A360 was thus the ESOP "employer" within the meaning of 29 U.S.C. § 1002(5). (*Id.* ¶ 20). In its capacity as the ESOP employer, A360 was a "party in interest" to the ESOP pursuant to 29 U.S.C. § 1002(14)(C). (*Id.*).

Based on Shapiro's authority and actions with respect to the ESOP, he was a "fiduciary" of the ESOP as defined by 29 U.S.C. § 1002(21)(A)(i) & (iii). (*Id.* ¶ 32). And, as a director of A360, Shapiro was a "party in interest" to the ESOP as defined by 29 U.S.C. § 1002(14)(H). (*Id.* ¶ 33). Similarly, based on Brinkley's authority and actions with respect to the ESOP, he was a "fiduciary" of the ESOP as defined by 29 U.S.C. § 1002(21)(A)(i) & (iii). (*Id.* ¶ 36). As an officer and director of A360, he was a "party in interest" to the ESOP as defined by 29 U.S.C. § 1002(14)(H). (*Id.* ¶ 37).

As trustee, Argent held the assets of the ESOP and was a necessary party to any transfer of the ESOP's assets. (*Id.* ¶ 39). In connection with the disposition of the ESOP's stock, Argent was required to approve the disposition terms and make a discretionary finding that the ESOP received fair market value for its stock. (*Id.*).

Based on its authority and actions with respect to the ESOP, Argent was a "fiduciary" of the ESOP as defined by 29 U.S.C. § 1002(21)(A)(i). (*Id.* ¶ 30).

## B.    Relevant Provisions

Aside from a provision regarding administrative appeals from denials of claims, the original ESOP Plan did not provide for any restrictions on litigation or venue for ERISA actions arising under the Plan. (1 App., Tab 44-1, Ex. 1 at 38-39). For amendments to the Plan, it provided:

> 13.1 Future of Plan. While it is the intention of the Company to continue the Plan indefinitely, the Company shall have the right to terminate the Plan at any time. The Plan may be amended at any time and from time to time by action of the Board of Directors or any person or persons to whom the Board of Directors may specify in writing; provided, however, that no such amendment or termination shall be effective which shall attempt to transfer assets of the Plan to purposes other than for the exclusive benefit of Participants and their Beneficiaries, or which shall cause or permit any assets of the Plan to revert to or become the property of the Company prior to the satisfaction of all liabilities of the Plan.

(*Id.* at 40).

In connection with the September 2019 transaction, the director Defendants amended the Plan as a concurrent and contingent action dependent on the closing of the transaction to liquidate the ESOP's shares on September 12, 2019 ("Third Amendment"). (1 App., Tab 69, Amended Complaint ¶ 95). Most relevant to the current Motion, the amendment added an arbitration clause to the ESOP. (*Id.* ¶ 96).

The Third Amendment also purported to prohibit a participant from obtaining any relief "on behalf of any individual or entity" other than themself. (*Id.*). Specifically, it provided:

> No Group, Class, or Representative Arbitrations. All Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis. Each arbitration shall be limited solely to one Claimant's Covered Claims, and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any individual or entity other than the Claimant. For instance, with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under ERISA § 409, the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's individual Account resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets where such pro-rated amount is intended to provide a remedy solely to Claimant's individual Account, and/or (iii) such other remedial or equitable relief as the arbitrator(s) deem(s) proper so long as such remedial or equitable relief does not include or result in the provision of additional benefits or monetary relief to any individual or entity other than the Claimant, and is not binding on the Committee or Trustee with respect to any individual or entity other than the Claimant. The requirement that (x) all Covered Claims be brought solely in a Claimant's individual capacity and not in a purported group, class, collective, or representative capacity, and (y) that no Claimant shall be entitled to receive, and no Claimant shall be awarded, any relief other than individual relief, shall govern irrespective of any AAA rule or decision to the contrary and is a material and non-severable term of this Section 19.1. The arbitrator(s) shall consequently have no jurisdiction or authority to compel or permit any class, collective, or representative action in arbitration, to consolidate different arbitration proceedings, or to join any other party to any arbitration. Any dispute

or issue as to the applicability or validity of this Section 19.1(b) (the "Class Action Waiver") shall be determined by a court of competent jurisdiction. . . .

(1 App., Tab 44-1, Ex. 4 at 5). The amendment defined "Covered Claims" as follows:

> (a) Covered Claims. Any claim made by or on behalf of a current or former Employee, a current or former Participant or current or former Beneficiary or by or on behalf of the Plan, the Trust or under the Trust Agreement (a "Claimant") which arises out of, relates to, or concerns this Plan, the Trust Agreement, or the Trust, including without limitation, any claim for benefits under the Plan, Trust Agreement, or Trust; any claim asserting a breach of, or failure to follow, the terms of the Plan or Trust Agreement or Trust; and any claim asserting a breach of, or failure to follow, any provision of ERISA or the Code, including without limitation claims for breach of fiduciary duty, ERISA § 510 claims, and claims for failure to timely provide notices or information required by ERISA or the Code (collectively, "Covered Claims"),] . . . .

(*Id.* at 5). The provision required that the proceedings remain confidential: "Neither the Claimant nor the arbitrator(s) may disclose the existence, content, subject matter, or results of any arbitration without the prior written consent of the Company." (*Id.* at 7). Finally, the provision stated that "[i]n the event a court of competent jurisdiction were to find these requirements to be unenforceable or invalid, then the entire Arbitration Procedure (i.e., all of this Section 19) shall be rendered null and void in all respects," (*Id.* at 5–6), and also provided that if a participant unsuccessfully challenged the arbitration clause in court, the participant

9

must pay "for all attorneys' fees, costs, and expenses" incurred by Defendants. (1 App., Tab 69, Amended Complaint ¶ 96).

For three years after the Third Amendment, the ESOP sat terminated. (*Id.* ¶ 100). It had distributed all its assets, received an IRS determination letter finalizing the termination process, and had no ongoing operations or concerns. (*Id.*). Then, in September 2022, Plaintiffs filed this lawsuit. (*Id.*). A month later, on October 19, 2022, the ESOP was purportedly amended once again. ("Fourth Amendment") (*Id.*). The Fourth Amendment amended the ESOP's arbitration clause to permit injunctive relief so long as that relief "does not include or result in the provision of additional benefits or monetary relief to any individual or entity other than" the individual plaintiff. (*Id.* ¶ 101). It clarified that:

> Notwithstanding the foregoing, nothing in this provision shall be construed to preclude a Claimant from seeking injunctive relief, including, for example, seeking an injunction to remove or replace a Plan fiduciary even if such injunctive relief has an incidental impact on an individual or entity other than the Claimant.

(1 App., Tab 44-1, Ex. 5 § 1). Based on the Third and Fourth Amendments, Defendants move to compel arbitration of Plaintiffs' lawsuit.

## II.    PROCEDURAL BACKGROUND

Plaintiffs filed this putative class action on September 9, 2022 in the U.S. District Court for the Northern District of Illinois, asserting claims on their own behalf and on behalf of the Plan pursuant to ERISA §§ 502(a)(2) and (a)(3), 29

10

U.S.C. §§ 1132(a)(2) and (a)(3). (1 App., Tab 1, Complaint). Defendants then filed a Motion to Transfer Venue to the Northern District of Georgia. (Supp. App., Tab 16, Motion to Transfer Venue).[2] Judge Manish Shah of the Northern District of Illinois did not enforce the venue transfer clause, but granted Defendants' motion under the *forum non conveniens* doctrine. (Supp. App., Tab 31, Order). Defendants next filed a motion to compel arbitration. (1 App., Tab 44). In response, Plaintiffs filed an amended complaint. (1 App., Tab 69).

On September 15, 2023, Defendants filed a renewed motion to compel arbitration. (2 App., Tab 78, Renewed Motion to Compel Individual Arbitration). Plaintiffs opposed the motion on several grounds. (2 App., Tab 81, Opposition to Arbitration). First, Plaintiffs argued the non-severable arbitration clause is invalid because it attempts to preclude substantive statutory rights and remedies ERISA

---

[2] The invalid arbitration clause at issue here is not the only provision the director Defendants added to the Plan in the Plan termination transaction. The Third Amendment to the Plan included two other self-serving clauses: (1) a clause stating that a participant who unsuccessfully challenges the arbitration clause in court must pay "for all attorneys' fees, costs, and expenses" incurred by Defendants, (1 App., Tab 69, FAC ¶ 96), and (2) a venue clause requiring all challenges to the arbitration clause be filed in this district rather than the Northern District of Illinois, where the Plan had always been administered. (*Id.* ¶ 97).[3] Defendants cite *Randolph v. Green Tree Fin. Corp.–Alabama*, 244 F.3d 814, 818–19 (11th Cir. 2001), which noted the absence of 11th Circuit authority applying the effective vindication doctrine to void an arbitration clause. Br. at 21. But *Randolph* predates *Hudson*, which did exactly that.

provides. (*Id.* at 4-19). Second, Plaintiffs argued that the arbitration clause is unenforceable because they never agreed to it and because it was never in effect during Plaintiffs' employment at A360. (*Id.* at 19-24).

The district court denied Defendants' motion. (2 App., Tab 86, Order). Relying on *Henry*, *Harrison*, *Smith*, and *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022), the district court concluded that the arbitration clause is invalid under the effective vindication doctrine. (2 App., Tab 86, Order at 23-36). The district court also denied Defendants' motion because it found that Plaintiffs had not consented to arbitrate their claims for rescission and reformation, noting that those claims are held by participants, not the Plan. (*Id.* at 15-20).

## SUMMARY OF THE ARGUMENT

**I.** The district court correctly denied Defendants' motion to compel under the effective vindication doctrine. An arbitration provision is invalid if it acts as a "prospective waiver of a party's *right to pursue* statutory remedies." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) (emphasis in original)); *see also Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022) (a valid arbitration clause "does not alter or abridge substantive rights; it merely changes how those rights will be processed"). The arbitration provision here is a textbook example of a clause that impermissibly restricts remedies and

12

abridges substantive rights. It explicitly forbids Plaintiffs (1) from asserting claims in a representative capacity and (2) from pursuing any Plan-wide remedies.

These provisions are an unabashed attempt to re-write ERISA's substantive remedial scheme. Claims under 29 U.S.C. § 1132(a)(2) can *only* be brought in a representative capacity. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). And ERISA expressly authorizes plan-wide relief, such as the recovery of "any" plan-wide losses and the removal and replacement of plan fiduciaries. 29 U.S.C. §§ 1132(a)(2), (a)(3), 1109. Indeed, plan-wide remedies are the core purpose of claims under § 1132(a)(2). *Russell*, 473 U.S. at 142 (explaining Congress was "primarily concerned . . . with remedies that would protect the entire plan"). The arbitration clause goes far beyond designating an arbitral forum; it impermissibly eliminates these claims and remedies that are imperative to ERISA's remedial purpose. Accordingly, the non-severable clause is invalid under the effective vindication doctrine.

None of Defendants' arguments warrant a different result. Although Plaintiffs seek to certify a class, they don't need to. Instead, Plaintiffs assert their § 1132(a)(2) claims, as required, in a representative capacity on behalf of the Plan. This suit challenges a single transaction, not a conglomeration of similar but related claims. Plaintiffs' claims thus are not a form of "claim joinder"; they are representative claims in which a single agent (the Plaintiffs) acts on behalf of a

13

single principle (the Plan). Yet the arbitration clause prohibits all representative claims. As the Supreme Court's recent *Viking River* decision confirms, the FAA does not mandate the "enforcement of waivers of standing to assert claims on behalf of absent principals," 596 U.S. at 641, and "does not require courts to enforce contractual waivers of substantive rights and remedies," *id.* at 653. Here, the arbitration clause's prohibition on representative claims and plan-wide remedies functions as a prospective waiver of "substantive"—not merely procedural—"rights and remedies" and is thus invalid under the effective vindication doctrine.

Each of the five circuit courts to consider a substantively identical arbitration clause has agreed that it is invalid because it purports to waive plan-wide remedies specifically permitted by ERISA. There is no reason to reach a different outcome here.

**II.** The district court's order should also be affirmed because Plaintiffs did not agree to arbitrate. It is a fundamental principle of the FAA that arbitration cannot be imposed unilaterally; both parties must consent to arbitrate. *E.g.*, *Lamps Plus*, 587 U.S. at 184. Plaintiffs were not given notice of the arbitration provision until after they filed this lawsuit. Plaintiffs could not possibly have agreed to an arbitration clause that they knew nothing about, and that was unilaterally added to

14

the Plan after Plaintiffs had left the company and after Defendants had terminated the Plan.

Because Defendants have no credible basis to argue that *Plaintiffs* agreed to the arbitration clause, Defendants instead argue that the *Plan* consented on Plaintiffs' behalf or that Plaintiffs should be estopped from contesting the arbitration clause. Neither argument finds support in Eleventh Circuit or Illinois case law.

## ARGUMENT

## I.   THE ARBITRATION CLAUSE IS INVALID BECAUSE IT PURPORTS TO ELIMINATE STATUTORY RIGHTS AND REMEDIES PROVIDED BY ERISA

The district court correctly invalidated the arbitration clause because it bars Plan participants from exercising their substantive rights under ERISA to seek plan-wide remedies. The clause precludes any relief, monetary or otherwise, that benefits the ESOP as a whole. As the Second, Third, Sixth, Seventh, and Tenth Circuits have recognized, an arbitration clause that eliminates plan-wide statutory remedies is invalid. And because this provision is expressly non-severable—it was more important for Defendants to curtail their exposure than to arbitrate—the entire arbitration clause is void.

### A.    The effective vindication doctrine invalidates arbitration clauses that purport to waive statutory rights and remedies.

"The FAA's mandate is to enforce 'arbitration agreements.'" *Viking River*, 596 U.S. at 653. An arbitration agreement is, at bottom, "a specialized kind of forum-selection clause" through which the parties can agree to "the situs of suit" and "the procedure to be used in resolving the dispute." *Id.* While an arbitration clause can alter the forum and procedures, it cannot "alter or abridge substantive rights." *Id.* Any arbitration agreement that "alter[s] or abridge[s] substantive rights" is invalid under the effective vindication doctrine. *Id.*

The effective vindication doctrine is entrenched in the Supreme Court's FAA jurisprudence. *Viking River* both recognized and enforced limits on arbitration clauses that purport to waive substantive rights. 596 U.S. at 656–62. And the Court has repeatedly, for decades, acknowledged the doctrine's validity. *Am. Exp. Co.*, 570 U.S. at 235 (2013) (Scalia, J.); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 273–74 (2009) (Thomas, J.); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991); *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 240 (1987); *Mitsubishi Motors*, 473 U.S. at 637 n.19; *see also Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974).

Under this rule, "a provision in an arbitration agreement [that] forbid[s] the assertion of certain statutory rights" is invalid. *Am. Express*, 570 U.S. at 236. Consistent with "public policy" considerations, the doctrine ensures each party can

pursue the rights Congress specifically granted to them, even if they agree to resolve the dispute in an arbitral forum. *Id.* The doctrine thereby prevents parties from escaping statutory liability through the guise of an arbitration clause.

Every federal appellate court to address the issue, including this one, has held that arbitration agreements are unenforceable if they eliminate statutory rights or the ability to pursue statutory remedies. *See, e.g.*, *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998) (arbitration agreement impermissibly prohibited damages and equitable relief provided by Title VII); *Hudson v. P.I.P. Inc.*, 793 F. App'x 935, 938 (11th Cir. 2019) (arbitration agreement impermissibly prohibited remedies available under Fair Labor Standards Act );[3] *see also, e.g.*, *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 238–43 (3d Cir. 2020) (arbitration clause impermissibly forbade RICO claim); *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 216 (3d Cir. 2003) (arbitration clause impermissibly waived attorney's fees); *Smith*, 13 F.4th at 618–23; *Kristian v. Comcast Corp.*, 446 F.3d 25, 48 (1st Cir. 2006) (arbitration clause impermissibly eliminated treble damages authorized by antitrust statute); *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 79 (D.C. Cir. 2005) (Roberts, J.) (arbitration clause

---

[3] Defendants cite *Randolph v. Green Tree Fin. Corp.–Alabama*, 244 F.3d 814, 818–19 (11th Cir. 2001), which noted the absence of 11th Circuit authority applying the effective vindication doctrine to void an arbitration clause. Br. at 21. But *Randolph* predates *Hudson*, which did exactly that.

impermissibly waived punitive damages); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1178 (9th Cir. 2003) (arbitration agreement that "fail[ed] to provide for all the types of relief that would otherwise be available in court" unenforceable); *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 478 n.14 (5th Cir. 2003) (arbitration clause impermissibly eliminated punitive damages provided for under Title VII).

Defendants' suggestion that Plaintiffs were required to show "a clearly expressed congressional intention" for ERISA to "displace" the FAA mis-frames the issue. Brief of Defendants-Appellants, App. Dkt. 20 ("Br.") at 18. Contrary to Defendants' contention, Plaintiffs do not argue that ERISA precludes arbitration or otherwise "suggest that two statutes"—ERISA and the FAA—"cannot be harmonized." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018). The same rule applies here as in any case: an arbitration clause cannot eliminate statutory remedies. This arbitration clause is not invalid because of a supposed conflict between ERISA and the FAA. It is invalid because Defendants overreached and drafted an arbitration clause that erases key portions of ERISA's remedial scheme. It is settled law that an arbitration clause may "not alter or abridge substantive rights" in this manner. *Viking River*, 596 U.S. at 653.

### B. The arbitration clause purports to prohibit statutory claims and remedies authorized by ERISA.

The arbitration clause says Plan participants may not assert claims or seek remedies ERISA explicitly authorizes. Specifically, the arbitration clause prohibits

18

claims brought "in a representative capacity," meaning participants cannot bring any claim on behalf of the Plan. (1 App., Tab 44-1, Ex. 4 at 6). The arbitration clause then singles out ERISA § 502(a)(2) (29 U.S.C. § 1132(a)(2)) and § 409 (29 U.S.C. § 1109) and limits the relief available to the participant thereunder to (i) "the alleged losses to the Claimant's *individual* Account," (ii) "a pro-rated portion of any profits allegedly made by a fiduciary," or (iii) other appropriate "remedial or equitable relief," but only if it does not benefit anyone other than the individual claimant and does not bind "the Committee or Trustee with respect to" anyone other than the individual claimant. (1 App., Tab 44-1, Ex. 4 at 6) (emphasis added). By (1) forbidding participants from bringing claims in a representative capacity on behalf of the Plan, and (2) limiting the remedies available to participants who do bring suit, the arbitration clause prevents Plaintiffs from "effectively vindicating" their statutory rights under ERISA.

### 1. The arbitration clause prohibits derivative claims on behalf of the Plan.

ERISA is a unique federal statute, at the center of which is the employee benefit "plan." The "plan" is a distinct legal entity with the power to sue or be sued. 29 U.S.C. § 1132(d). ERISA is crafted around protection of the plan, its assets, and its participants. *Id.* § 1103(a), 1104(a), 1106. As this Court has recognized, ERISA's carefully crafted remedial scheme "authorizes a plan participant or beneficiary to seek 'appropriate relief' to enforce § 409," *Heffner v.*

*Blue Cross & Blue Shield of Alabama, Inc.*, 443 F.3d 1330, 1339 (11th Cir. 2006) (quoting 29 U.S.C. § 1132(a)(2)), and such claims are "brought on behalf of the Plan," *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1352 (11th Cir. 2001). Section 1109(a), in turn, "makes it clear that only the *plan*, and not an individual beneficiary, may recover damages for a breach of fiduciary duties." *Simmons v. S. Bell Tel. & Tel. Co.*, 940 F.2d 614, 617 (11th Cir. 1991) (emphasis added). Section 1109(a) provides

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good *to such plan* any losses *to the plan* resulting from each such breach, and to restore *to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary.

*Id.* (quoting 29 U.S.C. § 1109(a)) (emphasis in original); *see also Heffner*, 443 F.3d at 1339 ("The Supreme Court has explicitly stated that the relief available under § 409 can only be obtained on behalf of 'the plan itself.'" (quoting *Russell*, 473 U.S. at 144)).

The Supreme Court and this Court have held that § 1132(a)(2) claims are "brought in a representative capacity on behalf of the plan as a whole." *Russell*, 473 U.S. at 142 n.9; *Varity Corp. v. Howe*, 516 U.S. 489, 516 (1996) (noting ERISA's fiduciary duties "must" be enforced "in a representative capacity") (Thomas, J., dissenting); *Fuller v. SunTrust Banks, Inc.*, 744 F.3d 685, 695 (11th

Cir. 2014) ("[T]he plan participant cannot seek to recover personal damages for misconduct, but must instead seek recovery that 'inures to the benefit of the plan as a whole.'") (quoting *Russell*, 473 U.S. at 140); *see also, e.g.*, *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 376 (5th Cir. 2008) ("Based on *Russell*, many courts have held that claims for breach of fiduciary duty under § 502(a)(2) [(§ 1132(a)(2))] must be brought in a representative capacity on behalf of the plan as a whole, with the goal of protecting the financial integrity of the plan.").

The ability to bring a breach of fiduciary duty claim at all is, indisputably, a substantive right granted by ERISA. Because the case law makes clear that such claims can only be brought "in a representative capacity on behalf of the plan," an arbitration clause that eliminates the ability to bring a representative claim effectively eliminates the entire substantive right to bring a fiduciary breach claim under § 1132(a)(2). *See Wallace v. Blue Cross & Blue Shield of Alabama*, No. CIV.A. 14-0119-CG-C, 2014 WL 5335823, at *5 (S.D. Ala. Oct. 20, 2014) (finding that "the Plaintiffs cannot state a claim for breach of fiduciary duty under section 502(a)(2)" because "[t]hey seek to recover for their personal losses, not losses to the Plan"); *Brown v. Validata Computer & Rsch. Corp.*, No. 2:12CV775-SRW, 2013 WL 3422477, at *3 (M.D. Ala. July 8, 2013) (stating that participant seeking individualized damages cannot bring § 1132(a)(2) claim because that subsection "provides a remedy only for injuries to a *plan*" and "does not provide a

21

remedy for individual injury"). As a result, this is a paradigmatic case for applying the effective vindication doctrine. *Mitsubishi Motors*, 473 U.S. at 628 ("By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute[.]"); *Cedeno*, 100 F.4th at 400 (arbitration clause's requirement that participants "bring their claims solely in their 'individual capacity and not in a representative capacity'" works to "effectively preclude [plaintiff] from pursuing the remedies available to him under Section 502(a)(2) for Defendants' violations of their obligations under Section 409(a)").

### 2.    The arbitration clause prohibits remedies provided by ERISA.

The arbitration clause further prevents Plaintiffs from "effectively vindicating" their statutory rights provided by ERISA by curtailing the remedies available to participants.

### a.    The arbitration clause bars plan-wide monetary relief.

By limiting arbitration to an individual participant's "pro-rated" share of any monetary recovery, 1 App., Tab 44-1, Ex. 4 at 6, the arbitration clause improperly forecloses plan-wide monetary relief. ERISA expressly permits an individual plan participant to seek recovery of "*any* losses *to the plan*" and disgorgement of "*any* profits . . . made through use of assets *of the plan*." 29 U.S.C. § 1109(a) (emphasis added). As this statutory language reflects, this recovery "inures to the benefit of

the plan *as a whole*." *Russell*, 473 U.S. at 140 (emphasis added); *see also id.* at 142 n.9; *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 261 (2008) ("On their face, §§ 409(a) and 502(a)(2) permit recovery of *all* plan losses caused by a fiduciary breach.") (Thomas, J., concurring). Consistent with the plain language of § 1109, courts routinely allow individual plan participants like Plaintiffs to sue to restore all plan losses and disgorge all profits arising from the fiduciary breach. *See infra* at 30-31 (citing cases allowing individuals to recover all plan losses or proceed alone on behalf of plan).

Consistent with § 1109, Plaintiffs seek monetary relief that would inure to the Plan as a whole. They ask the fiduciary Defendants to "make good to the Plan" the losses resulting from their breaches of fiduciary duties. (1 App., Tab 69, Amended Complaint ¶ 124). They also seek disgorgement of any profits these Defendants have made using Plan assets. (1 App., Tab 69, Amended Complaint at Prayer for Relief § J). What Plaintiffs seek, and what they are entitled to under ERISA, cannot be squared with the arbitration clause.

Moreover, given the nature of Defendants' misconduct, Plaintiffs' individual shares of the ESOP's losses and Defendants' ill-gotten gains cannot even be calculated without first determining the Plan's total losses and the Defendants' total profits. Plaintiffs allege Defendants forced the Plan to redeem its A360 stock, its only asset, for significantly below fair market value. *See supra* at 3-4. Because

the Plan as a whole was harmed by this forced sale, the arbitrator would have to calculate all of the Plan's losses and all the profits Defendants have made off of the Plan's assets. If the arbitration clause's artificial, "individualized" remedy were enforced, the arbitrator would then use those Plan-wide calculations to determine the tiny fractional shares to award to each Plaintiff's individual account.

That result is contrary to § 1109(a) and § 1132(a)(2) because Defendants would keep all of their ill-gotten gains except for the tiny fraction awarded to any individual Plaintiff. That fractional award is not a remedy for a breach of duty *to the plan*. And allowing breaching fiduciaries to retain most of their ill-gotten gains cannot be squared with § 1109(a), which mandates that a fiduciary who has been found to have breached their fiduciary duties "*shall* be personally liable to make good to [the] plan any losses to the plan resulting from each such breach." 29 U.S.C. § 1109(a) (emphasis added). It also mandates that the fiduciary "*shall . . . restore to [the] plan any profits*" the fiduciary made "through use of" plan assets. *Id.* (emphasis added). Yet under the arbitration clause, breaching fiduciaries need not make the Plan whole or return all ill-gotten profits. By limiting disgorgement to the individual plaintiff's pro-rated share, the arbitration clause impermissibly curtails this important statutory remedy. *See Sec'y U.S. Dep't of Labor v. Koresko*, 646 F. App'x 230, 245 (3d Cir. 2016) ("The purpose of disgorgement of profits is

deterrence, which is undermined if the fiduciary is able to retain proceeds from his own wrongdoing.").

Every circuit to consider whether the effective vindication doctrine invalidates an arbitration clause that prevents plan participants from obtaining plan-wide relief has answered that question in the affirmative. *See Parker*, 2024 WL 3873409, at *8 ("The individual arbitration provision thus eliminates the ability to proceed in a representative capacity on behalf of the Plans and obtain relief for losses to the Plans, which, as demonstrated by *Russell*, *LaRue*, and *Hawkins*, are substantive statutory remedies provided by ERISA."); *Cedeno*, 100 F.4th at 407; *Harrison*, 59 F.4th at 1109; *Henry*, 72 F.4th 499; *Smith*, 13 F.4th at 621–22; *Burnett*, 2023 WL 6374192 (summary affirmance). The district court properly followed *Henry*, *Harrison*, and *Smith*[4] and held the arbitration clause invalid because its prohibition on plan-wide remedies prevents Plan participants from effectively vindicating their statutory rights under ERISA.

### b.  The arbitration clause bars rescission and reformation.

Plaintiffs also seek two forms of relief that fall within the "equitable relief" available under §§ 1109 and 1132(a)(3), both of which are prohibited under the arbitration clause. First, Plaintiffs seek rescission of the amendments terminating

---

[4] The opinions of the Second Circuit and the Sixth Circuit were issued after the district court's order. *See Parker*, 2024 WL 3873409; *Cedeno*, 100 F.4th 386.

the Plan and the purchase agreement. (1 App., Tab 69, Amended Complaint at Prayer for Relief ¶ L); *Perez v. Bruister*, 823 F.3d 250, 266, 276 (5th Cir. 2016) (discussing plan-wide equitable remedies including rescission); *Eaves v. Penn*, 587 F.2d 453, 462–63 (10th Cir. 1978) (holding that ERISA affords "broad and flexible equitable remedies in cases involving breaches of fiduciary duty" and affirming district court's rescission of an ESOP's purchase-sale agreement as "the remedy most likely to protect the plan participants"). But rescission is prohibited under the arbitration clause because rescission applies to all parties to that transaction, which would necessarily include other participants, and would be binding on Defendants as to other participants. *See* 1 App., Tab 44-1 (Plan's arbitration clause states that "Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any individual or entity other than Claimant").

Second, Plaintiffs seek reformation of the Plan and the purchase agreement such that certain interests obtained by Defendants are transferred back to the Plan. (1 App., Tab 69, Amended Complaint at Prayer for Relief ¶ L); *CIGNA Corp. v. Amara*, 563 U.S. 421, 440–42 (2011) (approving plan reformation and other equitable relief as ERISA remedies); *Amara v. CIGNA Corp.*, 775 F.3d 510, 525 (2d Cir. 2014) (stating that reformation of a contract may be ordered when one party "engages in inequitable conduct"). Like rescission, reformation is prohibited

26

by the arbitration clause because the contract is reformed as to all parties to that agreement. *Virginia Sur. Co. v. Northrop Grumman Corp.*, 144 F.3d 1243, 1248 (9th Cir. 1998).

The remedies of rescission and reformation would necessarily bind the plan administrator beyond an individual claimant and provide "relief" that extends to both the claimant and other plan participants. Defendants do not dispute this reading or offer any contrary interpretation. These limitations are fatal because they "foreclose a number of remedies that were specifically authorized by Congress in . . . ERISA." *Harrison*, 59 F.4th at 1107. For that reason, they "prevent [Plaintiffs] from vindicating in the required arbitral forum the statutory causes of action listed in [their] complaint." *Id.*; *see also Cedeno*, 100 F.4th at 400–01 (same); *Parker*, 2024 WL 3873409, at *8 (same).

This conclusion is not altered by Defendants' last ditch Plan amendment permitting injunctive relief that has an "incidental impact" on other Plan participants.[5] The arbitration agreement continues to prohibit relief that conveys

_____

[5] One month after this case was filed, the arbitration clause of this long-dead Plan was purportedly amended to permit injunctive relief so long as it had only "an incidental impact on an individual or entity other than the Claimant." *See supra* at 10. Defendants describe this late-stage re-write as permitting "non-monetary injunctive relief," Br. at 28, but it only confirms that they do not understand ERISA or § 1132(a)(2). The statute does not distinguish between monetary and non-monetary equitable relief. Indeed, some ERISA remedies, like rescission and reformation, contain both aspects. Nor does the amended arbitration clause's

"additional benefits or monetary relief to any individual or entity other than" the individual plaintiff. (1 App., Tab 44-1, Ex. 5 § 1). Defendants confirm that, even with the added clause, the arbitration agreement continues to prohibit Plaintiffs from "obtain[ing] monetary relief on behalf of absent plan participants or their individual plan accounts." Br. at 23. The Plan-wide remedies Plaintiffs seek would have more than an "incidental impact" on other Plan participants and would provide them monetary benefits. Rescission of the Plan's termination would restore A360 shares to every participant's account, while reformation would similarly convey to participants the equity interests in A360 Holdco wrongfully transferred to the board member defendants as part of the Plan's termination. Both remedies are thus barred by the arbitration clause, and Defendants do not contend otherwise.

## II. THE ARBITRATION CLAUSE BARS SUBSTANTIVE, NOT PROCEDURAL, RIGHTS

Defendants try to salvage the arbitration clause by casting it as merely a class-action waiver, which they argue is a procedural rather than a substantive right. Br. at 21–23. The defendants in every case addressing an ERISA plan arbitration clause have tried this gambit. But as every circuit court has recognized, the problem is not the class-action waiver; it is that the arbitration clause prevents Plan participants (even those proceeding on a single-plaintiff, representative basis)

---

carveout for "injunctive relief [that] has an incidental impact" on parties other than the claimant have any foundation in the statute.

from exercising their rights to bring a claim on behalf of the plan and to obtain plan-wide remedies. *E.g.*, *Harrison*, 59 F.4th at 1109 ("It is not [the] prohibition on class actions that is problematic. Rather, it is [the] prohibition of any form of relief that would benefit anyone other than Harrison that directly conflicts with the statutory remedies available under [ERISA]."). As explained above, these are substantive rights embedded in the fabric of ERISA; they cannot be prospectively waived. None of Defendants' arguments warrant a different conclusion.

### A. Section 1132(a)(2) claims are derivative, not a form of claim joinder.

Although Plaintiffs seek to certify a class of Plan participants, Plaintiffs do not argue that they have a substantive right to bring a class action or that certifying a class is even necessary for their claims. Rather, Plaintiffs have a substantive right to (1) bring an ERISA fiduciary breach claim in a representative capacity on behalf of the Plan and (2) seek Plan-wide remedies. Plaintiffs may proceed with their claims and obtain Plan-wide remedies without moving for class certification. Plaintiffs' § 1132(a)(2) claims, therefore, are not a form of "claim joinder," as Defendants argue.[6]

---

[6] Even if Plaintiffs' § 1132(a)(2) claims were a form of "claim joinder," the arbitration clause would nonetheless be invalid under the effective vindication doctrine because it prohibits plan-wide remedies. *See supra* at 22-28.

29

Indeed, there are no other claims to join in an ESOP case like this one. Unlike a "claim joinder" lawsuit, this suit involves a single dispute "arising out of a particular transaction or common nucleus of facts." *Viking River*, 596 U.S. at 661 (cleaned up). The "loss to the plan" here is the amount the ESOP lost when it was forced to sell its A360 stock for below fair market value. Thus, there is one transaction at issue, not "a massive number of [individual] claims [combined] in a single-package suit." *Id.* Further, "the losses suffered by the participants in the ESOP are coterminous with those of the plan." *Perez*, 823 F.3d at 258 ("the 'loss [ ] to the plan' [wa]s the amount that the ESOP overpaid for BAI stock"). Thus, any individual participant's harm cannot be determined without first determining the harm to the Plan as a whole. *Id.*; *see also supra* at 23-24.

The cases in which courts have awarded plan-wide relief to individual plaintiffs confirm the critical point that 29 U.S.C. § 1109 is not a mere procedural mechanism for combining multiple individual claims into one action. Rather, a single plaintiff can obtain full plan-wide relief proceeding alone because the plaintiff is acting on behalf of the plan itself. *See Browe v. CTC Corp.*, 15 F.4th 175, 191 & n.6, 199, 206–07 (2d Cir. 2021) (affirming, in relevant part, award to plaintiffs proceeding in representative capacity on behalf of plan without certifying class; remanding with direction to "district court to recalculate [damages] in order to capture [all plan] losses through the date of judgment" and to craft appropriate

scheme to distribute damages to plan participants); *Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 781–82, 784, 788 (4th Cir. 2019), *as amended* (Mar. 22, 2019) (plaintiff may proceed on behalf of plan under 29 U.S.C. § 1132(a)(2) even if class is not certified); *Perez*, 823 F.3d at 258 (same)); *Ortiz v. Am. Airlines, Inc.*, 5 F.4th 622, 627 & n.7 (5th Cir. 2021) (same); *Tullis v. UMB Bank, N.A.*, 515 F.3d 673, 679–80 (6th Cir. 2008) (class certification not required for plaintiff to seek plan losses).

Here, Plaintiffs do not seek to "unite a massive number of claims in a single-package suit." *Viking River*, 596 U.S. at 661. Rather, Plaintiffs challenge one transaction and seek to remedy a single, unitary injury suffered by the Plan. A single plaintiff can obtain full plan-wide relief because the plaintiff is acting on behalf of the plan itself. *Id.* at 657–62 (distinguishing between representative actions arising out of a single transaction and the class-action-like aggregation of multiple unrelated claims).

Because Defendants conflate ERISA's plan-wide remedies with class action procedures, their reliance on *Epic Systems* and *Gilmer* is misplaced. Br. at 12, 17, 20, 24. The only issue in *Epic Systems* was whether the National Labor Relations Act prohibited contractual agreements for individualized arbitration. 584 U.S. at 502. Those arbitration agreements did not take away statutory remedies or causes of action. The same was true in *Gilmer*, where the Court expressly noted the

arbitration agreements did "not restrict the types of relief an arbitrator may award." *Gilmer*, 500 U.S. at 32. As the Court itself recognized in *Gilmer*, an arbitration clause cannot eliminate these kinds of substantive rights. *Id.* at 26.[7] Defendants commit the same error in citing *Stolt-Nielsen S.A. v. AnimalFeeds, Int'l Corp.*, 559 U.S. 662 (2010) and *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).

### B.   *Thole* did not change the derivative nature of § 1132(a)(2) claims.

*Thole* does not require a different result. *Thole v. U.S. Bank N.A.*, 590 U.S. 538 (2020). That *Thole* requires participants to establish individual standing to bring a § 1132(a)(2) claim does not mean that such claims are not brought in a representative capacity on behalf of the Plan. Indeed, Defendants cite no case law interpreting *Thole* to mean as much. They instead stretch logic to bridge this obvious gap.[8] In doing so, Defendants first give no credence to what is explained at

---

[7] Moreover, in *Gilmer*, the ADEA gave plaintiffs the ability to aggregate numerous individual claims by different individuals into a collective action. This procedural option to aggregate, the Court held, could be waived in an arbitration clause. *Id.* at 27–28. Here, by contrast, Plaintiffs are suing on behalf of the Plan to remedy the Plan's injury. And waiving the right to sue on behalf of the Plan means *eliminating the § 1132(a)(2) cause of action altogether*. *See supra* at 21-22.

[8] *Thole* is also factually distinguishable. In *Thole*, the plaintiffs were participants in a defined benefit plan—not a defined contribution plan. 590 U.S. at 540. Although the defendant in *Thole* had mismanaged plan assets, the individual plaintiffs had continued to receive their contractually defined benefits. *Id.* at 540–42. In contrast, here, each Plaintiff's individual account suffered a concrete loss when Defendants caused the ESOP to sell its shares for a fraction of their value. Thus, for Plaintiffs

length above—that the language Congress used in § 1109(a) and the case law interpreting that language make clear that the available remedies all flow to the Plan. Second, Defendants ignore that in other areas of the law individual Article III standing is required even though the claim is a representative claim.

As the Court explained in *Viking River*, "[n]on-class representative actions in which a single agent litigates on behalf of a single principal are part of the basic architecture of much of substantive law. Familiar examples include shareholder-derivative suits, wrongful-death actions, trustee actions, and suits on behalf of infants or incompetent persons." 596 U.S. at 657. For some of these representative actions, like a shareholder derivative suit, personal Article III standing is required for the "single agent" asserting the claim. *See, e.g.*, *Bivens Gardens Off. Bldg., Inc. v. Barnett Banks of Fla., Inc.*, 140 F.3d 898, 906–07 (11th Cir. 1998) (requiring Article III standing in shareholder derivative suit); *Siegmund v. Xuelian Bian*, 746 F. App'x 889, 890 (11th Cir. 2018) (same). For others, the cause of action has "been legally or contractually appointed" to an agent without standing. *Thole*, 590 U.S. at 543. Whether the plaintiff must establish personal Article III standing or not, the claim is still representative and part of the non-waivable fabric of substantive law.

---

to have representative standing, they must show they suffered an injury in fact. Plaintiffs have done just that.

In this regard, shareholder derivative actions are the closest analog. "The purpose of a derivative action is to afford a means by which a stockholder, powerless to bring a direct civil action at law against faithless directors and managers, may seek to vindicate corporate rights that the corporation itself has refused to enforce." *Schilling v. Belcher*, 582 F.2d 995, 1001 (5th Cir. 1978).[9] But the shareholder is not relieved of his obligation to satisfy Article III standing. *Id.* at 1002. Just as a plaintiff must be a plan participant or beneficiary to bring suit under § 1132(a)(2), a plaintiff must be a stockholder to sue under Rule 23.1. *Id.* at 999.

Here, it is undisputed that Plaintiffs have standing to pursue their claims. But that does not affect whether Plaintiffs were acting as "a single agent litigat[ing] on behalf of a single principal"—a non-waivable "part of the basic architecture of much of substantive law." *Viking River*, 596 U.S. at 657.

### C.    *LaRue* broadens the relief available under § 1132(a)(2).

*LaRue* also does not require a different result. 552 U.S. at 250–51. Defendants suggest that *LaRue* limited the substantive rights of a participant in a defined contribution plan to sue a plan fiduciary. After *LaRue*, they argue, such a participant may assert an "ERISA § 502(a)(2) claim on behalf of her individual plan account only." Br. at 27. They argue that "[w]hether that participant can sue

---

[9] The Eleventh Circuit has adopted decisions entered by the former Fifth Circuit on or before September 30, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

on behalf of other allegedly harmed accounts," "by seeking to have a class action certified," "is a separate procedural question." *Id.*

*LaRue* in no way limits participants' substantive rights. *See Cedeno*, 100 F.4th at 400 ("[N]othing about *LaRue* alters *Russell*'s holding that remedies under Section 502(a)(2) are limited to providing relief *to the plan*."). *LaRue* involved allegations that plan fiduciaries failed to obey the plaintiff's directions about how to invest his account. 552 U.S. at 250–51. Even though that fiduciary breach affected only the plaintiff's account, the Supreme Court held that the plaintiff could recover under § 1109. The Court explained that "[w]hether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § [1109]." *LaRue*, 552 U.S. at 256.

Either way—whether the loss impacts the entire plan or only one plan account—the loss is an injury *to the plan* and is recoverable under § 1109 as a *loss to the plan*. *Id.* After all, the assets in an individual plan account are plan assets, albeit assets in which the individual participant has a legally cognizable interest. *Id.* ("[A]lthough [§ 1132(a)(2)] does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account.").

35

Thus, as subsequent cases have explained, the Court's holding in *LaRue* "broadens, rather than limits, the relief available under" ERISA. *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595 n.9 (3d Cir. 2009); *see also Parker*, 2024 WL 3873409, at *10 ("Like our decision here, *Cedeno* understood *LaRue* as broadening *Russell*, rather than limiting it."); *LaRue*, 552 U.S. at 261 (Thomas, J., concurring) (Sections 1109(a) and 1132(a)(2) "permit recovery of all plan losses caused by a fiduciary breach.").

## III. DEFENDANTS' REMAINING CASE LAW IS DISTINGUISHABLE OR UNPERSUASIVE

The rest of the case law Defendants cite to argue that some courts have required the individual arbitration of § 1132(a)(2) claims is distinguishable, non-binding, and unpersuasive. Br. at 34–38. Defendants' reliance on the Ninth Circuit's unpublished opinion in *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. 2019) (unpublished) ("*Dorman II*") is misplaced. The arbitration clause in that case required individualized arbitration, but nothing in *Dorman II* suggests that the clause prohibited claims asserted in a representative capacity or barred remedies available under ERISA. The unpublished disposition[10] does not

---

[10] Notably, the Ninth Circuit made its opinion in *Dorman II* non-precedential, severing this unpublished memorandum decision from its published opinion in the same case on the same day. *See Dorman v. Charles Schwab Corp.*, 934 F.3d 1107 (9th Cir. 2019) ("*Dorman I*"). *Dorman I* stands for the unremarkable proposition that ERISA claims, like other claims, are generally arbitrable.

discuss or approve an arbitration clause like the one at issue here that expressly forecloses statutory remedies. As the Seventh Circuit explained in *Smith*, there is "no conflict with *Dorman II*" because "[t]he arbitration provision in that case . . . lacked the problematic language present here." 14 F.4th at 623.

*Coan v. Kaufman*, 457 F.3d 250 (2d Cir. 2006)—which does not concern the enforceability of an arbitration clause—also does not require a different result. *Coan* simply held that a plan participant suing under § 1132(a)(2) must "take adequate steps under the circumstances properly to act in a 'representative capacity on behalf of the plan.'" 457 F.3d at 261 (quoting *Russell*, 473 U.S. at 142 n.9). Again, this is not unlike the "shareholder-derivative suits" that the Supreme Court described as "[n]on-class representative actions" in *Viking River*. 596 U.S. at 651. Those cases need not proceed on a class basis as long as the plaintiff will "fairly and adequately represent the interests" of similarly situated shareholders or members. Fed. R. Civ. P. 23.1. Moreover, *Coan*'s relevance is limited in light of the Second Circuit's recent refusal to enforce an arbitration clause nearly identical to the one at issue here. *Cedeno*, 100 F.4th 386.[11]

---

[11] Defendants' reliance on *Wagner v. Stiefel Labs., Inc.*, No. 1:12-CV-3234-MHC, 2015 WL 4557686 (N.D. Ga. June 18, 2015), is also misplaced. Br. at 32. Like *Coan*, *Wagner* did not address the enforceability of an arbitration clause. Rather, *Wagner* granted summary judgment as to plaintiffs' claims under § 1132(a)(2) because plaintiffs had not moved for class certification and had "done nothing to

The Fifth Circuit precedent Defendants rely on reaches a conclusion similar to *Coan*: "ERISA's civil enforcement rules allow a single plaintiff to sue for plan-wide relief." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 325 (5th Cir. 2007) (Reavley, J., dissenting). Nevertheless, "much of today's ERISA litigation is maintained on a class action basis" because of practical and other concerns. *Id.* Although the *Langbecker* court vacated the district court's decision certifying a class under Rule 23(b)(2) because the plaintiffs failed to satisfy all of Rule 23's requirements, it did not conclude, as Defendants seem to argue, that class certification was required for plaintiffs to bring their claims. *Id.* at 318. The same is true of the other cases Defendants cite on this point. Br. at 32–33.

Finally, because every circuit court to consider this issue has applied the effective vindication doctrine to invalidate the arbitration clause, Defendants cite a smattering of district court orders in circuits that have not yet addressed this issue. These orders are flawed.[12] In *Holmes v. Baptist Health S. Fla., Inc.*, an unpublished

---

notify or otherwise involve other Plan participants" by that time. 2015 WL 4557686, at *13. *Coan* explained the relevant distinction: while representational adequacy *could* be established by proceeding under Rule 23, it did not transform § 1132(a)(2) cases into mandatory class actions. To the contrary, "plan participants need not always comply with Rule 23 to act as a representative" in an action brought on behalf of the plan. *Coan*, 457 F.3d at 261.

[12] Of course, Defendants' cases are not the only ones from circuits that have not yet addressed this issue. Other district courts in these circuits have applied the

decision, the court concluded waiver of plan-wide monetary relief must be permissible because parties can waive "the right to bring a class action in arbitration." No. 21-22986-CIV, 2022 WL 180638, at *3 (S.D. Fla. Jan. 20, 2022). Not only is this case out of step with the vast weight of authority, *Holmes* predates *Viking River*, in which the Supreme Court clarified that bringing a representative action such as a "trustee action" is a substantive right, and that differences between representative and class actions "preclude any straightforward application of our precedents invalidating prohibitions on class-action waivers." *Viking River*, 596 U.S. at 654. Moreover, Section 1109's plan-wide remedies are different in nature than a procedural class-action mechanism. *See Harrison*, 59 F.4th at 1110–11; *see also supra* at 22-28.[13]

*Robertson* and *Avecilla* (unpublished orders issued before the circuit court opinions in *Cedeno* and *Parker*) simply omit the critical analysis. *Robertson v. Argent Tr. Co.*, No. CV-21-01711-PHX-DWL, 2022 WL 2967710 (D. Ariz. July 27, 2022); *Avecilla v. Live Nation Entm't, Inc.*, 2023 WL 5354401 (C.D. Cal. Aug. 7,

---

effective vindication doctrine to invalidate comparable arbitration clauses. *See, e.g.*, *Pover v. The Capital Grp. Cos., Inc.*, 2:23-cv-09657-GW-PVC, ECF 45 (C.D. Cal. Aug. 12, 2024) (tentative ruling adopted by ECF 46 as final ruling); *Coleman v. Brozen*, No. 3:20-CV-01358-E, 2023 WL 4498506 (N.D. Tex. July 12, 2023).

[13] The *Holmes* court also stated the Eleventh Circuit had never invoked "effective vindication," 2022 WL 180638, at *2, yet it has done so twice. *See supra* at 17.

2023). Neither order contains any discussion of the representative nature of claims under § 1132(a)(2) or the allowance for plan-wide monetary relief under § 1109(a).[14] *Yagy v. Tetra Tech, Inc.*, another unpublished decision from a Ninth Circuit district court, joins *Robertson* and *Avecilla* in misreading *Dorman II* to justify its holding. No. CV 24-1394-JFW(ASX), 2024 WL 2715900, at *5–6 (C.D. Cal. May 17, 2024); *supra* at 36-37.

*Merrow v. Horizon Bank*, Br. at 22, 38, contains only short and shallow reasoning. 699 F. Supp. 3d 605 (E.D. Ky. 2023). *Merrow* notes that an arbitration agreement may not eliminate statutory rights or remedies, but offers no analysis of whether the arbitration clause had that effect. *Id.* at 614. Nor does *Merrow* reckon with the text of § 1109(a), any of the circuit court opinions applying the effective vindication doctrine, or any Supreme Court precedent other than *Viking River*. *See id.* at 613–15. Notably, *Merrow*'s reasoning is incompatible with the Sixth Circuit's subsequent decision in *Parker*. 2024 WL 3873409, at *8

---

[14] *Robertson* and *Avecilla* also read *Smith* and *Harrison* too narrowly by suggesting that those courts objected only to the waiver of plan-wide *injunctive* relief. *Robertson*, 2022 WL 2967710, at *10; *Avecilla*, 2023 WL 5354401, at *4–5. The holdings of *Smith* and *Harrison* are not limited to equitable remedies. Rather, *Smith* concluded that employees may bargain away some forms of "plan-wide representation" so long as they may obtain all "plan-wide remedies" that ERISA authorizes. 13 F.4th at 622. Similarly, *Harrison* applied the effective vindication doctrine because the arbitration provision "would prevent Harrison from vindicating in the required arbitral forum the statutory causes of action listed in his complaint"—exactly what Defendants seek to do here. 59 F.4th at 1107.

Finally, Defendants cite *Ducharme v. DST Systems, Inc.*, another unpublished decision. No. 4:17-cv-22-BCW, 2017 WL 7795123 (W.D. Mo. June 23, 2017). *Ducharme* did not consider any of the arguments raised here, and it is not clear whether the arbitration clause at issue barred plan-wide remedies.

## IV.   THE ARBITRATION CLAUSE IS ALSO INVALID BECAUSE IT FAILS MULTIPLE PRECEPTS OF CONTRACT FORMATION

The arbitration clause's elimination of statutory remedies is enough for this Court to affirm. But affirmance is also warranted for two additional reasons. First, Plaintiffs did not have notice of the clause until after they filed suit, so they cannot possibly have agreed to it. Second, Plaintiffs had left employment at A360 well before the arbitration clause was added to the Plan, so the clause was never a part of Plaintiffs' unilateral contracts with A360.

### A.   Plaintiffs cannot be compelled to arbitrate when they did not consent to do so.

#### 1.   The FAA requires the consent of both parties to arbitrate.

Defendants cannot dispute that arbitration can be compelled pursuant to the FAA only if the FAA's requirements are satisfied. ERISA does not authorize arbitration; it provides that federal courts "shall" have jurisdiction over ERISA claims. 29 U.S.C. § 1132(e)(1). While ERISA's provision for exclusive federal jurisdiction does not override the FAA, it leaves no doubt that arbitration is permissible only because of and in compliance with the FAA. *Pritzker v. Merrill*

41

*Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1116–18 (3d Cir. 1993) (recognizing that ERISA does not authorize arbitration, but the FAA does).

The FAA, in turn, requires enforcement only of "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract." 9 U.S.C. § 2. "The first principle that underscores all of [the Supreme Court's] arbitration decisions is that arbitration is strictly a matter of consent." *Lamps Plus, Inc.*, 587 U.S. at 184 (cleaned up). The Supreme Court has been unwavering on this point, emphasizing that "the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A.*, 559 U.S. at 681 (citation omitted). Although consent may manifest itself in a variety of ways and the provision need not result from an arm's-length transaction, there must at least be *some* indication that both sides of the transaction agreed an arbitrator should resolve the dispute.[15]

───────────────

[15] To the extent that state law also informs questions of contract formation under the FAA, *see, e.g.*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), Illinois law applies here and is equally clear. Like all other states, Illinois law dictates that "[a]n enforceable contract must include a meeting of the minds or mutual assent as to the terms of the contract." *Acad. Chicago Publishers v. Cheever*, 144 Ill. 2d 24, 30 (1991). "It is not compelling that the parties share a subjective understanding as to the terms of the contract; the parties' conduct may indicate an agreement to the terms of same." *Id.* "Arbitration is a way to resolve disputes, but only those disputes that the parties have agreed to submit to

Because the FAA requires the consent of both parties to arbitrate, courts have repeatedly rejected attempts to unilaterally impose arbitration or modify its scope. *See, e.g.*, *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) ("In the absence of an agreement to arbitrate, a court cannot compel the parties to settle their dispute in an arbitral forum."); *Douglas v. Johnson Real Est. Invs., LLC*, No. 1:11-CV-00567-SCJ, 2011 WL 13177544, at *2 (N.D. Ga. Oct. 11, 2011), *aff'd*, 470 F. App'x 823 (11th Cir. 2012) (arbitration agreement "is invalid when the employer can unilaterally modify the agreement without providing notice to the employee; when such a scenario arises, the employer can simply choose not to perform and thus the promise to arbitrate is merely illusory."); *Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 865 (3d Cir. 2016). This touchstone FAA principle means that Defendants cannot force Plaintiffs to arbitrate if they have not agreed to arbitrate.

Plaintiffs did not agree to arbitrate. Indeed, they couldn't have. The arbitration clause was added to the Plan simultaneous with the Plan's termination. No one ever participated in the Plan while the arbitration clause was in effect. *See supra* at 7-9. As Defendants have conceded, Plaintiffs not only did not consent, "Plaintiffs were not 'notified' of Amendments Three or Four." (2 App., Tab 78,

---

arbitration." *Gaines v. Ciox Health, LLC*, 2024 IL App (5th) 230565, ¶ 26. Defendants agree that Illinois law governs. Br. at 46 n.5.

Renewed Motion to Compel Individual Arbitration at 6). While other cases may present hard questions about what constitutes consent, this case is straightforward: no one contends Plaintiffs consented.

### 2. Nothing in ERISA overrides the FAA's consent requirement.

Defendants do not dispute this basic premise. Instead, they argue that ERISA creates a special rule where, despite everything the Supreme Court has said about the FAA, a party *can* be coerced into arbitration. Specifically, they contend that ERISA implicitly overrides the FAA's consent requirement and makes individual consent unnecessary. Br. at 42–45. But the Plan's consent is a necessary condition to arbitrate, not a sufficient condition. *See Hawkins v. Cintas Corp.*, 32 F.4th 625, 636–37 (6th Cir. 2022).

ERISA claims are arbitrable under the FAA. *See Smith*, 13 F.4th at 620. The backstop to the FAA's mandate, however, is the requirement of mutual consent between the parties to the arbitration. *See Stolt-Nielsen*, 559 U.S. at 682 ("parties' agreement to forgo the legal process and submit their disputes to private dispute resolution" is critical); *Viking River*, 596 U.S. at 651 (FAA protects "right to arbitrate based on an *agreement*"). Using other sources of law "to coercively impose arbitration" contravenes "the first principle" of "FAA jurisprudence: that arbitration is strictly a matter of consent." *Viking River*, 596 U.S. at 651 (cleaned up). And while "doubts concerning the *scope* of an arbitration clause should be

44

resolved in favor of arbitration, the presumption does not apply to disputes concerning *whether* an agreement to arbitrate has been made." *Dash v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (emphasis added) (cleaned up).

Defendants argue that participant consent is irrelevant because ERISA makes plan amendments binding without notice or consent. Br. at 44–45. But the fact that the amendment may be permitted under ERISA cannot override what the FAA mandates: that "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *Viking River*, 596 U.S. at 660 (citation omitted). Even though Plaintiffs represent the Plan, each is required to have a personal stake in the lawsuit, and the consent of the Plan cannot stand in for their consent.[16]

The incoherence of Defendants' position that only the Plan's consent is required is highlighted here where the arbitration clause *prohibits Plan-wide relief.* In other words, the Plan cannot simultaneously consent to arbitration and then be prohibited from obtaining relief in it. This distinguishes *Berkelhammer v. ADP TotalSource Group, Inc.*, 74 F.4th 115, 120 (3d Cir. 2023), where the Plan's

---

[16] Defendants argue that the district court's holding would "eliminate the ability of ERISA plans to function" and render "uniform plan administration" impossible. Br. at 43–44. Not so. Plan participants' consent is not required for every plan amendment. But if the amendment concerns an arbitration clause, consent is mandated by the FAA.

consent to arbitration was found binding on participants. Br. at 44. The agreement in *Berkelhammer* authorized all forms of relief, and there was no indication Plaintiffs had left employment before the agreement to arbitrate was entered into. *Berkelhammer*, 74 F.4th at 117 n.2. Likewise for *Schoemann v. Excellus Health Plan, Inc.*, 447 F.Supp. 2d 1000, 1007–08 (D. Minn. 2006), which concerned a forum-selection clause, not an arbitration clause that waived statutory rights and remedies.

Defendants also rely on the flawed reasoning in *Dorman II*. Br. at 44. This unpublished Ninth Circuit summary disposition stated in cursory fashion that participant consent is irrelevant because a claim under § 1132(a)(2) "belong[s] to a plan—not an individual." 780 F. App'x at 513. The court did not elaborate, nor attempt to square its holding with the myriad published decisions requiring participant consent to arbitrate. In particular, the court did not address *Comer v. Micor, Inc.*, 436 F.3d 1098, 1103 (9th Cir. 2006). This published Ninth Circuit decision explains that although a participant sues on behalf of the plan, she maintains a personal stake in an § 1132(a)(2) claim—and thus she cannot be forced to arbitrate that claim unless she personally agreed to do so. *Id.* (explaining "claimant *also* sues in a non-derivative capacity" and that "the cause of action belong[s] to the individual plaintiff"). Following *Comer*, a plan cannot consent to

arbitrate a § 1132(a)(2) claim on a plan participant's behalf in light of the participant's personal interest in the claim.[17]

Simply put, Defendants cannot agree to arbitration for both themselves and Plan participants. The only way to avoid this problem—to "harmonize[]" ERISA and the FAA—is to require participants' consent to arbitration as well. *Epic Sys.*, 584 U.S. at 510. Otherwise, unilaterally imposed arbitration would be permitted under ERISA, but forbidden in every other context.

### B.    Plaintiffs are not bound by an amendment enacted after they left employment with A360.

Even if a plan could theoretically consent on a participant's behalf, the rules of unilateral contracts prohibit such an outcome here. Like all ERISA plans, the ESOP was a "unilateral contract" to which participants consented by continuing employment. *Hurd v. Illinois Bell Tel. Co.*, 234 F.2d 942, 946 (7th Cir. 1956). An employee is entitled to the plan terms in effect when their employment ends, as that is when the employee has completed their performance under the plan/contract. *See Kemmerer v. ICI Americas Inc.*, 70 F.3d 281, 287 (3d Cir. 1995); 1 App., Tab 44-1, Ex. 1 at 11, 17. Accordingly, when employment ends, the

---

[17] Even if *Dorman II* were correct that § 1132(a)(2) claims belong to the plan and thus plan consent suffices, that does not end the inquiry. Plaintiffs assert more than just § 1132(a)(2) claims. (1 App., Tab 69, Amended Complaint ¶¶ 146-62). Even under *Dorman II* the Plan cannot agree to arbitrate those additional claims on Plaintiffs' behalf because those claims undisputedly do not belong to the Plan.

employee's pension rights vest. *Kemmerer*, 70 F.3d at 287 (after employment is terminated, "unilateral adoption of an amendment which is then used to defeat or diminish the employee's fully vested rights under the governing plan document is . . . ineffective"). *See also Carr v. First Nationwide Bank*, 816 F. Supp. 1476, 1488 (N.D. Cal. 1993); *Barrett v. Fox & Grove, Chartered*, No. 01 C 5910, 2002 WL 31761410, at *3 (N.D. Ill. Dec. 9, 2002). "The notion of protecting vested rights prevents one party to a contract from unilaterally changing the terms of performance after that performance has become due." *Member Servs. Life Ins. Co. v. Am. Nat. Bank & Tr. Co. of Sapulpa*, 130 F.3d 950, 956 (10th Cir. 1997). Permitting a fiduciary to unilaterally alter how participants can bring claims for breach of fiduciary duty "would, in a sense, be allowing the fox to guard the henhouse." *See Brown v. Wilmington Tr., N.A.*, No. 3:17-cv-250, 2018 WL 3546186, at *5 (S.D. Ohio July 24, 2018) (cleaned up).

Courts have refused to enforce arbitration clauses enacted after a participant ceases employment. *See, e.g.*, *id.* (plan cannot unilaterally "bind individuals like Plaintiff, who have ceased all participation in the plan and whose cause of action accrued prior to the modification"); *Hawkins v. Cintas Corps.*, No. 1:19-CV-1062, 2021 WL 274341, at *7 (S.D. Ohio Jan. 27, 2021) (endorsing *Brown*), *aff'd sub nom. Hawkins v. Cintas Corp.*, 32 F.4th 625 (6th Cir. 2022); *Casey v. Reliance Tr. Co.*, No. 4:18CV424, 2019 WL 7403931, at *35 (E.D. Tex. Nov. 13, 2019). Here,

Defendants admit that "the Amendments came into effect after each Plaintiff had left employment." (2 App., Tab 78, Renewed Motion to Compel Individual Arbitration at 6). Accordingly, Plaintiffs are not bound by the arbitration clause.

### C.   Direct benefits estoppel does not apply here.

Finally, Defendants invoke the doctrine of direct benefits estoppel to try to save their arbitration clause. Br. at 45–47. "Under direct benefits estoppel, a nonsignatory party is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause." *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1025 (7th Cir. 2024) (cleaned up). That doctrine does not apply here for five reasons.

First, "Illinois state courts have not applied direct benefits estoppel to enforce arbitration against a non-signatory." *Id.*; *see also Guarantee Tr. Life Ins. Co. v. Platinum Supplemental Ins., Inc.*, 68 N.E.3d 481, 491–92 ("[T]he appellate court has declined to follow the federal decisions adopting this expanded interpretation of equitable estoppel.") (citing *Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 516 (2004)).

Second, Plaintiffs are "not the type of non-signatory contemplated" by the doctrine, which "typically applies to third parties who benefit from an agreement made between two primary parties." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014). Here, there is simply no agreement to arbitrate between

Defendants and *anyone*. *See A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1064 (7th Cir. 2018) (declining to find estoppel because plaintiff "had no relationship, contractual or otherwise, with [defendant]").

Third, direct benefits estoppel does not apply "when the substance of the claim arises from general obligations imposed by . . . federal law, . . . even if the claim refers to or relates to the contract or would not have arisen but for the contract's existence." *Ali v. Smith*, 554 S.W.3d 755, 760 (Tex. App. 2018) (quoting *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 637 (Tex. 2018)). *See also, e.g.*, *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 754 (7th Cir. 2017) (declining to apply direct benefits estoppel because the plaintiff's "claims arise under federal . . . statutes and do not depend on her contract with [a third party].")); *Brown*, 2018 WL 3546186, at *6.

Fourth, direct-benefits estoppel is inapplicable here because it is Defendants, not Plaintiffs, that seek to compel compliance with the arbitration clause. "[D]ifferent 'equitable estoppel' theories apply depending on whether the nonsignatory is being compelled or is compelling compliance with an arbitration clause" *Snyder v. Jack Schmitt Ford, Inc.*, 2022 IL App (5th) 210413-U, ¶ 48, *appeal denied*, 197 N.E.3d 1075 (Ill. 2022). "[A]s a rule, a signatory cannot compel a nonsignatory to arbitration under the 'alternative' estoppel theory . . . ." *Id.* (citation and quotation marks omitted).

Lastly, equitable estoppel applies only where the party seeking to compel arbitration *reasonably* relied on the acts or representations of the other party. *Premovic v. Northshore Univ. Health Sys.*, 2015 IL App (1st) 133466-U, ¶ 21. Because Plaintiffs were not notified of the "arbitration provision until [they] had already initiated this litigation . . . [i]t would be unreasonable . . . to assume that plaintiff[s] would willingly submit [their] cause of action to arbitration." *Id.*

## V.    THE FEE-SHIFTING PROVISION VIOLATES ERISA § 502(G)

Having lost at the district court, Defendants boldly conclude their brief by renewing their request for attorney's fees and expenses under their invalid arbitration clause. Br. at 47. But "the Plan's contractual fee-shifting arrangement is preempted by § 1132(g)(1) of ERISA." *Robertson*, 2022 WL 2967710, at *11.

Moreover, while § 1132(g)(1) provides that a court "in its discretion may allow a reasonable attorney's fee and costs of action to either party," a party must achieve a degree of success on the merits in order to receive fees. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). A "purely procedural victor[y]" does not qualify. *Id.* (citation omitted). Prevailing on a motion to compel arbitration is a procedural victory, not "some degree of success on the merits." Thus, the fee-shifting provision is both preempted and inapplicable.

## CONCLUSION

This Court should affirm the district court's decision.

Date:  September 27, 2024

ENGSTROM LEE LLC

/s/Mark E. Thomson
Mark E. Thomson
Carl F. Engstrom
323 N. Washington Ave., Suite 200
Minneapolis, MN 55401
Telephone: (612) 305-8349
mthomson@engstromlee.com
cengstrom@engstromlee.com
*Counsel for Plaintiffs-Appellees*
*Eboni Williams, et al.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because the brief contains 12,943 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

II.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2021, in 14-point Times New Roman.

September 27, 2024                         /s/ *Mark E. Thomson*
                                          Mark E. Thomson
                                          Engstrom Lee LLC
                                          *Counsel for Plaintiffs-Appellees*
                                          *Eboni Williams, et al.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 27, 2024, I caused four (4) copies of Appellees' Brief to be served via Federal Express Overnight delivery to the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit, and filed an electronic copy of the brief via CM/ECF system, causing a Notice of Electronic Filing to be transmitted to all counsel of record.

/s/ *Mark E. Thomson*
Mark E. Thomson
Engstrom Lee LLC
*Counsel for Plaintiffs-Appellees*
*Eboni Williams, et al.*