No. 24-11192

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

Eboni Williams, *et al*.,

Plaintiffs-Appellees,

v.

Gerald Shapiro, *et al*.,

Defendants-Appellants.

_____

On Appeal from the United States District Court for the
Northern District of Georgia
Case No. 1:23-cv-03236-VMC
The Honorable Judge Victoria M. Calvert

_____

**BRIEF FOR THE ACTING U.S. SECRETARY OF LABOR AS AMICUS
CURIAE SUPPORTING PLAINTIFFS-APPELLEES**

SEEMA NANDA
Solicitor of Labor

WAYNE R. BERRY
Associate Solicitor
for Plan Benefits Security

JEFFREY M. HAHN
Counsel for Appellate and Special
Litigation

Susanna Benson
Senior Attorney

U.S. Department of Labor
Office of the Solicitor
Plan Benefits Security Division
200 Constitution Ave. NW, N4611
Washington, DC 20210
202.693.5682 (t) | 202.693.5610 (f)

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

In accordance with Eleventh Circuit Rules 26.1-1, 26.1-2, and 26.1-3, the undersigned counsel for the Acting Secretary of Labor as amicus curiae certifies that, in addition to those identified in the briefs filed by Plaintiffs-Appellants and Defendants-Appellees, the following persons and entities may have an interest in the outcome of this case:

1. Benson, Susanna, U.S. Department of Labor, Office of the Solicitor, counsel for the Secretary of Labor;

2. Berry, Wayne, U.S. Department of Labor, Office of the Solicitor, counsel for the Secretary of Labor;

3. Employee Benefits Security Administration, U.S. Department of Labor;

4. Hahn, Jeffrey, U.S. Department of Labor, Office of the Solicitor, counsel for the Secretary of Labor;

5. Nanda, Seema, Solicitor of Labor, U.S. Department of Labor, counsel for the Secretary of Labor;

6. Office of the Solicitor, U.S. Department of Labor; and

7. Su, Julie, Acting Secretary of Labor, U.S. Department of Labor.

The undersigned further certifies that no publicly traded company or corporation has an interest in the outcome of this appeal.

/s/ Susanna Benson
SUSANNA BENSON
Counsel for the Secretary of
Labor

Date: October 03, 2024

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE ......1

STATEMENT OF THE CASE ............................................................1

    A.  Factual Background.........................................................1

    B.  Proceedings Below.........................................................3

SUMMARY OF THE ARGUMENT ....................................................5

ARGUMENT...................................................................................8

I.   ERISA Sections 502(a)(2) and 409(a) Authorize Plan Participants, Acting on Behalf of the Plan, to Seek Plan-wide Relief for Fiduciary Breach Claims........................................................................................8

II.  The Arbitration Clause's Prohibitions on Representative Actions and Plan-wide Relief Are Unenforceable Prospective Waivers of Rights and Remedies Authorized by ERISA .................................................11

    A.  Arbitration agreements may not prospectively waive statutory rights and remedies .........................................................................11

    B.  The Arbitration Clause prospectively waives participants' rights to bring a representative claim and seek plan-wide relief under ERISA section 502(a)(2) .......................................................................14

III.  Defendants' Contrary Arguments Are Unpersuasive...............19

    A.  The district court's holding does not contravene either the FAA or ERISA .......................................................................20

    B.  The right to bring a representative action under section 502(a)(2) is a substantive right that cannot be prospectively waived, not a procedural right ..........................................................................22

    C.  Reversing the District Court's decision would create a direct split with multiple circuits ...............................................................27

CONCLUSION .............................................................................28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases:**

*Am. Exp. Co. v. Italian Colors Rest.*,
　570 U.S. 228 (2013) ................................................................. 12, 13, 20

*Brundle on behalf of Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*,
　919 F.3d 763 (4th Cir. 2019) ..................................................................10

*Cedeno v. Sasson,*
　100 F.4th 386 (2nd Cir. 2024) ...................................................... *passim*

*Dorman v. Charles Schwab Corp.*,
　780 F. App'x 510 (9th Cir. 2019) ................................................... 19, 27

*Epic Sys. Corp. v. Lewis*,
　138 S. Ct. 1612 (2018) ..............................................................................13

*Esden v. Bank of Boston*,
　229 F.3d 154 (2d Cir. 2000) ....................................................................22

*Gollust v. Mendell*,
　501 U.S. 115 (1991) ..................................................................................26

*Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*,
　59 F.4th 1090 (10th Cir. 2023) .......................................... 5 n.2, 17, 27

*Hawkins v. Cintas Corp.*,
　32 F.4th 625 (6th Cir. 2022) .......................................... 10, 15, 25

*Henry v. Wilmington Tr. NA*,
　72 F.4th 499 (3d Cir. 2023) .......................................... 5 n.2, 16, 27

*Hollingsworth v. Perry*,
　570 U.S. 693 (2013) ..................................................................................26

**Federal Cases (continued):**

*Hudson v. P.I.P.*,
   793 F. App'x 935 (11th Cir. 2019)........................................................13

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009) ...............................................................23

*L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau
   Cnty., Inc.*,
   710 F.3d 57 (2d Cir. 2013) .................................................................10

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
   552 U.S. 248 (2008) .................................................................. passim

*Mass. Mut. Life Ins. Co. v. Russell*,
   473 U.S. 134 (1985) ..........................................................................6

*McMullen v. Meijer, Inc.*,
   355 F.3d 485 (6th Cir. 2004) .............................................................20

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) .........................................................................12

*Morgan v. Sundance, Inc.*,
   596 U.S. 411 (2022) .........................................................................12

*Munro v. Univ. of S. Cal.*,
   896 F.3d 1088 (9th Cir. 2018) ...........................................................10

*Parker v. Tenneco, Inc.*,
   ___F.4th___, 2024 WL 3873409 (6th Cir. Aug. 20, 2024)................. 5 n.2, 18, 28

*Sec'y of Labor v. Fitzsimmons*,
   805 F.2d 682 (7th Cir. 1986) ...............................................................1

*Simon v. Hartford Life Inc.*,
   546 F.3d 661 (9th Cir. 2008) .............................................................10

**Federal Cases (continued):**

*Smith v. Bd. of Dirs. of Triad Mfg., Inc.*,
　13 F.4th 613 (7th Cir. 2021) ............................................................ 11, 16, 18 n.4

*Thole v. U.S. Bank, N.A.*,
　590 U.S. 538 (2020) ............................................................................25

*Viking River Cruises, Inc. v. Moriana*,
　596 U.S. 639 (2022) ...................................................................... passim

**Federal Statutes:**

9 U.S.C. § 2 ............................................................................................11

Section 2(b), 29 U.S.C. § 1001(b) ............................................................1

Section 404(a)(1)(d), 29 U.S.C. § 1104(a)(1)(D) ....................................21

Section 409(a), 29 U.S.C. § 1109(a)............................................. 8, 14, 15

Section 502(a)(2), 29 U.S.C. § 1132(a)(2) .................................... 1, 8, 14

**Miscellaneous:**

Fed. R. App. P. 29(a)(2).............................................................................1

Fed. R. Civ. P. 23.1(a)..............................................................................26

**Other Authorities:**

Cal. Lab. Code § 2698 (West 2004) ........................................................24

## STATEMENT OF IDENTITY, INTEREST, AND AUTHORITY TO FILE

The Acting Secretary of Labor ("Secretary") has the primary authority to interpret and enforce Title I of ERISA and is responsible for "assur[ing] the . . . uniformity of enforcement of the law under the ERISA statutes." *See Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 691–93 (7th Cir. 1986) (*en banc*). To that end, the Secretary has an interest in effectuating ERISA's express purpose of "establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans" and "providing for appropriate remedies . . . and ready access to the Federal courts." *See* 29 U.S.C. § 1001(b). In this case, the district court correctly held that arbitration agreements cannot prospectively waive participants' statutory right to pursue plan-wide relief for claims under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2). The Secretary has a substantial interest in ensuring that participants are not forced to arbitrate under agreements that prohibit the plan-wide remedies that ERISA provides.

The Secretary files this brief as amicus curiae pursuant to Federal Rule of Appellate Procedure 29(a)(2).

## STATEMENT OF THE CASE

### A.    Factual Background

Plaintiffs participated in an ERISA-covered Employee Stock Ownership Plan ("ESOP" or "Plan") established in 2017 by their employer, A360, Inc.

("A360" or "the Company"), a financial technology company. Op. and Order at 2, (Appendix (Appx) Vol. 1, Tab 86.). That year, the ESOP acquired 100% of A360's stock for $30 million from Defendant Gerald Shapiro, an A360 Board member and the Company's founder. *Id*.

By 2019, A360 had "surged in value," at which point Shapiro and Defendant Scott Brinkley (A360's CEO) teamed with outside investors to re-acquire the ESOP's A360 stock through a holding company called A360 Holdings LLC ("A360 Holdco"). *Id.* at 3. To that end, Shapiro and Brinkley appointed Defendant Argent Trust Company to act as the ESOP's trustee in a transaction with A360 Holdco. *Id*. at 3,4. In September 2019, Argent agreed to sell the ESOP's stock to A360 Holdco for $8.3 million in cash and cancellation of the ESOP's $26.3 loan obligation to the Company (stemming from the ESOP's 2017 stock purchase). *Id*. at 4. However, Plaintiffs allege that the ESOP's stock was actually worth $70 million. *Id.* They also allege that Defendants Shapiro and Brinkley benefitted from the transaction by "receiv[ing] stock or other consideration as part of the deal." Amended Comp. at 35 (Appx., Vol. 1, Tab 69).

Concurrent with the A360 Holdco transaction, Shapiro and Brinkley (acting as directors of A360) amended the ESOP plan document by adding an arbitration clause that requires claims relating to the ESOP to be arbitrated ("Arbitration Clause"). Op. and Order at 8 (Appx. Vol.1, Tab 86). The Arbitration Clause

requires that participants bring their claims in arbitration "solely in the Claimant's individual capacity and not in a representative capacity" ("Representative Action Waiver"). *Id.* The Arbitration Clause also states that claimants "may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any individual or entity other than the Claimant" ("Remedy Limitation"). *Id.* As an example, the Arbitration Clause clarifies that "with respect to any claim brought under ERISA section 502(a)(2) . . . the Claimant's remedy, if any, shall be limited to (i) the alleged losses to the Claimant's individual Account resulting from the alleged breach of fiduciary duty, (ii) a pro-rated portion of any profits allegedly made by a fiduciary through the use of Plan assets[.]" *Id.*

Then, in September 2022 (one month after this lawsuit was filed), the ESOP plan document was amended again to clarify that participants could seek injunctive relief in arbitration, but with the caveat that such relief may "not include or result in the provision of additional benefits or monetary relief to any individual or entity other than" the individual claimant. *Id.* at 10.

### B.    Proceedings Below

Plaintiffs filed a Complaint (which has since been amended) against the ESOP's fiduciaries (Shapiro, Brinkley, and Argent) alleging that they breached ERISA's fiduciary standards and prohibited transaction rules in connection with

3

the ESOP's sale of stock to A360 Holdco, which the Amended Complaint alleges "short[ed] the ESOP by at least $35.4 million." Am. Compl. at 5 (Appx., Vol.1, Tab 69). The fiduciary-breach and prohibited-transaction claims against the fiduciary Defendants arise under ERISA section 502(a)(2) and are asserted by Plaintiffs in a representative capacity "on behalf of" the ESOP. *Id*. at 40. The Amended Complaint seeks an order requiring Defendants to restore all losses resulting from the alleged breach and awarding equitable relief, such as removal of plan fiduciaries and an appointment of a new independent fiduciary. Am. Compl. at 56-59 (Appx., Vol.1, Tab 69).[1]

Defendants moved to compel individual arbitration of Plaintiffs' claims. Defs.' Mot. to Compel at 2 (Appx., Vol.1, Tab 44). The district court denied the motion, concluding that the Arbitration Clause contains provisions that are "invalid under the effective vindication doctrine"—which prohibits arbitration agreements from prospectively waiving statutory rights and remedies—for the reasons given in decisions issued by the Tenth and Third Circuits in cases involving nearly identical arbitration clauses that waived rights and remedies under ERISA sections

---

[1] The Amended Complaint also asserts a claim against all Defendants for invalidly amending the ESOP plan document, Am. Compl. at 55 (Appx. Vol.1, Tab 69), as well as a claim against A360 Holdco for knowingly participating in the fiduciary breaches committed by the fiduciary Defendants, Am. Compl. at 53-54 (Appx. Vol.1, Tab 69). Both of those claims arise under ERISA section 502(a)(3).

502(a)(2) and 409(a). Op. and Order at 35, (Appx. Vol. 1, Tab 86) (citing *Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.,* 59 F.4th 1090 (10th Cir. 2023) and *Henry v. Wilmington Tr. N.A.,* 72 F.4th 499 (3d Cir. 2023)). And because the invalid provisions of the Arbitration Clause, per the terms of the Arbitration Clause itself, are not severable from the Clause as a whole, the court invalidated the Arbitration Clause in full and denied the motion to compel. *Id.* at 35-36.

## SUMMARY OF THE ARGUMENT

Four circuits have now held that provisions precluding ERISA-plan participants from seeking in arbitration the very plan-wide monetary relief that ERISA section 502(a)(2) allows them to seek in court are unenforceable under the effective-vindication doctrine.[2] Because the Arbitration Clause here contains provisions materially identical to ones deemed invalid in those cases—specifically, provisions waiving representative actions and prohibiting plan-wide monetary relief—this Court should follow suit and hold that those provisions are unenforceable prospective waivers of statutory rights and remedies provided by ERISA section 502(a)(2). And because those unenforceable provisions are not

---

[2] See *Parker v. Tenneco*, Inc., ___F.4th___, 2024 WL 3873409 (6th Cir. Aug. 20, 2024); *Cedeno v. Sasson*, 100 F.4th 386 (2nd Cir. 2024); *Harrison Envision Mgmt. Holding, Inc. Bd. of Dirs.,* 59 F.4th 1090 (10th Cir. 2023); *Henry v. Wilmington Tr. N.A.*, 72 F.4th 499 (3d Cir. 2023).

severable from the Arbitration Clause as a whole, this Court should affirm the district court's denial of arbitration.

ERISA sections 502(a)(2) and 409(a) authorize participants to bring an action to recover, among other things, "*any* losses to the plan" resulting from a fiduciary breach. 29 U.S.C. §§ 1132(a)(2), 1109(a) (emphasis added). As the Supreme Court has recognized, claims under these sections are "brought in a representative capacity on behalf of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). The inherently representative nature of section 502(a)(2) claims remains true even in the context of defined contribution plans made up of individual participant accounts, like the ESOP here. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008). In short, a participant bringing a claim under section 502(a)(2) does so on the plan's behalf and may recover, for the plan's benefit, all losses sustained by the plan (among other forms of redress) stemming from the fiduciary breach.

Plaintiffs here sought precisely the remedies authorized by section 502(a)(2) to redress the harm they allege Defendants caused the ESOP, including restoration of all Plan losses, and they did so explicitly as representatives of the Plan (as they must in actions under section 502(a)(2)). Yet, Defendants sought to force Plaintiffs to abandon these statutory remedies by moving to compel arbitration under an agreement that prohibits representative proceedings altogether (through the

6

Representative Action Waiver) and restricts them to obtaining only individualized relief (through the Remedy Limitation). The Supreme Court has repeatedly made clear, though, that provisions in arbitration agreements that prospectively waive a party's right to pursue statutory rights and remedies are unenforceable. Because the Arbitration Clause here contains two provisions—the Representative Action Waiver and the Remedy Limitation—that do just that with respect to Plaintiffs' rights and remedies under ERISA section 502(a)(2), those provisions are unenforceable. That determination accords with recent decisions by multiple circuits holding that arbitration provisions materially identical to ones in the Arbitration Clause here are unenforceable.

Contrary to Defendants' characterization, deeming the Representative Action Waiver and Remedy Limitation unenforceable does not imply any "disharmony" between ERISA and the Federal Arbitration Act ("FAA"). The district court merely applied long-standing Supreme Court doctrine making clear that arbitration agreements—while permissibly altering procedural rights—may not include provisions abridging substantive remedies conferred by statute. But this only means that the *offending provision* cannot be enforced in arbitration, not that *arbitration* cannot proceed at all. In fact, the reason arbitration could not ultimately proceed in this case, as the district court found, was not due to ERISA's incompatibility with arbitration, but because of a non-severability provision that

Defendants *chose* to include in the arbitration provision. That decision, too, was correct, and this Court should affirm.[3]

## ARGUMENT

### I.    ERISA Sections 502(a)(2) and 409(a) Authorize Plan Participants to Represent the Plan and Seek Plan-wide Relief

There is no question that ERISA section 502(a)(2) authorizes individual plan participants to assert fiduciary-breach claims in court in a representative capacity on the plan's behalf, and to seek plan-wide monetary relief for the plan's benefit. Section 502(a)(2) of ERISA provides that participants, just like the Secretary of Labor or a plan fiduciary, can bring an action "for appropriate relief" under section 409. 29 U.S.C. § 1132(a)(2). ERISA section 409(a), in turn, provides that a fiduciary who breaches their duties "shall be personally liable to *make good to such plan any losses to the plan* resulting from each such breach . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a) (emphasis added). The Supreme Court has explained that, because of its focus on the plan, section 409(a) "provid[es] relief singularly to the plan" as opposed to an "individual beneficiary." *Russell*, 473 U.S. at 142. And given their plan-based

---

[3] The Secretary takes no position on whether Plaintiffs consented to arbitrate their claims.

character, claims under section 502(a)(2) are "brought in a representative capacity on behalf of the plan as a whole." *Id*. at 142 n.9

These principles apply even in the context of defined contribution plans made up of individual participant accounts. In *LaRue*, the plaintiff brought a claim under ERISA section 502(a)(2) alleging that his employer failed to implement the changes he requested to his defined-contribution-plan account, and in so doing, caused his account (and only his account) to decline in value. *LaRue*, 552 U.S. at 251. The breach, and the resulting harm, was thus localized to the plaintiff's account and did not affect any other participants. *Id*. In holding that the claim was nonetheless actionable under section 502(a)(2), the Supreme Court reiterated that all claims under section 502(a)(2)—including those pertaining to a breach that harms only a single participant's account—are not individual actions but remain "actions *on behalf of a plan* to recover for violations of the obligations defined in § 409(a)." *Id.* at 253 (emphasis added). And it made clear that a loss incurred by a single participant's account still qualifies as a plan loss redressable under section 502(a)(2). *Id.* at 256. As the Court explained, a plan may experience losses redressable under section 409(a) "[w]hether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts." *Id*. at 256.

Not surprisingly then, circuit courts post-*LaRue* have continued to allow participants in defined contribution plans to recover—on the plan's behalf and for the plan's benefit—all losses to the plan resulting from a fiduciary breach. *Cf., e.g., Brundle on behalf of Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, 919 F.3d 763, 782 (4th Cir. 2019) (ESOP participants entitled "to compensation for the loss from the overpayment" for ESOP assets); *Munro v. Univ. of S. Cal.*, 896 F.3d 1088, 1094 (9th Cir. 2018) (participants in defined contribution plans entitled to "seek financial and equitable remedies to benefit the Plans and all affected participants and beneficiaries"); *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 710 F.3d 57, 65 (2d Cir. 2013) (in claims involving a defined contribution plan, "recoupment of losses to the Plan" was an appropriate remedy "for the benefit of the Plan as a whole").

Circuit courts post-*LaRue* have likewise continued to treat all claims arising under section 502(a)(2) as representative ones brought on the plan's behalf. *See Simon v. Hartford Life, Inc.,* 546 F.3d 661, 665 (9th Cir. 2008) ("[A] plaintiff filing a claim under [section 502(a)(2)] is doing so in a representative capacity *and not in an individual capacity*.") (emphasis added); *Hawkins v. Cintas Corp.*, 32 F.4th 625, 635 (6th Cir. 2022) ("The weight of authority suggests that [section 502(a)(2)] claims should be thought of as Plan claims, not Plaintiffs' claims.").

In short, claims brought under ERISA section 502(a)(2)—even in the context of defined contribution plans like the one here—are inherently representative claims brought on the plan's behalf through which participants may seek plan-wide relief to redress fiduciary violations.

## II.    The Arbitration Clause's Prohibitions on Representative Actions and Plan-wide Relief Are Unenforceable Prospective Waivers of Rights and Remedies Under ERISA

Because ERISA section 502(a)(2) claims are representative ones that authorize a participant to seek, for the plan's benefit, all losses sustained by the plan, the Representative Action Waiver and Remedy Limitation are invalid for a simple reason: they prohibit both representative actions and plan-wide monetary relief. And as explained below, provisions in arbitration agreements that prospectively waive statutory rights and remedies are unenforceable.

### A.    Arbitration agreements may not prospectively waive statutory rights and remedies

The FAA expresses the general policy that arbitration agreements "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Although the Supreme Court has not addressed the arbitrability of ERISA claims, the circuit courts that have considered the question agree that ERISA claims are generally arbitrable. *See Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613, 620 (7th Cir. 2021) (collecting cases).

11

But a unanimous Supreme Court recently clarified that the FAA's "policy favoring arbitration" should not be overstated: this "federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). In that regard, the Supreme Court has recognized an "effective vindication" doctrine, which serves to prevent the "prospective waiver of a party's right to pursue statutory remedies" in an arbitration agreement. *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235–36 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 637, n.19 (1985)). As the Court explained in *Mitsubishi*, a party that agrees to arbitration "does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." 473 U.S. at 628. The effective vindication doctrine, the Court made clear in *Italian Colors*, "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." *Italian Colors Rest.*, 570 U.S. at 236.

This Court has not only recognized the "effective vindication" doctrine, but also applied it to invalidate arbitration provisions that take away substantive statutory rights. In *Paladino v. Avnet Comput. Techs., Inc*., this Court invoked the Supreme Court's admonition in *Mitsubishi* that a party who agrees to arbitrate "does not forego the substantive rights afforded by the statute[.]" 134 F.3d 1054, 1059 (11th Cir. 1998) (citing *Mitsubishi*, 473 U.S. at 628). As the Court went on,

12

"[w]hen an arbitration clause has provisions that defeat the remedial purpose of the statute, . . . the arbitration clause is not enforceable." *Id.* Based on this principle, the Court held that the arbitration provision at issue in *Paladino* was unenforceable because it "contains language which . . . is fundamentally at odds with the purposes of Title VII because it completely proscribes an arbitral award of Title VII damages." *Paladino*, 134 F.3d at 1060; *see also Hudson v. P.I.P.*, 793 F. App'x 935, 937-938 (11th Cir. 2019) (*per curiam*) (holding that a provision in an arbitration agreement "providing that each party will pay its own fees and costs is unenforceable, as the FLSA allows fees and costs as part of a plaintiff's award.").

In contrast, arbitration provisions that do not limit substantive rights and remedies but merely alter the *procedures* for pressing a claim will generally stand. For example, courts will typically enforce arbitration provisions waiving class or collective actions, even if the statute giving rise to the claim expressly permits such actions. *See, e.g., Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018). Class-arbitration waivers that leave the party with the right to pursue their statutory remedies through an individual action generally do not provide a basis for courts to invalidate these provisions. *See Italian Colors Rest.*, 570 U.S. at 236.

But unlike the procedural device of a class action, the Supreme Court has made clear that "[n]on-class representative actions in which a single agent litigates on behalf of a single principal are part of the basic architecture of much of

13

*substantive law*," and may not be prospectively waived. *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 657 (2022) (emphasis added); *see Cedeno,* 100 F.4th at 402 (explaining that "[t]he [Supreme] Court has recognized a qualitative difference between waivers of collective-action procedures like class actions, and waivers that preclude a party from arbitrating in a representational capacity on behalf of a single absent principal, a point it recently drove home in *Viking River*.").

**B.    The Arbitration Clause prospectively waives participants' rights to bring representative claims and seek plan-wide relief under ERISA section 502(a)(2)**

The district court correctly held that the Arbitration Clause contains provisions that prospectively waive statutory rights and remedies under ERISA, thus rendering them unenforceable. Op. and Order at 35, (Appx. Vol 1. Tab 86). As explained above, ERISA sections 502(a)(2) and 409(a) expressly allow participants complaining of fiduciary breaches to recover for the plan "any losses to the plan resulting from" the fiduciary's breach. *See* 29 U.S.C. § 1109(a); 29 U.S.C. § 1132(a)(2) (authorizing participants to seek "appropriate relief under [section 409]"). And the Supreme Court has made clear that claims under section 502(a)(2) are representative actions brought "on behalf of the plan as a whole" and that the relief authorized by the statute inures to the plan. *Russell*, 473 U.S. at 142 n.9; *see also LaRue*, 552 U.S. at 253.

Yet the Arbitration Clause cuts off those statutory remedies in two ways. First, the Representative Action Waiver outright prohibits participants from arbitrating "in a representative capacity," and requires that all claims "be brought solely in the Claimant's individual capacity." Op. and Order at 8, (Appx. Vol 1. Tab 86). In so doing, the Representative Action Waiver effectively bars section 502(a)(2) claims—which are inherently representative—from being asserted at all. *See Hawkins*, 32 F.4th at 635 ("The weight of authority suggests that [section 502(a)(2)] claims should be thought of as Plan claims, not Plaintiffs' claims.").

Second, even if section 502(a)(2) claims could be asserted in arbitration notwithstanding the Representative Action Waiver provision, the Remedy Limitation provision separately precludes participants from seeking the plan-wide relief authorized by sections 502(a)(2) and 409(a). Specifically, the Remedy Limitation provision bars "any remedy which has the purpose or effect of providing additional benefits or monetary relief . . . to any Employee, Participant or Designated Beneficiary other than the Claimant," and restricts participants to recovering only "the alleged losses to the Claimant's individual Account resulting from the alleged breach of fiduciary duty." Op. and Order at 8, (Appx. Vol 1. Tab 86); *compare* 29 U.S.C. § 1109(a) (authorizing recovery of "*any* losses to the plan" from a fiduciary breach) (emphasis added).

The post-litigation amendment to the Arbitration Clause does not undo these impermissible prospective waivers. That amendment clarified that participants can seek in arbitration "injunctive relief," including removal of a fiduciary, "even if such injunctive relief has an incidental impact on an individual or entity other than the Claimant." Op. and Order at 10, (Appx. Vol 1. Tab 86). But it included a critical caveat: such injunctive relief still may not "include or result in the provision of additional benefits or monetary relief to any individual or entity other than" the individual claimant. *Id*. And the amendment said nothing at all about representative actions. Thus, even after this amendment, the Arbitration Clause still fully bars participants from asserting representative actions and pursuing plan-wide monetary relief.

Multiple circuit courts have held that provisions just like the Remedy Limitation and Representative Action Waiver are unenforceable under the effective vindication doctrine. For example, in *Henry*, the Third Circuit held that an arbitration provision materially identical to the Remedy Limitation (*i.e.*, one that also precluded plan-wide monetary relief) was unenforceable under the effective vindication doctrine because it required the plaintiff to prospectively waive statutory remedies. 72 F.4th at 507. As the court put it, "what the statute permits, the plan precludes." *Id*. (*quoting Smith*, 13 F.4th at 621). And because, under the terms of the arbitration agreement, the provision was not severable from the

16

broader agreement, the Third Circuit affirmed the district court's refusal to compel arbitration. *Id*.

The Tenth Circuit likewise deemed unenforceable another near facsimile of the Remedy Limitation because it "purports to foreclose a number of remedies that were specifically authorized by Congress." *Harrison*, 59 F.4th at 1107. The court noted that the plaintiff's "claims are brought under § 1132(a)(2) and seek forms of relief," including plan-wide monetary relief, "that would benefit the Plan as a whole, rather than [plaintiff] individually," but the arbitration provision would "foreclose any such plan-wide relief." *Id*. Here too, because the unenforceable limitation on plan-wide relief was not severable from the arbitration agreement, the Tenth Circuit agreed that arbitration could not be compelled. *Id*. at 1112. The Tenth Circuit also explained that the arbitration agreement's "prohibition on a claimant proceeding in a representative capacity is potentially more problematic," though the court did not need to reach its enforceability (having concluded that the limitation on remedies was itself unenforceable and non-severable). *Id.* at 1106.

The Second Circuit also struck down a nearly identical provision to the Remedy Limitation that precluded participants from seeking "any remedy that has the purpose or effect of providing additional benefits or monetary or other relief to an Employee, Participant, or Beneficiary other than the Claimant." *Cedeno*, 100 F.4th at 392. As the court explained, the plaintiff "cannot vindicate his substantive

statutory rights if [the prohibitions on plan-wide relief] are enforceable. Those

provisions take the only available statutory vehicle for vindicating [plaintiff's]

rights under Section 409(a)—a suit under Section 502(a)(2) seeking remedies

directed at the Plan—off the table." *Id.* at 405. As a result, the Second Circuit held

that the waivers of plan-wide relief were "unenforceable," and that because of a

non-severability clause, "the entire arbitration agreement is null and void." *Id.* at

408.

Most recently, the Sixth Circuit deemed unenforceable provisions nearly

identical to the Representative Action Waiver and Remedy Limitation provisions

at issue here. *Parker v. Tenneco*, ___F.4th___, 2024 WL 3873409 (6th Cir. Aug.

20, 2024). As the court there explained, the plan's arbitration agreement "restricts

[plaintiff] to actions brought in an 'individual capacity and not in a representative

capacity,' and restricts the monetary relief [plaintiff] can receive to losses to her

individual Plan account and prorated profits." *Id.* at *8. These provisions "thus

eliminate[] the ability to proceed in a representative capacity on behalf of the plans

and obtain relief for losses to the plans, which . . . are substantive statutory

remedies provided by ERISA," and are "therefore unenforceable as a prospective

waiver of these statutory rights." *Id.*[4]

---

[4] The Seventh Circuit also held that an arbitration provision precluding plan-wide
relief was unenforceable under the effective-vindication doctrine, though it trained
its focus on the fact the plaintiff could not obtain plan-wide injunctive relief in

The district court, while correctly aligning itself on the side of this growing circuit authority, pointed to the Ninth Circuit's unpublished decision in *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019) as sitting on the other side of a supposed "circuit split." In reality, there is no circuit split. Aside from being unpublished and non-precedential, *Dorman* did not even consider a provision prohibiting plan-wide relief, did not address a representative-action ban, and did not mention the effective vindication doctrine at all. Rather, *Dorman* held only that an arbitration provision may waive "class-wide or collective arbitration," which is not at issue here. *Dorman*, 780 F. App'x at 514; *see Cedeno*, 100 F.4th at 407 n.6 (explaining that "the *Dorman* court did not consider an argument invoking the effective vindication doctrine," and that "[b]ecause it does not address the primary argument at issue here, *Dorman* is not persuasive.").

## III.  Defendants' Contrary Arguments Are Unpersuasive

In their opening brief, Defendants attack the district court's decision on multiple overlapping grounds, but they can be distilled into three basic points. First, they claim that the district court's denial of arbitration is tantamount to

---

arbitration, such as fiduciary removal. *Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613, 620–23 (7th Cir. 2021). Here, the Plan (through its recent amendment) appears to allow such injunctive relief in arbitration. The Seventh Circuit in *Smith* did not directly consider whether a ban on plan-wide monetary relief or a representative action waiver would independently be an impermissible prospective waiver of statutory remedies.

holding that ERISA displaced the FAA and is otherwise contrary to ERISA itself. Second, they contend that the right to seek plan-wide relief on the plan's behalf is not a "substantive right," but merely a "procedural right" that can be prospectively waived. Third, they try to distinguish the circuit court cases that have repeatedly rejected the exact arguments they make here. None of their attacks have merit.

## A.    The district court's holding does not contravene either the FAA or ERISA

Defendants criticize the district court for "implicitly determin[ing] that ERISA displaced the FAA." Appellants' Br. at 18-19. But as discussed, the district court deemed the Remedy Limitation and Representative Action Waiver unenforceable not because of ERISA's purported hostility to arbitration or disharmony with the FAA, but merely by applying the Supreme Court's long-recognized effective vindication doctrine invalidating provisions "that operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies." *Italian Colors Rest.*, 570 U.S. at 235–36. Those two concepts—arbitrability and prospective waiver—are entirely distinct. The fact that an agreement contains provisions prospectively waiving statutory remedies simply renders those particular provisions unenforceable in arbitration; it does not mean the statute precludes arbitration altogether. *See, e.g., McMullen v. Meijer, Inc.*, 355 F.3d 485, 489–90 (explaining that "statutory employment discrimination claims" are

arbitrable, yet still proceeding to assess whether the agreement allows for the "effective vindication of that claim").

Here, for example, the fact that the Representative Action Waiver and Remedy Limitation are invalid prospective waivers of statutory rights is not by itself fatal to arbitration. It merely means that those two provisions are unenforceable, not the Arbitration Clause more broadly. Indeed, the district court refused to compel arbitration not because of some imagined "disharmony" between ERISA and the FAA, Appellants' Br. at 18, but rather because of a non-severability provision that Defendants chose to include in the Arbitration Clause (rendering it void if the Remedy Limitation was invalidated). Op. and Order at 35-36, (Appx. Vol. 1, Tab 86). If there is any "disharmony" with arbitration, then, it can be found in Defendants' own Arbitration Clause.

Defendants also argue that the district court's refusal to compel arbitration is at odds with ERISA itself, which requires that the Plan (including its Arbitration Clause) be enforced as written. Appellants' Br. at 17. Defendants are here referring to ERISA section 404(a)(1)(D), which requires fiduciaries to discharge their duties "in accordance with the documents and instruments governing the plan *insofar* as such documents and instruments are consistent with the provisions of [Title I of ERISA]." 29 U.S.C. § 1104(a)(1)(D) (emphasis added). But, as is plain from the text, fiduciaries need to enforce Plan terms only "insofar" as they comport with

ERISA. Here, enforcing the Plan as written, including the Representative Action Waiver and Remedy Limitation provisions, would be inconsistent with ERISA sections 502(a)(2) and 409(a)'s right to pursue plan-wide relief on behalf of the plan. *See Esden v. Bank of Boston*, 229 F.3d 154, 173 (2d Cir. 2000) ("The Plan cannot contract around the statute.").

### B.     The right to bring a representative action under section 502(a)(2) is a substantive right—not a procedural right—that cannot be prospectively waived

Defendants argue that the ability to seek a plan-wide remedy on the plan's behalf is not a substantive right under ERISA section 502(a)(2), but rather a waivable procedural right. In this regard, Defendants first contend that under *LaRue,* "a participant suing to remedy the harm caused by a fiduciary breach can pursue the ERISA § 502(a)(2) claim on behalf of her individual account only," whereas the right to seek relief for the entire plan "is a separate procedural question." Appellants' Br. at 27. But *LaRue* stands for no such thing. The Supreme Court simply said that where a fiduciary breach harms only a single participant's account, that claim is still actionable under section 502(a)(2) because the relief sought still inures to the plan. It nowhere said that even where a breach harms the accounts of all participants—a fact not even present in *LaRue* (but present here)—participants are somehow substantively limited to seeking relief only for their own account. That has it exactly backwards: "[I]n holding that a derivative fiduciary claim may be brought on behalf

22

of a 'plan,' even if the ultimate relief may be individualized," *LaRue* "broadens, rather than limits, the relief available under § 502(a)(2)[.]" *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595 n.9 (3d Cir. 2009).

Defendants' reading of *LaRue* as restricting participants to recovering for their individual accounts is also antithetical to the representative nature of section 502(a)(2) claims. The Supreme Court reiterated in *LaRue* that *all claims* under section 502(a)(2)—including those pertaining to a breach that harms only a single participant's account—are not individual actions, but "actions *on behalf of a plan* to recover for violations of the obligations defined in § 409(a)." *LaRue*, 552 U.S. at 253 (emphasis added). Because participants pressing section 502(a)(2) claims act on the plan's behalf even in the context of defined contribution plans, it follows that they should be permitted to recover (for the plan's benefit) *all* plan losses, not just the sliver of losses that pertain to their particular individual account (unless, as in *LaRue*, the *only* plan loss was to that participant's account).

Defendants also misconstrue another Supreme Court case in their effort to analogize section 502(a)(2) claims to "claim joinder" actions that the Court in *Viking River* held could be prospectively waived. Appellants' Br. at 28–34. If there is any analogy to draw between section 502(a)(2) claims and those referenced in *Viking River*, it is not with claim joinder actions, but with non-class representative

actions, which the Court said was a substantive right that could *not* be prospectively waived.

*Viking River* concerned the FAA's effect on California precedent invalidating waivers of an employee's right to bring representative claims under the California Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698 *et seq*. PAGA allows California workers to bring two species of representative actions. First, an aggrieved employee—as a proxy or agent of the state—may bring a PAGA action against a former employer for civil penalties for violations of the employee's rights under California labor law. *Viking River*, 596 U.S. at 648-49. Second, employees may also represent other individuals by joining additional claims of employees "other than the PAGA litigant," which may be predicated on different facts and statutory violations. *Id*.

The Supreme Court held that the FAA does not conflict with California precedent prohibiting contractual waivers of the first type of PAGA action, i.e., an individual representative action on behalf of the state. Invoking the effective vindication doctrine, the Court reiterated that "the FAA does not require courts to enforce contractual waivers of substantive rights and remedies." *Id*. at 653. The Court distinguished this first type of representative PAGA action—a single agent, single principal action—from class actions, waivers of which it has generally held to be permissible. *Id*. at 655-57. In contrast to the procedural device of a class

24

action, "[n]on-class representative actions in which a single agent litigates on behalf of a single principal are part of the basic architecture of much of *substantive law*." *Id*. at 657 (emphasis added). Thus, California's rule prohibiting waivers of this type of representative action, the Court held, does not run afoul of the FAA. *Id*. at 659.

The right PAGA gives to employees to bring suit on behalf of California is broadly analogous to the right ERISA sections 502(a)(2) and 409(a) give to participants and beneficiaries to bring an action on behalf of a plan. They are both "representative actions . . . on behalf of a single principal." *Id*. at 657; *see also Russell*, 473 U.S. at 142, n.9 (section 502(a)(2) claims are "brought in a representative capacity on behalf of the plan as a whole"); *Hawkins*, 32 F.4th at 630, Accordingly, the logic of *Viking River* supports Plaintiffs' position in this case that the FAA does not require enforcing a prospective waiver of a participant's right to seek plan-wide relief on the plan's behalf.

Defendants argue that an ERISA section 502(a)(2) claim is not analogous to *Viking River*'s "agent or proxy" type of representative PAGA action because, under *Thole v. U.S. Bank, N.A.,* 590 U.S. 538 (2020), participants bringing such claims must have suffered a personal injury to have standing, which Defendants contend would not be necessary if participants acted as an "agent or proxy" of the plan. Appellants' Br. at 30. In fact, *Thole* states just the opposite: plaintiffs must

show they suffered an injury in fact precisely *in order* to have representative

standing. *Thole,* 590 U.S. at 543 ("*[I]n order to claim 'the interests of others*, the

litigants themselves still must have suffered an injury in fact, thus giving' them 'a

sufficiently concrete interest in the outcome of the issue in dispute.'" (emphasis

added) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013)); *see also*

*Gollust v. Mendell*, 501 U.S. 115, 125–26 (1991) (suggesting that a shareholder

must "maintain some continuing financial stake in the litigation" to have Article III

standing to bring an insider trading suit on behalf of the corporation).

Defendants similarly argue that a representative action under

ERISA section 502(a)(2) is a form of waivable claim joinder because "courts . . .

have required a participant to satisfy procedural requirements before allowing a

participant to proceed on behalf of absent plan participants or their individual plan

accounts." Appellants' Br. at 31-32. According to Defendants, if Plaintiffs had a

substantive right to pursue monetary relief on behalf of the Plan, "courts would not

be concerned about ensuring procedural protections for absent plan participants."

*Id*. at 33-34. But there is nothing at all unusual about substantive rights requiring

procedural safeguards. For instance, a shareholder-derivative action, which the

Supreme Court specifically referenced as an example of a non-class representative

action that is "part of the basic architecture of much of substantive law," *Viking*

*River,* 596 U.S. at 657, is also accompanied by Federal Rule of Civil Procedure

23.1's procedural safeguards. *See* Fed. R. Civ. P. 23.1(a). The possible need for procedural safeguards, in other words, in no way implies that the right in question is not substantive.

**C.    Reversing the District Court's decision would create a direct split with multiple circuits**

Finally, Defendants seek to downplay the growing chorus of circuit authority that has rejected the very arguments they make here. They first cite to the Ninth Circuit's unpublished *Dorman* decision as supportive of their position, *see* Appellant's Br. at 34-35, but as explained, *Dorman* did not even address the effective-vindication doctrine and is thus irrelevant, *see* Sec. II(B), *supra*.

Defendants also contend that the provisions deemed invalid in *Henry*, *Harrison*, and *Cedeno* "are readily distinguishable from the one at issue here" because the Arbitration Clause "makes clear that injunctive relief, including plan-wide injunctive relief, is not barred[.]" Appellants' Br. at 41. But the courts in those cases also explicitly invalidated prohibitions on plan-wide *monetary* relief. *See Cedeno,* 100 F.4th at 400 (including the section of the arbitration agreement that "limits a claimant's remedy to recovering for the alleged losses *to the claimant's accounts*" in a list of "restrictions [that] effectively preclude Cedeno from pursuing the remedies available to him under Section 502(a)(2)"); *see also Harrison*, 59 F.4th at 1106–07 (invaliding arbitration provision because plaintiffs would be prevented from seeking relief provided for by section 502(a)(2),

including "losses suffered by the Plan generally"); *Henry*, 72 F.4th at 507 (finding provision prohibiting monetary relief to participants other that the plaintiff runs afoul of section 409(a)'s allowance for "all plan losses caused by a fiduciary breach"). And the Sixth Circuit's recent decision in *Parker* likewise held that an arbitration provision was unenforceable because it "restricts the monetary relief [plaintiff] can obtain to losses to her individual Plan account and prorated profits." *Parker*, ___F.4th___, 2024 WL 3873409, at *8. Because the Remedy Limitation here shares this same prohibition on plan-wide monetary relief, Defendants' position is simply irreconcilable with the weight of circuit authority.

## CONCLUSION

The Secretary respectfully requests that this Court affirm the district court's denial of Defendants' motion to compel arbitration.

Respectfully submitted,

Date: October 3, 2024

SEEMA NANDA
Solicitor of Labor

WAYNE R. BERRY
Associate Solicitor
for Plan Benefits Security

JEFFREY M. HAHN
Counsel for Appellate and Special
Litigation

/s/ Susanna Benson
Susanna Benson
Senior Attorney

U.S. Department of Labor
Office of the Solicitor
Plan Benefits Security Division
200 Constitution Ave. NW, N4611
Washington, DC 20210
202.693.5682 (t) | 202.693.5610 (f)

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

**1. Type-Volume**

This document complies with the word limit of Federal Rule of Appellate

Procedure 29(b)(4) because, excluding the parts of the document exempted by

Federal Rule of Appellate Procedure 32(f), this document contains 6,445 words.

**2. Typeface and Type-Style**

This document complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of

Appellate Procedure 32(a)(6).

/s/ Susanna Benson
Susanna Benson
Senior Attorney

Date: October 3, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, October 3, 2024, I electronically filed the foregoing amicus brief with the Clerk of the Court for the U.S. Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Susanna Benson
Susanna Benson
Senior Attorney